## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No.: 1:17-cv-24500-JLK

| |
|---|
| JACOB ZOWIE THOMAS RENSEL, individually and on behalf of all others similarly situated, |
| Plaintiff, |
| v. |
| CENTRA TECH, INC., SOHRAB SHARMA, RAYMOND TRAPANI, ROBERT FARKAS, and WILLIAM HAGNER, |
| Defendants. |

### DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY AND/OR IN THE ALTERNATIVE TO DISMISS UNDER RULE 12(B)(1) AND 12(B)(6), AND SUPPORTING MEMORANDUM OF LAW

Defendants Centra Tech, Inc. ("Centra Tech"), Sohrab Sharma, Raymond Trapani, Robert Farkas, and William Hagner (collectively, "Defendants," and other than Centra Tech, the "Individual Defendants") hereby move to compel arbitration of this dispute as required by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, and to stay the complaint filed by plaintiff Jacob Zowie Thomas Rensel ("Plaintiff") in favor of arbitration, and/or in the alternative, to dismiss Plaintiff's claims for lack of subject-matter jurisdiction and for failure to state a claim.

### I.      Introduction

Despite an abundance of irrelevant allegations of fraud, Plaintiff's Complaint boils down to the simple assertion that Centra Tech's sale of Centra Tokens was actually an unregistered sale of securities under Section 5 of the Securities Act of 1933 (the "Securities Act"). Plaintiff, though, failed to include two determinative facts. First, when he purchased Centra Tokens, he

agreed to a broad arbitration clause and class action waiver that unquestionably encompass Plaintiff's purported claims under the Securities Act.[1]  His claims are thus subject to individual arbitration under the FAA, 9 U.S.C §§ 1 *et seq.*, and on that basis this Court should compel Plaintiff to arbitrate and stay his suit until that arbitration has concluded.  Second, Plaintiff failed to include the equally dispositive fact that he has sold his Centra Tokens for a profit, and thus has suffered no harm whatsoever.  He therefore lacks the "irreducible minimum of constitutional standing" recently emphasized by the United States Supreme Court in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  Plaintiff has also failed to state a claim against the Individual Defendants under Section 15(a) of the Securities Act.

Accordingly, Defendants hereby move to compel arbitration of Plaintiff's claims pursuant to the parties' binding and enforceable Arbitration Provision and stay this action until that arbitration is concluded, and in the alternative, to dismiss Plaintiff's claims under Rule 12(b)(1) for lack of constitutional standing and/or Rule 12(b)(6) for failure to state a claim.

## II.      Statement of Facts

### A.      Plaintiff purchased Centra Tokens pursuant to a Token Sale Agreement containing a mandatory arbitration provision and class action waiver.

Centra Tech is a start-up company based in Miami, Florida that develops and markets innovative technology allowing individuals around the world to store and spend their virtual currency, such as Bitcoin ("BTC") and Ether ("ETH").  (*See* Declaration of Allan Shutt, ("Shutt

---

[1]     Plaintiff's fraud allegations are, by his own admission, irrelevant to his legal causes of action.  (*See* Compl., ¶ 6.)  Accordingly, Defendants are contemporaneously filing a motion to strike fraud-related allegations from the Complaint.  And with respect to Plaintiff's core allegation regarding sale of an unregistered security, Centra Tech's unwavering position—which it will present at an appropriate time in these proceedings, if necessary—has been and remains that because of CTR's significant utility and lack of other similarities to an investment contract, it is *not* a security under the test articulated by the United States Supreme Court in *SEC v. W. J. Howey Co.*, 328 U.S. 293 (1946).

Decl.") ¶ 4, attached hereto as Exhibit A.)[2]  Centra Tech's products include the Centra Wallet—a digital wallet in which individuals can keep and access several denominations of virtual currency—and the Centra Card, a prepaid card that allows individuals to spend their virtual currency in real-time for goods and services at vendors around the world.  (Shutt Decl. ¶ 5.)

