UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-24500-CIV-KING/SIMONTON

JACOB ZOWIE THOMAS RENSEL,

    Plaintiff,

v.

CENTRA TECH, INC., ET AL

    Defendants.
_____/

**REPORT AND RECOMMENDATION ON PLAINTIFF'S RENEWED MOTION FOR A TEMPORARY RESTRAINING ORDER, ASSET FREEZE, DOCUMENT PRESERVATION ORDER, AND ORDER TO MAKE ACCOUNTING AND OTHER ANCILLARY RELIEF**

This matter is before the Court on the Plaintiff's Renewed Motion for Temporary Restraining Order, Asset Freeze, Document Preservation Order, and Order to Make Accounting and Other Ancillary Relief, ECF No. [54] (the "Renewed Motion"). The Motion has been fully briefed, ECF Nos. [63], [65], and oral argument was held on April 20, 2018. The Honorable James Lawrence King, United States District Judge, has referred the Renewed Motion to the undersigned for a hearing and to issue a Report and Recommendation, ECF No. [55]. For the reasons stated herein, it is **RECOMMENDED** that Plaintiff's Renewed Motion be **GRANTED** to the limited extent consented to by the Defendants; and, otherwise, **DENIED**.

    I.    **FACTUAL BACKGROUND**

Defendant Centra Tech is a start-up company that purported to develop and market technology the company claimed would allow individuals around the world to store and spend their cryptocurrency, such as current market leaders Bitcoin and Ether, with the ease of spending traditional fiat currency, such as U.S. dollars. Complaint

("Compl.") at ¶ 2. Defendants Sohrab Sharma, Raymond Trapani, Robert Farkas, and William Hagner are or were founders and/or officers in Centra Tech.[1]  Compl. at ¶¶ 12-14.

Centra Tech was incorporated in Delaware on July 27, 2017 and maintains its headquarters at 555 Washington Avenue, Miami Beach, Florida 33139.  Compl. at ¶ 11.  Centra Tech advertised itself to consumers as "the world's first Debit Card that is designed for use with compatibility on 8+ major cryptocurrencies blockchain assets."  Compl. at ¶ 30.  As such, Centra Tech proposed to be the first company to provide a bridge between the nascent cryptocurrency industry and the general retail world, transforming blockchain currencies, which are currently accepted only in limited settings, into widely usable currency by allowing individuals to pay for goods and services with cryptocurrency through a common debit card.  Defendants conducted an "initial coin offering" or "ICO" from July 30, 2017 through October 5, 2017 in order to raise capital for further development of the Centra Debit Card and Centra Wallet.  Compl. at ¶ 2.  Centra also claimed to be planning development of an online marketplace referred to as cBay.  Compl. at ¶ 2.

During its ICO, Centra Tech offered what it referred to as a token, known as the Centra Token or CTR, for sale to the public.  Compl. at ¶ 3.  Centra Tech represented that a member of the public would need to own CTR to utilize the Centra Wallet or Centra Card, neither of which yet exist.  Compl. at ¶¶ 2-3.  The Plaintiffs allege that the Centra ICO and sale of tokens was an offer and sale of securities.  Compl. at ¶ 3.

Plaintiffs Jacob Zowie Thomas Rensel and Wang Yun He participated in the Centra Tech ICO and allege that they, and other member of the Class, sustained harm as

---

[1] The Defendants filed a Suggestion of Death as to William Hagner on April 12, 2018, noting that Mr. Hagner died on March 22, 2018, during the pendency of this action, ECF No. [60].

2

a result of the Defendant's conduct in violation of the Securities Act of 1933 (hereafter, "Securities Act").

## II.     PROCEDURAL BACKGROUND

The instant Complaint was filed on December 13, 2017, alleging violations of Section 12(a) of the Securities Act, 15 U.S.C. § 77*l*, against all Defendants and violation of Section 15(a) of the Securities Act, 15 U.S.C. § 77o, against the Individual Defendants, ECF No. [1]. The Defendants filed their Motion to Compel Arbitration and Stay and/or in the Alternative to Dismiss Under Rule 12(b)(1) and 12(b)(6) on February 2, 2018, ECF No. [26]. Therein, the Defendants argue that (1) the Plaintiff should be compelled to arbitrate his claims pursuant to a mandatory arbitration provision; (2) the Plaintiff lacks Article III standing to bring a claim; and (3) the Plaintiff has failed to plead facts sufficient to support control person allegations against the individual defendants, ECF No. [26] at 6-7. The Plaintiff filed his Response in Opposition on February 16, 2018, ECF No. [31], and the Defendants filed their Reply on February 23, 2018, ECF No. [34]. Because Defendants attached an affidavit to the Reply that attempted to submit new evidence, the Plaintiff was granted leave to file a sur-reply, and did so on April 17, 2018, ECF No. [66].