From July 30, 2017 through September 26, 2017, Centra Tech held an initial coin offering ("ICO") in which it sold to the public a "utility token" of its own creation—the Centra Token ("CTR").  (Shutt Decl. ¶ 6.)  Holding CTR is necessary to use both the Centra Wallet and the Centra Card.  (Shutt Decl. ¶ 7.)  On July 30, 2017, Plaintiff participated in Centra Tech's ICO by transmitting 16.1 ETH, then allegedly valued at approximately $3,250.75, to Centra Tech, in exchange for approximately 7,728 CTR Tokens, or $0.42 per token.  (D.E. 1, Dec. 13, 2017, Compl. ¶ 10; D.E. 6, Dec. 13, 2017 (Notice of Filing Exhibit A to Compl.), Chart.)

Plaintiff expressly agreed to Centra Tech's "Token Sale Agreement" as part of the process of purchasing CTR through Centra Tech's website.  The Token Sale Agreement provides:

> [A]ny dispute arising under this Agreement shall be finally settled in binding arbitration, on an individual basis . . . and you and Centra Tech, Inc. hereby expressly waive trial by jury and right to participate in a class action lawsuit or class-wide arbitration.

(See Declaration of Steve Sykes, ¶ 12, attached hereto as Exhibit B, & Sykes Decl. Ex. 3 (Token Sale Agreement § 11).)  The Token Sale Agreement further clearly and conspicuously provides notice of this arbitration provision by stating:

> [This Agreement] CONTAINS A BINDING ARBITRATION CLAUSE AND CLASS ACTION WAIVER, WHICH, IF APPLICABLE TO YOU, AFFECT

---

[2]     Because the Eleventh Circuit treats a motion to compel arbitration as a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, "the Court may consider matters outside of the four corners of the complaint."  *Tracfone Wireless, Inc. v. Simply Wireless, Inc.*, 229 F. Supp. 3d 1284, 1292 (S.D. Fla. 2016).

YOUR LEGAL RIGHTS.  IF YOU DO NOT AGREE TO THESE TERMS OF
SALE, DO NOT PURCHASE TOKENS.

(Sykes Decl. ¶ 12 & Ex. 3 (Token Sale Agreement, preamble to § 11) (capitals in original).)

Plaintiff's notice of and agreement to the Token Sale Agreement cannot be disputed.  The
main way that a customer, including Mr. Rensel, purchased Centra Tokens on or about July 30,
2017, was to visit the "Token Sale" page of the Centra Tech website.  (Sykes Decl. ¶ 9.)  To
purchase CTR Tokens, visitors to Centra Tech's Token Sale page were required to click a button
labeled "BUY TOKENS NOW INSTANTLY."  (Sykes Decl. ¶ 9 & Ex. 1.)  Upon clicking
"BUY TOKENS NOW INSTANTLY," visitors were automatically directed to a pop-up window
with a scroll bar displaying the "Token Sale Agreement & Terms and Conditions," including the
arbitration provision discussed above.  (Sykes Decl. ¶ 10 & Ex. 2.)

To purchase Centra Tokens, visitors were then required to click a box next to the
statement: "I hereby confirm that I read and agree to the Token Sales Terms and [C]entra [T]ech
White Paper."  (Sykes Decl. ¶ 13 & Ex. 2).  Visitors were also required to click a box next to the
statement: "I Hereby acknowledge that the Token Sale does not receive equity in Centra Tech,
Inc." (*Id.*)  Visitors were then requested to enter their full name or initials "to digitally sign and
agree," and then click a button labeled "SIGN & AGREE".  (*Id.*)  After clicking "SIGN &
AGREE," visitors were directed to a new pop-up window stating "Send Your Contribution Using
ETH," where the visitors were provided the wallet address to which they would provide the
virtual currency used to fund their purchase of Centra Tokens, and then click a button labeled
"Add shipping." (Sykes Decl. ¶ 14 & Ex. 4.)