On March 5, 2018, Wang Yun He filed a Motion for Appointment as Lead Plaintiff and Approval of Selection of Counsel, ECF No. [39]. Therein, Mr. He argued that he, and not Plaintiff Rensel, was the most adequate plaintiff as defined by the Private Securities Litigation Reform Act. Plaintiff Rensel filed a Motion for Appointment as Lead Counsel that same day, and subsequently moved the court for an order permitting limited discovery as to adequacy and typicality of Mr. He to serve as Lead Plaintiff, ECF No. [44]. On March 16, 2018, Plaintiff Rensel and Mr. He filed a Joint Motion for Appointment as Co-Lead Plaintiffs and Approval of Selection of Counsel, arguing that both proposed plaintiffs met all requirements and that a co-lead structure would benefit the class. The court granted the Joint Motion on April 9, 2018, ECF No. [59].

Separately, the United States Securities and Exchange Commission (the "SEC") filed suit in the Southern District of New York against Sohrab Sharma and Robert Farkas on April 2, 2018, alleging the defendants engaged in and are engaging in ongoing securities fraud in violation of Section 17(a)(1)-(3) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)(1)-(3)], Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)], and Rule 10b-5(a)-(c) thereunder [17 C.F.R. § 240.10b-5(a)-(c)]; and that, without a registration statement being in effect or filed, Defendants engaged and are engaged in the unlawful sale and offer to sell securities in violation of Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c)]. *SEC v. Sharma et al.*, Case No. 1:18-cv-02909-DLC (S.D.N.Y. filed April 2, 2018). On April 20, 2018, an Amended Complaint was filed in that action adding Mr. Trapani as a defendant.

Criminal charges have also been filed against Mr. Sharma, Mr. Farkas, and Mr. Trapani in the Southern District of New York in connection with the Centra Tech ICO. *USA v. Sharma et al.*, Case No. 1:18-cr-00340-LGS (S.D.N.Y. filed March 31, 2018). The Government has filed charges against the defendants for (1) Conspiracy to Commit Securities Fraud; (2) Securities Fraud; (3) Conspiracy to Commit Wire Fraud; and (4) Wire Fraud.

On April 5, 2018, the Plaintiff filed its Renewed Motion for Temporary Restraining Order. The Plaintiff has renewed its Motion for Temporary Restraining Order "because newly discovery factual developments concerning the status and safekeeping of the ICO proceeds necessitate immediate judicial intervention." Specifically, the Plaintiff contends that information disclosed in relation to the SEC action filed in the Southern District of New York indicates that relevant assets have been depleted and that Defendant Farkas' attempt to flee further shows there is a significant risk of one of Defendants or an affiliate attempting to remove relevant assets beyond the reach of the United States judicial

system, ECF No. [54] at 1-2.  Accordingly, Plaintiff seeks an order: (i) temporarily restraining Defendants from directly or indirectly, alone or in concert with others (including any officer, agent, employee and/or representative of Centra Tech), transferring or dissipating the ICO proceeds; (ii) imposing an asset freeze and constructive trust covering Defendants Centra Tech, Sharma, Trapani, Farkas and Hagner—along with Centra Tech's current or former officers, agents, affiliates and the Individual Defendants' affiliates, representatives and other relevant individuals' accounts and/or digital currency wallets holding any ICO proceeds; (iii) prohibiting Defendants, their officers, affiliates, and other relevant individuals from destroying, erasing or otherwise making unavailable for further proceedings in this matter, any records or documents (including data or information maintained in computer files or other electronic storage media) which relate to Centra Tech or the Centra Tech ICO; (iv) requiring Defendants to provide an interim accounting, under oath, detailing: (a) all investor monies, assets, digital currencies, virtual currencies, cryptocurrencies, collected in connection with the Centra Tech ICO and Centra Tech's business operations; and (b) a schedule of all transactions involving the ICO proceeds, including all transfers, liquidations, purchases and expenditures involving the ICO proceeds from July 1, 2017 through the date of the accounting.[2]

In response, the Defendants consent to the entry of an Order providing limited injunctive relief, but argue that further injunctive relief is unwarranted.  Defendants note that on April 13, 2018, the Southern District of New York issued a warrant of seizure for 91,000 Ether stored in the ICO wallet, ECF No. [63] at 3. As of May 16, 2018, that 91,000 Ether has been transferred to a government-controlled digital wallet, ECF No. [72].