After clicking the button labeled "Add shipping," visitors were directed to a new page
window titled "Add Shipping," where visitors were directed to provide contact information
including first name, last name, street address, city, state, email address, phone number, country,

and their ETH wallet address.  (Sykes Decl. ¶ 15 & Ex. 5.)  Further, visitors were required to (1) click a box confirming they "read and agree to the Token Sale Terms and [C]entra [T]ech White Paper"; (2) click a box acknowledging that "the Token Sale does not give me equity, shares or securities in Centra Tech, Inc. and the Centra Token [has] utility;" and (3) click the "Submit" button to complete the process.  (*Id.*)

Plaintiff purchased CTR using this exact process.  Centra Tech business records confirm that Plaintiff successfully purchased CTR in exchange for 16.1 ETH on July 30, 2017, and that Plaintiff's street address, city, state, email address, phone number, and virtual-currency wallet address are stored in Centra Tech's purchaser database.  (Sykes Decl. ¶ 16 & Ex. 6.)[3]  Centra Tech could not have obtained this information if Plaintiff had not followed the aforementioned process and agreed to the Token Sale Agreement, which included the mandatory arbitration provision. (Sykes Decl. ¶¶ 17–18.)

## B.     Plaintiff sold the CTR he bought during the Centra Tech ICO for a profit.

Like financial instruments and commodities of all kinds, many virtual currencies, like BTC and ETH, as well as digital utility tokens, such as CTR, are broadly traded in substantial volume after their initial sale on public, online secondary markets known as "exchanges."  As noted above, on July 30, 2017, Plaintiff participated in Centra Tech's ICO by transmitting 16.1 ETH, then allegedly valued at approximately $3,250.75, to Centra Tech, in exchange for approximately 7,728 CTR Tokens, or $0.42 per token.  (D.E. 1, Dec. 13, 2017, Compl. ¶ 10; D.E. 6, Dec. 13, 2017 (Notice of Filing Exhibit A to Compl.), Chart.)

---

[3]      Exhibit 6 to the Sykes Declaration has been lightly redacted to avoid placing the entirety of Plaintiff's personal contact information in the public record.

In the Complaint, Plaintiff alleges only that he purchased CTR during the ICO.  He does not explicitly plead that he still holds the tokens or that he sold them in the secondary market at a loss.  Plaintiff's counsel has now admitted, however, that Plaintiff sold the CTR Tokens at issue on October 28, 2017 for approximately $0.50 per CTR.  (*See* Sealed Dkt. Entry, Mtn. for Expedited Discovery, at 10.)[4]  Accordingly, it appears that Plaintiff sold the 7,728 CTR he purchased during the ICO for approximately $3,864—a gain of more than $600, or an 18.8% profit over his purchase price of $3,250.75.  The record thus reflects that even accepting all of Plaintiff's allegations at true, he has suffered no monetary damages.[5]

Defendants vigorously deny Plaintiff's claims.  The Court, though, does not need to even consider those claims, because they are subject to mandatory arbitration.  In the alternative—and as Centra Tech will argue in arbitration—Plaintiff lacks constitutional standing to bring his claims because he has not suffered an injury-in-fact.  Accordingly, Defendants hereby move to compel individual arbitration of all claims set forth in Plaintiff's Complaint and, in the alternative, to dismiss those claims for lack of subject-matter jurisdiction.

## III.   ARGUMENT

Defendants move to stay or dismiss Plaintiff's claims for three reasons.  First, under the FAA, Plaintiff should be compelled to arbitrate his claims on an individual basis because he has agreed to mandatory arbitration and has waived his right to participate in a class action.  Second, Plaintiff has no Article III standing because by his own admission, he has sold the alleged

---

[4]    Federal courts may "treat even unsworn statements in motions and briefs as binding admissions." *Tucker v. Hous. Auth.*, 507 F. Supp. 2d 1240, 1275 (N.D. Ala. 2006) (summarizing cases).

[5]    More recently, on January 4, 2018, CTR traded as high as $4.22, and currently trades at $1.21, likely well above the price at which most putative class members bought their CTR.

securities at issue for a profit and therefore has suffered no redressable harm.  And third, Plaintiff has failed to plead facts necessary for a claim of "control person" liability against the Individual Defendants.