---

[2] The Plaintiff additionally sought a shortened briefing schedule for the instant motion, but that relief was addressed by the undersigned's Order of April 10, 2018, ECF No. [57].

### III. APPLICABLE LAW

Plaintiffs seek a Temporary Restraining Order pursuant to Federal Rule of Civil Procedure 65(b).[3] The same four factors apply to the determination of whether to grant a temporary restraining order or preliminary injunction. *Schiavo v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005). To prevail on a request for either form of relief, a movant must demonstrate the following four elements:

> (1) a substantial likelihood of success on the merits of the underlying case,
>
> (2) the movant will suffer irreparable harm in the absence of an injunction,
>
> (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction issued, and
>
> (4) an injunction would not disserve the public interest.

J*ohnson & Johnson Vision Care. Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1246-47 (11th Cir. 2002) (citation omitted). A preliminary injunction is an extraordinary and drastic remedy which should not be granted unless the movant can clearly establish each of the four elements. *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016) (citing *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000)). The failure to establish an element will warrant denial of the request for preliminary injunctive relief and obviate the need to consider the remaining prerequisites. *Dawson v. Ameritox, Ltd.,* 571 F. App'x 875, 880 (11th Cir. 2014); *see also Pittman v. Cole*, 267 F.3d 1269, 1292 (11th Cir. 2001) (citing *Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994)). Indeed, "a preliminary injunction is a powerful exercise of judicial authority in advance of trial. The chief function of a preliminary injunction is to preserve the status quo until the merits of

---

[3] At the hearing, Plaintiffs' counsel explained that they sought a temporary restraining order rather than a preliminary injunction based upon the District Judge's comments at the hearing on their initial motion that indicated the preliminary injunction hearing would proceed more like a trial, and that their pending motion on discovery that was necessary to proceed in this manner had not been granted.

the controversy can be fully and fairly adjudicated." *Northeastern Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville*, 896 F.2d 1283, 1284 (11th Cir. 1990). Thus, a preliminary injunction "is not the same as an adjudication on the merits," but is merely a device created to preserve the rights of the parties until a determination can be made on the merits. *Tipsey McStumbles, LLC, v. Griffin,* No. CV 111-053, 2011 WL 13217129, *1 n.1 (S.D. Ga. Aug. 2, 2011) (citing *Augusta Video, Inc. v. Augusta-Richmond Cnty., Ga.*, 249 F. App'x 93, 98 n.4 (11th Cir. 2007).

In considering a motion for preliminary injunctive relief, "a district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is 'appropriate given the character and objectives of the injunctive proceeding.'" *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (citing *Asseo v. Pan Am. Grain Co.*, 805 F.2d 23, 26 (1st Cir. 1986)). When considering a motion for preliminary injunction, a district court may assess the relative strength and persuasiveness of the evidence presented by the parties, and is not required to resolve factual disputes in favor of the non-moving party. *See Imaging Business Machines, LLC. v. BancTec, Inc.*, 459 F.3d 1186, 1192 (11th Cir. 2006).

IV.  **ANALYSIS**

The Plaintiff argues that a temporary restraining order is appropriate because (1) Plaintiff is likely to succeed on the merits of his claims; (2) Plaintiff and the class face irreparable harm; (3) the balance of the equities favor the Plaintiff; and (4) the public interest will be served by entry of a temporary restraining order, ECF No. [54]. In their Response, the Defendants dispute the Plaintiff's entitlement to the relief sought generally and contend that much of the relief requested has already been rendered moot. The Defendants, however, agree to certain limited relief. In its Response, the Defendants state that "Centra Tech consents to an order enjoining Centra Tech from accessing the

assets in the ICO Wallet for any purpose other than complying with the Seizure Warrant (and to a preliminary injunction of the same scope)." ECF No. [63], Response at 4. Centra Tech further "consents to the entry of a preservation order" "to the extent that Centra Tech is currently in possession of or has returned to it any materials relevant to the instant matter." ECF No. [63], Response at 5.[4] At oral argument, the Defendants further consented to entry of an asset freeze as to the contents of the ICO Wallet, including the 8,932.325 Ether that was not subject to the government's Seizure Warrant.

Therefore, the undersigned will consider the Plaintiff's arguments as to its entitlement to a temporary restraining order beyond the scope of that agreed to by the Defendants.