A.    **Plaintiff's claims must be arbitrated on an individual basis.**

Section 2 of the FAA makes written mandatory arbitration agreements "valid, irrevocable, and enforceable," 9 U.S.C. § 2, and federal law establishes a strong presumption in favor of arbitration, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985).  By "enacting the FAA, Congress demonstrated a 'liberal federal policy favoring arbitration agreements.'"  *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999) (quoting *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 25 (1991)).  Accordingly, the FAA "requires the courts to 'rigorously enforce agreements to arbitrate.'"  *Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso,  P.A. v. Medpartners, Inc.*, 312 F.3d 1349, 1357–58 (11th Cir. 2002) (quoting *Mitsubishi*, 473 U.S. at 626).

The application of the FAA to disputes involving the sale of alleged securities brought under the Securities Act is well established.[6]  In *Rodriguez de Quijas v. Shearson/American Express, Inc.*, the Supreme Court rejected plaintiff's argument that statutory claims arising under the Securities Act are exempt from agreements to arbitrate.  490 U.S. 477, 480 (1989).  Since then, the Eleventh Circuit has expressly recognized that under *Rodriguez*, "courts should enforce pre-dispute agreements to arbitrate claims under the Securities Act of 1933."  *Davis v. So. Energy Homes, Inc.*, 305 F.3d 1268, 1273 (11th Cir. 2002) (citing *Rodriguez*, 490 U.S. at 484-86.  And courts in other jurisdictions have held that Section 12(a)(1) claims relating to the

---

[6]     As noted above, Centra Tech disputes the characterization of the Centra Token as a security and will raise that argument if necessary at the appropriate time.

alleged sale of unregistered securities (identified as Section 12(1) claims before the re-designation of existing provisions in 1995) are arbitrable under *Rodriguez*. *See, e.g.*, *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1362 (2d. Cir. 1993); *Ackerberg v. Johnson*, 892 F.2d 1328, 1330-31 (8th Cir. 1989).

All of Plaintiff's claims in this case are subject to individual arbitration pursuant to the broad mandatory arbitration provision in the Token Sale Agreement and the FAA. Under the FAA a court must, upon motion by a party, stay any proceeding that involves an issue subject to arbitration under a written arbitration agreement. *See* 9 U.S.C. § 3. "Under the Act a court must 'either stay or dismiss a lawsuit and . . . compel arbitration upon a showing that (a) the plaintiff entered into a written arbitration agreement that is enforceable under ordinary state-law contract principles and (b) the claims before the court must fall within the scope of that agreement.'" *Anderson v. Am. Gen. Ins.*, 688 F. App'x 667, 669 (11th Cir. 2017) (quoting *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008) (quotation marks omitted)). *See also Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("[t]he [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed" (emphasis in original)).

As discussed below, the FAA applies to Plaintiff's claims and mandates that those claims be arbitrated. All of the requirements for enforcing the arbitration provision in this case are easily satisfied.

       **1.      The FAA applies to the mandatory arbitration provision and Plaintiff's claims.**

The FAA applies to "contract[s] evidencing a transaction involving commerce . . . ." 9 U.S.C. § 2. The Act defines "commerce" as "commerce among the several States." *Id.* § 1.

"[T]he word 'involving' . . . signals Congress' intent to exercise its Commerce Clause powers to the full," and the phrase "'evidencing a transaction' mean[s] only that the transaction . . . turn[s] out, *in fact*, to have involved interstate commerce." *Allied-Bruce Terminix Cos.v. Dobson*, 513 U.S. 265, 273, 276–77 (1995).  In *Citizens Bank v. Alafabco, Inc.*, the United States Supreme Court confirmed that Congress, in section 2 of the FAA, exercised "the broadest permissible exercise" of its Commerce Clause power, and it admonished (and reversed) the Alabama Supreme Court for applying a "cramped view" of the Commerce Clause power.  539 U.S. 52, 56, 58 (2003); *see also Caley v. Gulfstream Aero. Corp.*, 428 F.3d 1359, 1370 (11th Cir. 2005) (emphasizing that the FAA's language signals "the broadest permissible exercise of Congress' Commerce Clause power").