### A. Likelihood of Success on the Merits

First, the Plaintiff must establish a likelihood of success on the merits. Because Plaintiff's control person liability claims depend upon the viability of the underlying Section 12 claim, it is necessary for the Plaintiff to demonstrate a likelihood of success on the Section 12 claim in order to establish an entitlement to a temporary restraining order. In order to establish liability under Section 12(a)(1), a Plaintiff in the Eleventh Circuit must prove (1) the Defendants sold or offered to sell securities; (2) no registration statement was in effect as to the securities; and (3) interstate transportation or communication and the mails were used in connection with the sale or offer of sale. *Sec. & Exch. Comm'n v. Levin*, 849 F.3d 995, 1001 (11th Cir. 2017). Plaintiffs must also prove an entitlement to recovery under the statute. *In re Mut. Funds Inv. Litig.*, 384 F. Supp. 2d 845, 866 (D. Md. 2005). "A substantial likelihood of success on the merits requires a

---

[4] **Though the Response explicitly consents to limited injunctive relief on behalf of Centra Tech, leaving some ambiguity as to the consent of the individual Defendants, during oral argument counsel for the Defendants confirmed that all Defendants consent to limited injunctive relief.**

8

showing of only *likely* or probable, rather than *certain,* success." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1232 (11th Cir. 2005) (citations omitted).

### 1. Centra Tokens are Securities

The Defendants have conceded for purposes of the present motion only that the Centra Tokens sold are securities, though they have indicated an intention to challenge that classification if necessary at a later time, ECF No. [26], Motion to Compel Arbitration and Stay and/or Dismiss at 7 n.6 ("Centra Tech disputes the characterization of the Centra Token as a security and will raise that argument if necessary at the appropriate time.") Nonetheless, in order to determine the Plaintiffs' likelihood of success on the merits, this court must analyze the characterization of Centra Tokens as a security. The Defendants do not dispute that Centra Tokens were sold to the public by the Defendants, so the first element of liability under Section 12(a) is established if it is determined that the Centra Tokens are securities under the Securities Act,. ECF No. [26-1] Shutt Decl. at ¶ 6 ("From July 30, 2017 through September 26, 2017, Centra Tech held an initial coin offering ("ICO") in which it issued to the public a "utility token" of its own creation —the Centra Token ("CTR")).

The definition of security under the Securities Act includes "investment contract(s)." "An offering is an investment contract if there is: (1) an investment of money (2) in a common enterprise, (3) with the expectation of profits to come solely from the efforts of others." *Tippens v. Round Island Plantation LLC*, 2009 WL 2365347, at *9 (S.D. Fla. July 31, 2009) (citing *SEC v. Unique Fin. Concepts, Inc.*, 196 F.3d 1195, 1199 (11th Cir. 1999).

It is well-established that the "investment of money" required for an investment contract need not be made in cash, and refers more generally to "an arrangement whereby an investor commits assets to an enterprise or venture in such a manner as to subject himself to financial losses. *SEC v. Friendly*, 49 F. Supp. 2d 1363, 1368–69 (S.D.

9

**Fla. 1999);** *see also Uselton v. Comm. Lovelace Motor Freight, Inc.*, **940 F.2d 564, 574 (10th Cir. 1991).  Thus, the Plaintiffs investment of assets, in the form of Ether and/or Bitcoin, satisfies the "investment of money" prong for an investment contract.**

**Plaintiffs must next establish the existence of a "common enterprise."  In the Eleventh Circuit, "a common enterprise exists where the 'fortunes of the investor are interwoven with and dependent upon the efforts and success of those seeking the investment of third parties."** *SEC v. Unique*, **196 F.3d at 1199 (citing** *Villeneuve v. Advanced Bus. Concepts Corp.*, **698 F.2d 1121, 1124 (11th Cir. 1990)).  "The thrust of the common enterprise test is that the investors have no desire to perform the chores necessary for a return, and are attracted to the investment solely by the prospects of a return.** *Eberhardt v. Waters*, **901 F.2d 1578, 1580–81 (11th Cir. 1990).  Herein, the fortunes of individual investors in the Centra Tech ICO were directly tied to the failure or success of the products the Defendants purported to develop.  An individual investor could exert no control over the success or failure of his or her investment.  Thus, the Plaintiffs have established the existence of a common enterprise.**