As Plaintiff admits, the alleged transactions in this case easily meet the "involving commerce" requirement.  (*See* Compl., ¶¶ 66 ("Defendants unlawfully made use of means or instruments of transportation or communication *in interstate commerce* or of the mails for the purposes of offering, selling, or delivering unregistered securities . . . .") (emphasis added).) Plaintiff further alleges that he "transmitted" virtual currency to Centra Tech using the internet. (*Id.* ¶ 10.)  *See also United States v. Faris*, 583 F.3d 756, 759 (11th Cir. 2009) (per curiam) ("The internet is an instrumentality of interstate commerce." (citations and quotation marks omitted)).

Accordingly, because Plaintiff's purchase of Centra Tokens involved interstate commerce, the FAA applies to this action.

## 2. A valid and enforceable written arbitration provision exists.

There can be no dispute that the Token Sale Agreement contains a written arbitration provision.  (Sykes Decl., Ex. 3.)  Further, Centra Tech came into possession of Plaintiff's

personal information by virtue of Plaintiff's having provided that information to Centra Tech and, in doing so, having agreed to the Token Sale Agreement's terms.

### 3.   Plaintiff's claims fall squarely within the scope of the arbitration provision.

The Token Sale Agreement states that the parties must arbitrate "any dispute arising under" that agreement.  (Sykes Decl., Ex. 3, § 11.)  This broad arbitration clause covers Plaintiff's claims, which directly challenge the validity of the underlying token sale.  The Supreme Court has instructed that a presumption in favor of arbitration exists where a contract contains an arbitration clause, and an order to arbitrate should not be denied "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Tech., Inc. v. Comm. Workers of Am.*, 475 U.S. 643, 650 (1986).  The presumption in favor of arbitrability "is particularly applicable where the [arbitration] clause is broad," *id.*, as it is in this case.

Florida courts have held that the question of arbitrability—whether a particular dispute falls within the scope of the arbitration clause at issue—is governed by the law specified in the underlying contract's choice-of-law provision, if one exists.  *See Info. Tech. & Eng'g Corp. v. Reno*, 813 So. 2d 1053, 1055 (Fla. Dist. Ct. App. 2002) (applying California law to determine scope of agreement to arbitrate); *Marine Envtl. Partners, Inc. v. Johnson*, 863 So. 2d 423, 425–26 (Fla. Dist. Ct. App. 2003) ("Where, as here, the contract between the parties specifies the state law to be applied (in this case Colorado law), such a provision will ordinarily be given effect in deciding the parties' right to arbitrate.").  Here, the Token Sale Agreement specifies that the agreement is governed by Delaware law.  (Sykes Decl., Ex. 3, § 7.4.)  Accordingly, Delaware law governs the arbitrability of Plaintiff's claims.

In Delaware, arbitration provisions using the phrase "arising under" are considered "broad in scope." *CAPROC Manager, Inc. v. Policemen's & Firemen's Ret. Sys.*, Civ. A. No. 1059-N, 2005 Del. Ch. LEXIS 50, at *6 (Del. Ch. Mar. 18, 2005) (compelling arbitration). *See also McLaughlin v. McCann*, 942 A.2d 616, 626 (Del. Ch. 2008) (same).  The Eleventh Circuit, too, has attributed broad reach to contractual arbitration provisions covering disputes "arising hereunder."  *See Gregory v. Electro-Mechanical Corp.*, 83 F.3d 382, 384–86 (11th Cir. 1996).

Plaintiff's claims herein are clearly covered under the broad language of the arbitration provision.  Plaintiff alleges that because his purchase of CTR Tokens was, in his view, the purchase of unregistered securities, he is entitled to recover from Defendants under Sections 12(a) and 15(a) of the Securities Act.  Those claims are evidently in dispute with the terms of the Token Sale Agreement that Plaintiff agreed to, which specifies that Centra Tokens "are not securities, investments, shares, or ownership [in] Centra Tech, Inc."  (Sykes Decl., Ex. 3, § 3.14.)  Accordingly, Plaintiff's claims are disputes "arising under" the Token Sale Agreement and must be arbitrated.