**Finally, the third prong of the** *Howey* **test is satisfied when "the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise.'"** *Bamert v. Pulte Home Corp.*, **445 Fed. App'x 256, 262 (11th Cir. 2011) (quoting** *Williamson v. Tucker*, **645 F.2d 404, 418 (11th Cir. 1981));** *see also SEC v. Merchant Capital, LLC*, **483 F.3d 747, 755 (11th Cir. 2007) ("'the focus is on the dependency of the investor on the entrepreneurial or managerial skills of a promoter or other party'") (quoting** *Gordon v. Terry*, **684 F.2d 736, 741 (11th Cir. 1982)).  Because the success of Centra Tech and the Centra Debit Card, CTR Tokens, and cBay that it purported to develop was entirely dependent on the efforts and actions of the Defendants, the third prong is satisfied.  Therefore, the offering**

10

of Centra Tokens was an investment contract under the Securities Act, such that the Defendants sold or offered to sell securities by virtue of the Centra Tech ICO.

2. No Registration Statement In Effect

The Defendants have never disputed that there was no registration statement in effect as to the Centra Tokens sold at any time.

3. Interstate Means Were Used

Because it well-established that the Internet is an "instrumentality of interstate commerce,"[5] the Plaintiffs have established that interstate means were used to offer and sell the CTR Tokens. *See* ECF No. [26-4], Centra Tech Token Sale Home Page (providing visitors to the page with information on how to purchase Centra Tokens through the Token Sale Home Page or via the Centra Tech Smart Contract).

4. Plaintiffs Have Suffered Recoverable Damages Under Section 12(a)(1)

Between September 21, 2017 and October 1, 2017, Plaintiff He purchased 702,269.4 CTR in exchange for Ether and Bitcoin valued at approximately $768,299.00, ECF No. [64] at 10. On December 17, 2017, Plaintiff He sold all of his CTR in exchange for Bitcoin valued at approximately $561,816.00, thus suffering a loss of approximately $206,483.00, ECF No. [64].[6]

Thus, the Plaintiff has shown (1) that the Defendants sold or offered to sell securities; (2) no registration statement was in effect as to the securities; (3) interstate means were used in connection with the offer or sale; and (4) that the Plaintiff suffered recoverable damages under Section 12(a)(1).

---

[5] *See, e.g., SEC v. Levin*, No. 12-cv-21917, 2013 WL 594736, at *12 (S.D. Fla. Feb. 14, 2013) ("the Internet, which necessarily includes email, is an 'instrumentality of interstate commerce.'") (quoting *United States v. Hornaday*, 392 F.3d 1306, 1311 (11th Cir. 2004)).

[6] Co-lead Plaintiff Wang Yun He was made a party to the action by Court Order on April 9, 2018, ECF No. [59], and fully supports the Renewed Motion. ECF No. [65] at 1.

### 5. Defenses Raised by the Defendants

The Defendants have not yet filed an Answer in the instant action and rely on the arguments raised in their Motion to Compel Arbitration and/or Dismiss in opposition to the Plaintiff's Renewed Motion for Temporary Restraining Order. Therein, the Defendants argue that Plaintiff Rensel's claims are subject to a mandatory arbitration clause, that the Complaint should be dismissed because Plaintiff Rensel failed to suffer recoverable damages, and that Count II of the Complaint, which alleges individual control person liability against the four individual defendants, should be dismissed for failure to state a claim. Because control person liability under Section 15 of the Securities is derivative of the Plaintiff's Section 12 claims,[7] and because the Plaintiff need only establish the likelihood of success on the merits as to a single claim to prevail on the motion for temporary restraining order,[8] the Defendants' argument for dismissal of the Section 15 claim need not be addressed herein.

Defendants argue in their Motion to Compel and/or Dismiss that Plaintiff Rensel lacks standing to bring a claim pursuant to Section 12(a)(1) of the Securities Act because Plaintiff Rensel profited from the sale of his Centra Tokens and thus has not suffered recoverable damages. As explained in more detail in the Report and Recommendation on the Motion to Compel Arbitration and Stay and/or Dismiss, ECF No. [77], and

---

[7] *Greenfield Children's P'ship v. Friendfinder Networks, Inc.*, No. 11- CV-81270, 2014 WL 12205997, *6 n.10 (S.D. Fla. Mar. 18, 2014) (noting that "Section 15 imposes derivative liability on certain 'control persons' for primary violations of the Securities Act" and dismissing claims under Section 15 because the complaint "fails to state a claim under the predicate Securities provisions").