### 4.    Plaintiff waived the right to participate in a class action.

Plaintiff is also required to pursue arbitration on an individual, non-class basis.  The class action waiver in the arbitration provision is valid and enforceable under the FAA.  In its landmark opinion *Concepcion*, the Supreme Court held that class action waivers in consumer arbitration agreements are enforceable.  *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344, 352 (2011).  Subsequent decisions of the Supreme Court, the Eleventh Circuit, and this Court rigorously adhere to *Concepcion*'s mandate.  *See, e.g., Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228 (2013) (holding that there is no "vindication of statutory rights" exception to *Concepcion* and rejecting the plaintiffs' argument that the class action waiver was unenforceable); *Pendergast v. Sprint Nextel Corp.*, 691 F.3d 1224, 1236 (11th Cir. 2012)

("[u]nder *Concepcion*, both the class action waiver and the arbitration clause must be enforced according to their terms"); *Deluca v. Royal Caribbean Cruises, LTD*, 244 F. Supp. 3d 1342, 1346 (S.D. Fla. 2017) (enforcing class action waiver where it was "reasonably communicated" to plaintiff).

Thus, in accordance with the express terms of the arbitration provision and the class action waiver in the Token Sale Agreement, Plaintiff has agreed to mandatory arbitration and waived the right to participate in a class action.

> **5.     These proceedings must be stayed pending resolution of Plaintiff's claims in arbitration.**

Under Section 3 of the FAA, "if a suit is filed in the district court upon any issue that is subject to a written arbitration agreement, the court shall stay the trial of such action until arbitration has been had in accordance with that agreement."  *Hill v. Rent-A-Center, Inc.*, 398 F.3d 1286, 1287–88 (11th Cir. 2005) (citing 9 U.S.C. § 3); *see also Kyer v. Teen Challenge of Fl., Inc.*, 2008 U.S. Dist. LEXIS 33854, at *2-3 (M.D. Fla. April 24, 2008) (granting motion to compel arbitration and staying the proceeding); *Flach v. Clarendon Nat'l Ins. Co.*, 2004 U.S. Dist. LEXIS 30197, at *4-6 (M.D. Fla. April 8, 2004).  The rationale for a stay is that dismissal would convert the decision into an appealable order, thus controverting the FAA's underlying policy "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible."  *Katz v. Cellco P'ship*, 794 F.3d 341, 346 (2d Cir. 2015).  Accordingly, the Court should stay this litigation pending arbitration.

> **B.     Plaintiff lacks constitutional standing to bring claims under Section 12(a) and 15(a) because he has not suffered an injury-in-fact.**

Article III of the U.S. Constitution limits the jurisdiction of the federal courts to "cases" or "controversies."  U.S. Const. art. III, § 2, cl. 1.  Indeed, "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of

12

federal-court jurisdiction to actual cases or controversies." *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (citation and quotation marks omitted).  "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  The "irreducible constitutional minimum" of standing consists of three elements: "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Id.*  It is the plaintiff's burden to "clearly" establish standing with allegations of specific "facts" from the outset of the case. *Id.*

An injury-in-fact satisfies Article III only where it is both "concrete and particularized." *Spokeo*, 136 S. Ct. at 1548.  For an injury to be "particularized," it "'must affect the plaintiff in a personal and individual way.'"  *Id.*  "[A] 'concrete' injury must be 'de facto'; that is, it must actually exist."  *Id.* It must be "real" and "not 'abstract.'"  *Id.*  A plaintiff cannot allege "a bare procedural violation [of the statute], divorced from any concrete harm . . . ."  *Id.* at 1549. Instead, the injury must be such that similar harm "has traditionally been regarded as providing a basis for a lawsuit in English or American courts."  *Id.*

> **1.    A plaintiff has no standing (or, in the alternative, has failed to state a claim) under Section 12(a) of the Securities Act where he has sold the alleged security at issue for a profit.**

Section 5 of the Securities Act generally prohibits the offer or sale of any unregistered security in interstate commerce.  *See Hill York Corp. v. Am. Int'l Franchises, Inc.*, 448 F.2d 680, 686 (5th Cir. 1971). Section 12(a), in turn, provides that any person who "offers or sells a security in violation of section 5" may be sued "to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security."  The term "consideration" means "the money or property given by the investor in exchange for the security."  *Randall v.*

*Loftsgaarden*, 478 U.S. 647, 659–60 (1986).  If the plaintiff still owns the security, he is entitled

to rescission, but not damages; if he no longer owns the security, he is entitled to damages only.