[8] "In order to grant a temporary restraining order or a preliminary injunction in a case such as this, raising a number of separate claims for relief, it is sufficient if this court, finds that plaintiffs are likely to succeed on any of their claims, so long as the ultimate victory on this claim could be rendered relevant by the defendants' actions in the interim." *Louis v. Meissner*, 530 F. Supp. 924, 926 (S.D. Fla. 1981) citing *Tenants for Justice v. Hills*, 413 F. Supp. 389 (Ed.Pa.1975).

summarized below, the undersigned concurs. Plaintiff Rensel purchased his Centra Tokens for 16.1 Ether, valued on the day of the purchase at $3,250.75, and sold them for 0.7096997 Bitcoin, valued on the day of the sale at $3,517.00. Plaintiff Rensel, however, argues that because the Bitcoin he received upon sale of his Centra Tokens was sufficient to purchase only 13.723 Ether, he has suffered a loss in Ether. Because Plaintiff Rensel has sold and no longer holds his Centra Tokens, however, he is entitled only to monetary damages, not to rescission in the consideration he originally used in the purchase. *See, e.g. In re Mutual Funds Inv. Litig.*, 384 F. Supp. 2d 845, 867 (D. Md. 2005) ("the only damages recoverable under Sections 11 and 12(a)(2) are based upon price differentials, and plaintiffs therefore have not stated any cognizable harm under those statutes"); *Plumbers' & Pipefitters' Local No. 562 Supplemental Plan & Tr. v. J.P. Morgan Acceptance Corp. I*, No. 08 CV 1713 ERK WDW, 2012 WL 601448, at *8–10 (E.D.N.Y. Feb. 23, 2012) (dismissing claims under Section 12 because "[a]lthough the Lead Plaintiff has sufficiently alleged economic loss with respect to the Certificates generally, it is unable do so with respect to the two Certificates it sold for a profit or no loss"). Thus, Plaintiff Rensel has not suffered recoverable damages under Section 12(a)(1) and his claims are subject to dismissal. As previously referenced, however, Plaintiff He became a party to the action on April 9, 2018 and supports the Plaintiffs' Renewed Motion. Because Plaintiff He suffered a loss of $206,483.00 upon the sale of his Centra Tokens, he has suffered recoverable damages under Section 12(a)(1).

The Defendants argument that Plaintiff Rensel is subject to mandatory arbitration also fails.[9] Though the Eleventh Circuit has recognized that the Federal Arbitration Act

---

[9] The undersigned notes that, as to Plaintiff He, the Defendants contended that He was bound by an arbitration agreement and could not proceed in federal court. Plaintiff He was not the subject of the Motion to Compel Arbitration and Stay and/or Dismiss, however, because He had not been made a party to the action at the time the Motion to Dismiss was filed; and an Amended Complaint formally naming He has not been filed and is the subject of a pending motion for leave to file an Amended Complaint.

creates a presumption of arbitrability such that doubts regarding the scope of arbitration should be resolved in favor of arbitration, that presumption does not apply to the determination of whether an arbitration agreement exists, *Dasher v. RBC Bank (USA),* 745 F.3d 1111, 1115–16 (11th Cir. 2014).  Plaintiff Rensel submitted a declaration stating that he did not agree to any terms and conditions in connection with his purchase of Centra Tokens and the Defendants have failed to provide competent evidence to demonstrate the existence of a genuine issue of material fact concerning the existence of the arbitration agreement.  Therefore, Plaintiff Rensel is not subject to mandatory arbitration.  *Bazemore v. Jefferson Capital Sys., LLC*, 827 F. 3d 1325, 1334 (11th Cir. 2016).

For the reasons stated above, which are addressed in more detail in this Court's Order on Defendant's Motion to Compel Arbitration and Stay or in the Alternative Dismiss, ECF No. [77], the undersigned finds that at least Plaintiff He has established a substantial likelihood that he will prevail on the merits of its claim for violation of Section 12.

### B.       Irreparable Harm Will be Suffered If the Relief is Not Granted

Second, Plaintiff must show that irreparable harm will be suffered if the injunctive relief sought is not granted.

Plaintiffs claim that without an injunction the Defendants will dissipate or abscond with the ICO proceeds and thus the Court will be unable to restore to the Plaintiffs the Ether they initially invested and any monetary damages awarded will be uncollectable. According to the Plaintiffs, the "egregious deceptive activities Defendants engaged in to solicit investments in the Centra Tech ICO and Defendant Sharma's history relating to alleged fraudulent activity indicate[] that the Defendants c[an] not be trusted to safeguard and manage the ICO proceeds pending resolution of the Action." ECF No. [54].