*Id.* at 655.

    For over twenty years, courts have held that a plaintiff fails to state a claim for damages

under Section 12(a) of the Securities Act where the plaintiff has already sold the alleged security

at issue for a profit.  The rationale, as explained by the Ninth Circuit, is that "there can be no

recovery unless the purchaser has suffered a loss."  *In re Broderbund/Learning Co. Sec. Litig. v.*

*Mattell, Inc.*, 294 F.3d 1201, 1205 (9th Cir. 2001) (dismissing Section 12(a)(2) claim where

plaintiff disposed of the security at issue for "an amount greater than the purchase price").

Federal district courts around the country have unanimously agreed.  *See Siemers v. Wells Fargo*

*& Co.*, No. C 05-04518 WHA, 2007 U.S. Dist. LEXIS 39091, at *13–15 (N.D. Cal. May 17,

2007) (dismissing Section 12(a)(2) claim where plaintiffs sold the relevant securities for a profit

of 16% to 19%); *In re Mut. Funds Inv. Litig.*, 384 F. Supp. 2d 845, 866–67 (D. Md. 2005)

(dismissing Section 12(a)(2) claim where plaintiffs sold the relevant securities for a profit); *PPM*

*Am. v. Marriott Corp.*, 853 F. Supp. 860, 876 (D. Md. 1994) (dismissing Section 12(2) claim

where plaintiffs sold the relevant securities for a profit).

    Recent Supreme Court case law establishes where a plaintiff fails to allege damages, they

have no constitutional standing.  In *Waxman v. Cliffs Natural Res., Inc.*, 222 F. Supp. 3d 281

(S.D.N.Y. 2016), a federal district court dismissed claims under the Trust Indenture Act for

precisely this reason:

> Where plaintiffs point to no concrete harm that actually has occurred or is
> imminent, and, moreover, the challenged transaction produced an economic
> benefit, they have not suffered the kind of injury-in-fact that is a prerequisite to
> invoking the intended jurisdiction of an Article III court.

*Id.* at 289.[7]  Accordingly, a plaintiff's sale of the alleged security for a profit not only undermines his cause of action—it renders him literally ineligible to pursue a claim in federal court as a matter of constitutional standing.

### 2.    Plaintiff has failed to allege an injury in fact.

The Complaint, taken together with admissions made by Plaintiff in recent filings, establish that Plaintiff purchased 7,728 CTR during the ICO for $3,250.75, and sold that same CTR on October 28, 2017 for approximately $3,864—an 18.8% profit over his purchase price. *See supra* Section II.B.  Accordingly, Plaintiff has no compensable damages under Section 12(a), and therefore has not suffered an injury-in-fact that can be redressed by a favorable judicial decision.  *Spokeo*, 136 S. Ct. at 1547.  Because Plaintiff has failed to "clearly" satisfy the "irreducible constitutional minimum" of standing, his claim under Section 12(a) must be dismissed under Rule 12(b)(1).

### C.    Plaintiff's theory of "control person" liability against the Individual Defendants must be dismissed.

Section 15(a) of the Securities Act, 15 U.S.C. § 77o, provides for joint-and-several liability of:

> [e]very person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under section 11 or 12, . . . unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist.

---

[7]    A plaintiff likewise lacks standing where they held the securities at issue and elected for rescission after an increase in value—a fact pattern that may apply to other putative class members.  *See, e.g., In re AOL Time Warner Sec. ERISA Litig.*, 381 F. Supp. 2d 192, 245–46 (S.D.N.Y. 2004) (dismissing for lack of an injury in fact where the securities at issue had "actually increased in value").