14

Plaintiffs, however, have put forth little evidence that their fears of future dissipation are well-founded, instead relying on the past fraudulent behavior of Defendant Sharma and the deceptive activities the Defendants engaged in in connection with the Centra Tech ICO, ECF No. [54] at 15-19. But safeguards have already been put in place that would prevent the Defendants from dissipating the ICO proceeds. Prior to the initiation of this litigation, Defendants placed 99,931.325 Ether in a secure Ethereum public wallet (the "ICO Wallet"), the key to which was broken in half, the halves of which were stored in separate safety deposition boxes, one of which was accessible only by Allan Shutt, the General Counsel and Chief Compliance Officer of Centra Tech, Inc., and the other of which was accessible only by Robert Farkas, the Chief Operating Officer of Centra Tech, Inc. ECF No. [63], Response at 2. [10]

On April 1, 2018, Defendant Farkas was arrested and taken into federal custody. In connection with the criminal investigation of the Centra Tech ICO, the Department of Justice demanded that Centra Tech turn over the halves of the private key to the ICO Wallet. On April 11, 2018, Mr. Shutt met with agents of the Federal Bureau of Investigation and relinquished his half of the private key, ECF No. [63], Response at 3. On May 16, 2018, the defendants confirmed that the government had successfully accessed the ICO Wallet and transferred 91,000 Ether to a government-controlled digital wallet. ECF No. [72]. Following the government's transfer, 8,932.325 Ether remain in the ICO Wallet.

---

[10] The Defendants contend the 99,931.325 Ether in the "ICO Wallet" is comprised of 51,000 Ether in ICO Proceeds, 40,000 Ether from Centra Tech's South Korean partner, and 8,931.325 Ether belonging to Centra Tech but unrelated to the ICO. ECF No. [63], Response at 2-3. The Defendants, however, have consented to an injunction as to all of the funds in the ICO Wallet. ECF No. [63] at 4 ("Centra Tech consents to an order enjoining Centra Tech from accessing the assets in the ICO Wallet for any purpose other than complying with the Seizure Warrant (and to a preliminary injunction of the same scope.").

The individual Defendants have all been arrested and charged with crimes related to the Centra Tech ICO. A review of the public record of the criminal case reflects that the Defendants have been released on bail. Though the Defendants have been released, they are all subject to significant bail conditions that decrease any risk of the harm feared by the Plaintiffs – the dissipation of the remaining funds in the ICO Wallet and other ICO related funds and/or the flight of the Defendants. *USA v. Sharma et al.*, Case No. 1:18-cr-00340-LGS (S.D.N.Y. filed March 31, 2018).[11] All of the Defendants have posted multi-million dollar bonds in order to secure their release, signed by co-signers and secured by cash and/or property. All of the Defendants have surrendered their travel documents. Defendants Sharma and Farkas are prohibited from use or access to computers, smart phones, or the internet; Mr. Trapani's internet access is to be monitored. Thus, it does not appear that granting an injunction beyond that agreed to by the Defendants is necessary to prevent any irreparable injury to the Plaintiffs. In the absence of a showing that there is a current actual and imminent threat to the ICO proceeds, the Plaintiff's concern is highly speculative. "Harm, in the context of an award of damages, is not irreparable if the injury to the plaintiff is remote or speculative (as opposed to actual or imminent)." *Kebapci v. Tune Core Inc.*, No. 15-CV-7141 (ENV)(ST), 2016 WL 6804919, at *3 (E.D.N.Y. Nov. 16, 2016) (denying Plaintiff's request for preliminary injunction on basis of feared dissipation of assets because "a plaintiff must still allege facts (not conclusions) and provide evidence that the targeted defendants intend to frustrate judgment in the case at bar. Plaintiff's blanket contention that defendants are 'transferring their assets' and 'trying to avoid satisfying any judgment'

---

[11] At any stage of a case and on its own, a court may judicially notice a fact that cannot be reasonably disputed because it either is generally known or can be readily and accurately determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b)–(d). *See, e.g., Fernandez–Morales v. Barron,* No. 5:06cv1/MCR/EMT, 2006 WL 680819, at *2 (N.D. Fla. Mar.13, 2006) (a district court may take judicial notice of the public docket of a case pending in another federal judicial district).

does not suffice.") (internal citations omitted); *see also Siegel*, 234 F.3d at 1176-77 (movant must show that the irreparable injury is "neither remote or speculative, but actual and imminent.").