15

*Id.*  To state a claim under Section 15(a), a plaintiff must allege (1) a primary violation of the securities laws by a controlled company; (2) that the defendant had "the power to control the business affairs of" the controlled company; and (3) that the defendant "had the requisite power to directly or indirectly control or influence the specific corporate policy which resulted in primary liability."  *Theoharous v. Fong*, 256 F.3d 1219, 1227 (11th Cir. 2001) (quotation marks omitted).

Plaintiff's claims under Section 15(a) fail on each of these prongs.  First, as established above, Plaintiff has no standing to bring a claim under Section 12(a), meaning that he cannot establish that "the company violated the securities laws."  Without that predicate, Plaintiff's claim under Section 15(a) is not independently viable.  *See, e.g., In re Mut. Funds Inv. Litig.*, 384 F. Supp. 2d at 867 n.21 (dismissing Section 15(a) claim along with underlying claim where plaintiffs sold the relevant securities for a profit).

Second, "[a] defendant is not subject to control person liability simply because he is an officer or director of a corporation."  *Tippens v. Round Island Plantation LLC*, No. 09-CV-14036, 2009 U.S. Dist. LEXIS 66224, at *37 (S.D. Fla. July 31, 2009) (dismissing claim under Section 15(a)).  Instead, a plaintiff must come forward with facts establishing the defendant's actual degree of control.   "[A] complaint that merely restates the legal standard for control person liability, without providing facts in support of the allegation, does not adequately plead control person liability." *Id.* at 36*–37.  *See also Slayter v. DC 701, LLC*, No. 8:07-cv-1903-T-24-EAJ, 2008 U.S. Dist. LEXIS 68159, at *8–9 (M.D. Fla. July 3, 2008) (dismissing claim under Section 15(a)).  Here, Plaintiff's allegations consist of a bare recitation of the generic corporate office or managerial title held by each Individual Defendant, *see* Compl. ¶¶ 12–15, and the conclusory statement echoing the legal standard for control person liability, *id.* ¶ 70.  Because

Plaintiff has not alleged facts sufficient to establish that any Individual Defendant is liable on a theory of control liability, that claim must be dismissed.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court (i) compel Plaintiff to arbitrate his claims against Defendants on an individual basis and stay this matter until such arbitration is concluded, (ii) dismiss this action for lack of subject-matter jurisdiction and failure to state a claim, and/or (iii) grant Defendants such and further other relief as the Court deems just and proper.

<u>*Certificate of Good Faith Conference*</u>

Pursuant to Local Rule 7.1(a)(3), I hereby certify that counsel for the movant has

conferred with all parties or non-parties who may be affected by the relief sought in the motion

in a good faith effort to resolve the issues raised in the motion and has been unable to do so.

Date:  February 2, 2018                              Respectfully submitted,

**MANDEL & MANDEL LLP**                    **BALLARD SPAHR LLP**
169 East Flagler Street, Ste. 1200               1735 Market St., 51st Floor
Miami, FL 33131                                         Philadelphia, PA 19103-7599
Tel: (305) 374-7771                                    Telephone: (215) 864-8500
Fax: (305) 374-7776                                   Facsimile: (215) 864-8999

By: */s/ Nina Stillman Mandel*                   1675 Broadway, 19th Fl.
NINA STILLMAN MANDEL, ESQ.            New York, NY 10019-5820
Florida Bar No. 843016                             Telephone: (212) 223-0200
nsm@mandel.law                                      Facsimile: (212) 223-1942

                                                              */s/ David L. Axelrod*
                                                              DAVID L. AXELROD, ESQ.*
                                                              axelrodd@ballardspahr.com
                                                              MARJORIE J. PEERCE, ESQ.*
                                                              peercem@ballardspahr.com
                                                              THOMAS F. BURKE, ESQ.*
                                                              burket@ballardspahr.com

                                                              *admitted *pro hac vice*

                                                              *Counsel for Defendants Centra*
                                                              *Tech, Inc., Sohrab Sharma,*
                                                              *Raymond Trapani, Robert Farkas,*
                                                              *and William Hagner*

18

**<u>Certificate of Service</u>**

       I hereby certify that on February 2, 2018, I electronically filed a true and correct copy of the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel or parties of record via CM/ECF.

*<u>s/ Nina Stillman Mandel</u>*