Moreover, though the Plaintiffs have indicated that the class may include individuals who seek rescission of the original Ether they paid for Centra Tokens, neither Plaintiff Rensel nor Plaintiff He are entitled to seek rescission, as both have already sold the CTR they purchased and are only entitled to damages. 15 U.S.C. 77l (claimant under statute may "may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security."). Plaintiffs Rensel and He, therefore, can seek only monetary damages in this action, and "[f]inancial damage alone is insufficient to warrant injunctive relief" based on the threat of irreparable injury.[12] *Seiko Kabushiki Kaisha v. Swiss Watch Int'l, Inc.*, 188 F. Supp. 2d 1350, 1355 (S.D. Fla. 2002). "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Northeastern Fla.*, 896 F.2d at 1285 (citing *Sampson v. Murray*, 415 U.S. 61, 90 (1974)); *see also Kebapci v. Tune Core Inc.*, No. 15-cv-7141 (ENV)(ST), 2016 WL 6804919, at *3 (E.D.N.Y. Nov. 16, 2016) ("[A]n injury is not irreparable if a monetary award can provide adequate compensation.").

Without a finding of a likelihood of an "actual and imminent" irreparable injury, preliminary injunctive relief is improper. *See Siegel,* 234 F.3d at 1176 ("Significantly, even

---

[12] Moreover, it is unclear how many members of the class suffered a loss, as well as how many are subject to the arbitration provisions in certain sales contracts, and whether their claims would be subject to injunctive relief by the Court. Thus, Plaintiff has failed to establish that all proceeds and profits generated by the Centra Tech ICO are subject to injunctive relief by this Court.

if Plaintiffs establish a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper."). Thus, the Plaintiffs are not entitled to the additional injunctive relief sought.[13] The Defendants, however, have agreed to the entry of certain precautionary injunctive relief and the undersigned believes that entry of an Order providing the injunctive relief to which the Defendants have consented is appropriate.[14]

V. **CONCLUSION AND RECOMMENDATION**

Therefore, in accordance with the above, it is hereby

**RECOMMENDED** that the Defendant's Renewed Motion for a Temporary Restraining Order, Asset Freeze, Document Preservation Order, and Order to Make Accounting and Other Ancillary Relief, ECF No. [54], be **GRANTED** to the limited extent consented to by the Defendants, and otherwise be **DENIED**; as follows:

An asset freeze is imposed over the contents of the ICO Wallet; and

Defendants Centra Tech, Inc., Sohrab Sharma, Raymond Trapani, Robert Farkas, and William Hagner, directly or indirectly, and whether alone or in concert with others, including any officer, agent, employee and/or representative of Centra Tech, and including any representative, agent, or heir of Defendant Hagner,[15] are enjoined from:

---

[13] Because the undersigned concludes that the Plaintiffs have failed to establish irreparable injury, the remaining prerequisites to a preliminary injunction are not discussed. *See, e.g., Northeastern Florida,* 896 F.2d at 1285 ("We need not address each element because we conclude that no showing of irreparable injury was made.").

[14] With respect to the request for an accounting, the Plaintiffs should be able to obtain the necessary information through discovery, and may renew their motion if this is not the case. The records of business activities had been seized by the federal government at the time of the hearing and were not available to the Defendants.

[15] Although the parties have represented that Defendant Hagner is deceased, he remains a party to this case since no substitution or dismissal has occurred, and the recommendation is therefore drafted to encompass any representative or heirs of Defendant Hagner.

     **i.**     accessing the assets in the ICO Wallet for any purpose other than complying with a valid court order; and

     **ii.**     destroying, erasing or otherwise making unavailable for further proceedings in this matter, any records or documents, books, records, accounts, account passwords, computer passwords, device PINS and passwords, cryptographic keys, or any instruments, data, and papers relating in any manner to Centra Tech and the Centra Tech ICO.

The parties will have fourteen calendar days from the date of this Report and Recommendation within which to file written objections for consideration by the United States District Judge to whom this case is assigned.  Any response to objections must be filed within seven days from the date any objections are filed.  Any request for an extension of these deadlines must be made within seven calendar days from the date of this Report and Recommendation.  Pursuant to Eleventh Circuit Rule 3-1, and accompanying Internal Operating Procedure 3, the parties are hereby notified that failure to object in accordance with 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.

**DONE AND SUBMITTED** in chambers in Miami, Florida on June 25, 2018.

_____
**ANDREA M. SIMONTON**
**UNITED STATES MAGISTRATE JUDGE**

**Copies furnished via CM/ECF to:**
The Honorable James Lawrence King, United States District Judge
All counsel of record.