# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 1:17-cv-24500-RNS

JACOB ZOWIE THOMAS RENSEL, WANG
YUN HE, CHI HAO POON, KING FUNG
POON, JAE J. LEE, MATEUSZ
GANCZAREK, and RODNEY WARREN,
individually and on behalf of all others
similarly situated,

      Plaintiffs,

v.

CENTRA TECH, INC., SOHRAB SHARMA,
ROBERT FARKAS, RAYMOND TRAPANI,
STEVEN STANLEY, STEVEN SYKES,
ALLAN SHUTT, CHASE ZIMMERMAN,
FLOYD MAYWEATHER JR, and KHALED
MOHAMED KHALED A/K/A DJ KHALED,

      Defendants.

# DEFENDANT KHALED KHALED'S MOTION TO DISMISS
# PLAINTIFFS' FIRST AMENDED COMPLAINT

Defendant Khaled Khaled a/k/a DJ Khaled respectfully submits this motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the claims asserted against him in Plaintiffs' First Amended Complaint, filed October 9, 2018 (ECF No. 97) (the "FAC"), for violations of § 12(a) of the Securities Act (Count I) and § 10(b) of the Exchange Act and Rule 10b-5 thereunder (Count III), for failure to state a claim.

## PRELIMINARY STATEMENT

In this putative securities class action, Plaintiffs are alleged purchasers of "tokens" ("CTR Tokens") issued by Centra Tech, Inc. ("Centra") during its initial coin offering ("ICO"), a type of funding using digital or cryptocurrencies.  Plaintiffs allege that Centra's founders and management orchestrated and directly participated in the fraudulent marketing and sale of unregistered, worthless securities (the CTR Tokens) in order to enrich themselves.

In their amended complaint, Plaintiffs have added as a defendant (among others) celebrity music producer and radio personality DJ Khaled – even though Plaintiffs do not allege that DJ Khaled had any substantive involvement in Centra or its business, any relationship with its founders or executives, any knowledge of their fraud, or any contact whatsoever with any Plaintiff.  In fact, the FAC alleges the contrary:  DJ Khaled's only relevant conduct was receiving a fee for the discrete task of posting a few sentences publicizing Centra and its ICO on his social media accounts – posts that no Plaintiff allegedly even saw, let alone relied on.  This alleged conduct cannot support Plaintiffs' claims.

More specifically, Plaintiffs' allegations belie their conclusory assertion that DJ Khaled was a statutory "seller" for purposes of § 12(a).  The allegations are inconsistent with any claim that DJ Khaled "solicited" any Plaintiff's purchase or that any Plaintiff purchased CTR Tokens "from" Khaled, as required to satisfy § 12(a)(1).  Likewise, Plaintiffs' fraud claim under § 10(b)

and Rule 10b-5 falls far short of the applicable legal standard.  Plaintiffs fail to identify any actionable misrepresentation or omission by DJ Khaled, let alone any facts that could conceivably give rise to the required strong inference of scienter.  In addition, Plaintiffs do not even attempt to allege that they somehow relied on DJ Khaled's social media posts.

The FAC wholly fails to allege any plausible claim that Plaintiffs are entitled to any relief against DJ Khaled.  Plaintiffs' defective claims do not entitle them to drag DJ Khaled further through the expense and burden of this elaborate class-action securities fraud lawsuit.

## FACTUAL BACKGROUND

Plaintiffs' voluminous complaint alleges a fraudulent scheme committed by Centra and its founders and executives in connection with the Centra ICO.  The purported purpose of the ICO was to raise capital to, among other things, create a debit card that would function on the Visa and Mastercard networks and allow instant transactions using digital currencies.  FAC ¶ 5. Plaintiffs allege that in reality Centra was a "fraudulent vehicle" for selling worthless tokens "to enrich Centra Tech's executives, directors, founders, and affiliates."  FAC ¶ 4.  The bulk of the FAC is devoted to a detailed accounting of the purported scheme perpetrated by Centra's founders, and the extensive web of misrepresentations made by the founders and management.

DJ Khaled is a well-known celebrity, radio personality, and music producer.  FAC ¶ 68. He is not alleged to have had any knowledge of the fraudulent scheme perpetrated by Centra's founders and management.  In fact, in a 109-page complaint, there is just one substantive factual allegation (which is repeated several times) against DJ Khaled relating to Centra:  that he was paid a fee to post a brief positive statement about Centra on his Instagram and Twitter accounts. FAC ¶¶ 68, 213-15, 257-58.  The FAC explicitly acknowledges that his acceptance of payment for posting on social media was "the full extent of [his] relationship with Centra Tech."  FAC

¶ 309; *see also* FAC ¶¶ 215, 258.  Specifically, the FAC alleges that on September 27, 2017,[1] DJ Khaled posted on his Instagram account a picture of himself holding a Centra card, along with the following statement:

> I just received my titanium centra debit card.  The Centra Card & Centra Wallet app is the ultimate winner in Cryptocurrency debit cards powered by CTR tokens! Use your bitcoins, ethereum, and more cryptocurrencies in real time across the globe.  This is a Game changer here.  Get your CTR tokens now!

FAC ¶¶ 214-15, 257; *see also* FAC ¶ 68.  Although the FAC alleges a second post in September 2017 (without identifying the date in September) with a different picture, the alleged text of the two posts was identical.  FAC ¶¶ 213-15, 257.[2]

Significantly, Plaintiffs make <u>no</u> allegation that DJ Khaled had:

- any involvement in the management of Centra's business or the ICO;
- any relationship or even contact with Centra's founders or management;
- any involvement in creating or disseminating – or even knowledge of – Centra's White Papers or any other of the company's disclosures or other materials describing the terms of the ICO;
- any role in explaining either the terms of the ICO or information about where or how potential investors could purchase CTR tokens;
- any knowledge of the founders' alleged fraudulent scheme;
- any financial interest in the success of Centra or the sale of its tokens; or
- any relationship or even contact with any of the Plaintiffs.

Moreover, the FAC fails to allege that any Plaintiff even saw DJ Khaled's posts to his social media accounts about Centra, let alone that the posts caused any Plaintiff to purchase CTR

---

[1] Although the FAC identifies the date as September 27, 2018, the year appears to be a typographical error.  *See* FAC ¶ 68 (alleging that both posts were in September 2017).

[2] The FAC also generally alleges that DJ Khaled and defendant Floyd Mayweather Jr. "were each featured in videos purporting to use the Centra Debit Card and/or the Centra Wallet," FAC ¶ 248, but fails to identify any statement (or omission) made by DJ Khaled or otherwise provide any specific information about the alleged video.  Similarly, the FAC alleges that "Khaled continued to solicit the purchase of CTR Tokens by posting endorsements of Centra Tech and the Centra Products in late-October 2017," FAC ¶ 68, without alleging the substance of the alleged "endorsements."  These allegations thus are not sufficiently pled to add any value to Plaintiffs' claim against DJ Khaled.

Tokens.  In fact, the timing of the Plaintiffs' purchases, set forth in the FAC and Plaintiffs'

amended certifications pursuant to federal securities laws, suggests the opposite:  none of the

Plaintiffs began their purchases of CTR Tokens in the days (or even weeks) after DJ Khaled's

September 27, 2017 post. [3]  *See* ECF No. 97-1 ("Plaintiff Cert."); FAC ¶¶ 34-50.

## ARGUMENT

### THE FIRST AMENDED COMPLAINT FAILS TO ALLEGE ANY PLAUSIBLE CLAIM FOR RELIEF AGAINST DEFENDANT DJ KHALED

Federal Rule of Civil Procedure 8(a)(2) requires dismissal if a complaint does not

"contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007)).  "Where a complaint pleads facts that are 'merely consistent with' a

defendant's liability, 'it stops short of the line between possibility and plausibility of 'entitlement

to relief.'"  *Id*. at 678 (quoting *Twombly*, 550 U.S. at 557).  To avoid dismissal, a plaintiff's

"well-pled allegations must nudge the claim across the line from the conceivable to plausible."

*Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1333 (11th Cir. 2010) (punctuation and

citations omitted).  The complaint must contain "'more than labels and conclusions.'"  *Id*.

(quoting *Twombly,* 550 U.S. at 555).  Rule 8 "does not unlock the doors of discovery for a

plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.

**I.      There Is No Plausible Claim that DJ Khaled Is a Statutory Seller Under § 12(a)**

Under § 12(a)(1), a person who "offers or sells a security" in violation of the registration

requirements of § 5 [15 U.S.C. § 77e] is liable to "the person purchasing such security <u>from</u>

---

[3] Plaintiffs vaguely allege that DJ Khaled's other post occurred "in September 2017," FAC ¶ 213, or "in mid-late September 2017," FAC ¶ 257, but do not allege – and cannot credibly allege – that DJ Khaled posted prior to September 27.

him." 15 U.S.C. § 77*l*(a)(1) (emphasis added).  The Supreme Court has interpreted § 12 liability

to reach only (1) the person who directly passes title to the plaintiff, *Pinter v. Dahl*, 486 U.S.

622, 642 (1988), and (2) a broker or other person who "successfully solicits the purchase,

motivated at least in part by a desire to serve his own financial interests or those of the securities

owner," *id.* at 647.  The Court cautioned that to be liable as a "solicitor," a defendant must be

directly and actively involved in the actual solicitation of a securities purchase; liability does not

extend to conduct "remote" or "collateral" to a sales transaction.  *Id*. at 650-51.  Merely

participating or assisting in another's solicitation efforts is insufficient.  *See id.* at 651 n.27.

Here, the FAC does not allege that DJ Khaled sold tokens to any Plaintiff or any other

investor.  It does not even allege that he owned any CTR Tokens.  Instead, Plaintiffs' misguided

claim that DJ Khaled is a statutory seller is based entirely on the allegation that he posted on his

social media accounts a brief, general positive statement about Centra, which Plaintiffs attempt

to characterize as a solicitation of a purchase of securities.  FAC ¶¶ 213-15, 257.

Plaintiffs' claim is fundamentally flawed.  The FAC fails to state a plausible claim that

DJ Khaled "successfully solicited" any of the Plaintiffs' purchases,[4] as required for §12(a)

liability, because it fails to allege (1) that DJ Khaled had *any* relationship or contact with any

purchaser, let alone any of the Plaintiffs, (2) that DJ Khaled's posts constituted "offers" or

"solicitations" of purchases, (3) that DJ Khaled had control over the information available to

---

[4] The proposed class has not been certified, and Plaintiffs cannot assert claims they do not personally have on behalf of unnamed potential class members.  *See Warth v. Seldin*, 422 U.S. 490, 502 (1975) ("Petitioners must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.").

investors about Centra or its ICO, or (4) that DJ Khaled caused any Plaintiff to purchase CTR Tokens.

Under these circumstances, no Plaintiff could be said to have purchased CTR Tokens "from" DJ Khaled.  Plaintiffs' § 12(a) claim (Count I) against DJ Khaled must be dismissed.

## A. DJ Khaled Had No Alleged Relationship or Interaction with Any Purchaser

Plaintiffs do not allege that DJ Khaled had any interaction or relationship with any purchaser, let alone any Plaintiff.  No Plaintiff is even alleged to have *seen* DJ Khaled's posts to his social media accounts.  Based on this fact alone, it cannot be contended that DJ Khaled "successfully solicited" any Plaintiff's purchase of tokens.  No Plaintiff can be said in "common parlance" to have purchased securities "from" a person with whom they had no alleged contact. *See Pinter*, 486 U.S. at 642-44, 647 (relying on common parlance in analyzing "from" whom a buyer purchased).

In *Pinter*, the Supreme Court made clear that the "'purchase from' requirement" for seller status under § 12 "focuses on the defendant's relationship with the plaintiff-purchaser."  *Id.* at 651.  It is "the 'type of one-to-one exchange of information which is typical of the broker-investor relationship' which the Supreme Court viewed, in *Pinter*, as 'the most typical example of solicitation.'"  *In re CNL Hotels & Resorts, Inc.*, No 6:04-CV-1231, 2005 WL 2291729, at *4-5 (M.D. Fla. Sept. 20, 2005) (quoting *PPM Am., Inc. v. Marriott Corp.*, 853 F. Supp. 860, 875 (D. Md. 1994)); *see also In re Unicapital Corp. Secs. Litig.*, 149 F. Supp. 2d 1353, 1366 (S.D. Fla. 2001) (explaining that § 12 liability extends to "brokers and the like").

Accordingly, "[t]o count as 'solicitation,' the seller must, at a minimum, directly communicate with the buyer," either personally or through an agent.  *Rosenzweig v. Azurix*

6

*Corp.*, 332 F.3d 854, 871 (5th Cir. 2003).[5]  Statements to the general public about a security, including on social media, do not constitute "solicitation" for purposes of § 12, in the absence of contact with the purchaser.  *See Kerrigan v. Visalus, Inc.*, No. 14-CV-12693, 2016 WL 892804, at *1, 11, 17 (E.D. Mich. Mar. 9, 2016) (concluding that allegations that defendants engaged in solicitation by, *inter alia*, "appear[ing] in ads and [] giv[ing] false testimonials . . . and us[ing] social media to coat the Internet in the message that [the securities were] a great income opportunity" were insufficient to establish statutory seller status in the absence of direct communication with the purchaser).  In fact, even statements made by an issuer or its officers in a prospectus, registration statement, or at a roadshow generally do not constitute solicitation.[6]

---

[5] *See also In re Dauo Systems, Inc.*, 411 F.3d 1006, 1029 (9th Cir. 2005) (recognizing that *Pinter* liability requires that a defendant be "directly involved in the actual solicitation of a securities purchase" (internal quotation marks omitted)); *Craftmatic Secs. Litig. v. Kraftsow*, 890 F.2d 628, 636 (3d Cir.1989) (requiring "direct and active participation in the solicitation of the immediate sale to hold the issuer liable" under Section 12(a)(2)); *In re CNL Hotels*, 2005 WL 1126561, at *10 (same); *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1214-15 (1st Cir. 1996), *abrogated on other grounds by* 15 U.S.C. § 78u(4)(b)(2) ("A defendant must be directly involved in the actual solicitation of a securities purchase in order to qualify, on that basis, as a Section 12 'seller.'"); *Shain v. Duff & Phelps Credit Rating Co.*, 915 F. Supp. 575, 581 (S.D.N.Y. 1996) (collecting cases for the proposition that "persons are not liable under § 12 for solicitation unless they directly or personally solicit the buyer"); *Capri v. Murphy*, 856 F.2d 473, 478 (2d Cir. 1988) (concluding defendants were statutory sellers where they directed solicitation efforts of agent who was in direct communication with plaintiff).

[6] *See, e.g., Shaw*, 82 F.3d at 1216 ("Under *Pinter*, . . . neither involvement in preparation of a registration statement or prospectus nor participation in 'activities' relating to the sale of securities, standing alone, demonstrates the kind of *relationship between defendant and plaintiff* that could establish statutory seller status."); *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 370 (5th Cir. 2001) (recognizing that in a firm commitment underwriting, the public cannot ordinarily hold the issuers liable under § 12, even though "[v]irtually all issuers routinely promote a new issue, if only in the form of preparing a prospectus and conducting a road show"); *Greenfield Children's P'ship v. FriendFinder Networks, Inc.*, No. 11-CV-81270, 2014 WL 12205997, at *4 (S.D. Fla. Mar. 18, 2014) (plaintiffs' allegation that defendant issued the Prospectus and conclusory allegation that they "actively solicited the securities that were offered pursuant to the Prospectus" were inadequate to allege statutory seller status); *Miyahira v. Vitacost.com, Inc.*, No. 10-CV-80644, 2012 WL 12895513, at *10 (S.D. Fla. June 28, 2012) (dismissing § 12 claim where "the individual defendants' preparation of the prospectus does not

DJ Khaled's only alleged relevant action was a couple of posts accessible by the general public, on his social media accounts, about Centra and its ICO.  *See* FAC ¶ 68 (alleging DJ Khaled encouraged "the public" to purchase CTR Tokens).  The posts alone, which were "not directed at any particular investor" – and which no Plaintiff even alleges having *seen* – created no relationship between DJ Khaled and any Plaintiff and thus cannot constitute solicitation. *PPM*, 853 F. Supp. at 875; *see also Kerrigan*, 2016 WL 892804, at *17; *Youngers v. Virtus Inv. Partners Inc.*, 195 F. Supp. 3d 499, 522 (S.D.N.Y. 2016) (allegation that defendants "distributed the marketing materials 'through their website and other channels'" was insufficient to establish seller status) (quoting the plaintiffs' complaint).

In *In re Tezos Securities Litigation*, No. 17-CV-06779, 2018 WL 4293341 (N.D. Cal. Aug. 2018), the court dismissed a § 12 claim against a defendant who had engaged in a far more substantive public promotion of a cryptocurrency ICO than is present here.  In *Tezos*, a token purchaser filed a putative class action against various parties allegedly involved in the ICO, including well-known venture capitalist Timothy Draper, who had invested in and actively promoted the cryptocurrency company.  *Id*. at 1-2.  The complaint alleged, *inter alia*:

> Draper "told Reuters in an interview he will for the first time participate in a so-called 'initial coin offering' (ICO) of Tezos slated later this month." Draper stated: "The best thing I can do is lead by example . . . .  Over time I actually feel that some of these tokens are going to improve the world, and I want to make sure those tokens get promoted as well. I think Tezos is one of those tokens."
> . . .
> On May 5, 2017, Draper's announcement of his investment in the Tezos project caused an explosion of investor enthusiasm for the Tezos project. On May 6, 2017, dozens of articles appeared promoting the Tezos project and extolling the value of Draper's financial backing.

---

establish liability because that alone is insufficient to establish seller status under § 12(a)(2)"), *aff'd*, 715 F.3d 1257 (11th Cir. 2013); *Citiline Holdings, Inc. v. iStar Fin. Inc.*, 701 F. Supp. 2d 506, 512 (S.D.N.Y. 2010) ("Every Court of Appeals to have considered the issue . . . has held that an individual's signing a registration statement does not itself suffice as solicitation under Section 12(a)(2).").

. . .

In October 2017, Draper acknowledged that he hopes to make himself and his investors "rich" from investing in Tezos.

Consolidated Complaint, *In re Tezos*, No. 17-CV-06779 (N.D. Cal.), ECF No. 108, at ¶¶ 61, 105, 108. The *Tezos* court concluded that despite Draper's public endorsement of Tezos and its ICO, Draper was not adequately alleged to be a statutory seller. In granting Draper's motion to dismiss the claim, the court noted that plaintiff had failed to "identify any authority, here or elsewhere, holding *Pinter* applicable in the <u>absence of any buyer-seller contact whatsoever</u>." *Tezos*, 2018 WL 4293341, at *9 (emphasis added).

Here, as in *Tezos*, Plaintiffs fail to allege any buyer-seller contact whatsoever with DJ Khaled. Plaintiffs' attempt to impose liability on DJ Khaled based on his limited social media posts defies the well-established limits of § 12. *See Pinter*, 486 U.S. at 652 (noting that the statutory seller test "demands certainty and predictability").

**B. DJ Khaled's Alleged Posts Do Not Constitute "Offers to Sell" or "Solicitations"**

Plaintiffs' § 12 claim fails for the additional reason that DJ Khaled's only alleged statements – his social media posts – cannot plausibly be read to be "offers to sell" or "solicitation of an offer." The alleged posts are brief statements at most giving publicity to Centra generally. FAC ¶¶ 213-14, 257. They are entirely devoid of any "offer" or "sale" information, such as the terms of the ICO, the prices of CTR tokens, or where or how a purchaser would go about buying CTR tokens if they were so inclined. In fact, DJ Khaled's posts did not even refer potential investors to the Centra website or to any other sources of information about the ICO. Any person interested in purchasing CTR tokens would have to independently research the ICO to discover its terms, figure out how to buy tokens, and take whatever steps were necessary to purchase the tokens. DJ Khaled's posts plainly were remote

from any sale transaction.  *See, e.g., Shaw*, 82 F.3d at 1215; *Craftmatic*, 890 F.2d at 636.  We are aware of no case in which such statements merely providing publicity have been considered "successful solicitation."

### C. Plaintiffs Do Not Allege that DJ Khaled Controlled the Information Available to Purchasers

Moreover, the Supreme Court made clear in *Pinter* that the "solicitors" subject to § 12(a)(1) liability are "brokers and other solicitors" who *control the flow of information to investors*.  The Court explained that its interpretation "furthers the purposes of the Securities Act – to promote full and fair disclosure of information to the public in the sales of securities" because:

> The solicitation of a buyer is perhaps the most critical stage of the selling transaction. It is the first stage of a traditional securities sale to involve the buyer, and it is directed at producing the sale. ***In addition, brokers and other solicitors are well positioned to control the flow of information to a potential purchaser, and, in fact, such persons are the participants in the selling transaction who most often disseminate material information to investors. Thus, solicitation is the stage at which an investor is most likely to be injured, that is, by being persuaded to purchase securities without full and fair information.*** Given Congress' overriding goal of preventing this injury, we may infer that Congress intended solicitation to fall under the mantle of § 12(1).

*Pinter*, 486 U.S. at 646-47 (emphasis added).

In stark contrast with the Founder Defendants,[7] DJ Khaled is not alleged to have had *any* control over what substantive information about Centra was provided to *any* investor – through meetings, through the "White Papers" or other disclosures or materials available to investors, through the Centra website, or in any other context.  DJ Khaled clearly falls outside the Supreme

---

[7] Plaintiffs allege that the "Founder Defendants possessed the power and authority to control the contents of Centra Tech's website and solicitation materials relating to the Centra ICO," and "had the ability and opportunity to prevent the false or misleading statements alleged herein or cause them to be corrected."  FAC ¶ 310.

Court's vision of a § 12 "solicitor" who is "well positioned to control the flow of information to a potential purchaser." *Pinter*, 486 U.S. at 646.

**D. Plaintiffs Do Not Allege They Purchased Tokens "As a Result of" DJ Khaled's Posts**

In addition, to meet the purchase-from requirement, "a plaintiff must allege not only that the defendant actively solicited investors, but that the plaintiff purchased securities *as a result of that solicitation*." *In re CNL*, 2005 WL 2291729, at *4-5 (emphasis added); *accord Griffin v. PaineWebber, Inc.*, No. 99-CV-2292, 2001 WL 740764, at *2 (S.D.N.Y. June 29, 2001). Plaintiffs make no such allegation here.

The FAC fails to allege that any Plaintiff saw or was even *aware* of DJ Khaled's posts to his social media accounts.  Instead, Plaintiffs allege collectively that all of the defendants  were "successful in soliciting Plaintiffs" because "each of the Plaintiffs were actively involved in researching Centra Tech and its products prior to purchasing their CTR Tokens," including by "reviewing virtual currency online forums, reading Centra Tech's publications and viewing the Company's promotional videos."  FAC ¶ 171.  This allegation falls far short of alleging that any purchaser actually read DJ Khaled's social media posts, let alone purchased Centra tokens *because* of them.

In fact, the admitted dates of Plaintiffs' purchases belie any plausible claim that DJ Khaled caused their CTR Token purchases:

- Three of the named Plaintiffs (Chi Hao Poon, King Fung Poon, Jae J. Lee) made all their CTR Token purchases *before* DJ Khaled's alleged September 27, 2017 post[8] and thus cannot possibly have claims against DJ Khaled.  Plaintiff Cert. at 7, 9, 11.

---

[8] As explained at note 3 above, Plaintiffs vaguely allege that DJ Khaled's other post occurred "in September 2017," FAC ¶ 213, or "in mid-late September 2017," FAC ¶ 257, but do not allege – and cannot credibly allege – that DJ Khaled posted prior to September 27.

- More than 96% of Plaintiff Jacob Zowie Thomas Rensel's CTR Tokens, *id*. at 2, and more than 97% of Plaintiff Mateusz Ganczarek's Tokens, *id*. at 13, were purchased before DJ Khaled's alleged September 27 post, and all of Plaintiff Rodney Warren's purchases were made months later, on December 17, 2017, *id*. at 15.

- Only one named Plaintiff, Wang Yun He, made any significant purchases in the days or weeks after DJ Khaled's posts, and even He had started making substantial purchases *before* DJ Khaled's September 27 post and continued long after DJ Khaled's posts (until mid-November 2017).  *Id*. at 4-5.

These facts render it implausible that DJ Khaled's posts caused any of the Plaintiffs' purchases.

Because the FAC fails to state a plausible claim that DJ Khaled "successfully solicited" any Plaintiff's purchase of CTR Tokens, Plaintiffs' § 12(a) claim must be dismissed.[9]

## II.    Plaintiffs Fail to State a Claim Under § 10(b) and SEC Rule 10b-5

Plaintiffs' allegations under § 10(b) and Rule 10b-5 (Count III) also are legally deficient.

"To state a claim for a violation of § 10(b), a plaintiff must allege: (1) the existence of a material misrepresentation (or omission), (2) made with scienter (*i.e.,* 'a wrongful state of mind'), (3) in connection with the purchase or sale of any security, (4) on which the plaintiff relied, and (5) which was causally connected to (6) the plaintiff's economic loss."  *Thompson v.*

---

[9] Because the FAC fails to allege any "solicitation" by DJ Khaled, the Court need not reach the "financial interest" prong of the *Pinter* test.  That prong confirms, however, that DJ Khaled is not a statutory seller.  In *Pinter*, the Supreme Court restricted § 12 liability "only to the person who successfully solicits the purchase, motivated at least in part by a desire to serve his own financial interests or those of the securities owner."  486 U.S. at 646–47.  The Court explained that "[t]ypically, a person who solicits the purchase will have sought or received a personal financial benefit *from the sale*, such as where he 'anticipat[es] a share of the profits,' or receives a brokerage commission."  486 U.S. at 654 (internal citations omitted) (brackets in original) (emphasis added).  Here, the FAC alleges that DJ Khaled received a fee for his posts.  There is no allegation that DJ Khaled received any sales commission or had any other interest in the sale of Centra's CTR Tokens, any ongoing relationship with Centra, or any financial motive to serve Centra's interests.  The FAC's allegations that DJ Khaled merely received a fee for the discrete task of publicizing Centra on his own social media accounts, and had no further interest in Centra or its Tokens, are consistent with the conclusion that his role was remote from the sale process and that he falls outside the category of "brokers and other solicitors" subject to § 12 liability.  *Id.*

*RelationServe Media, Inc.*, 610 F.3d 628, 633 (11th Cir. 2010) (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341 (2005)).  "Because Rule 10b-5 sounds in fraud, the plaintiff must plead the elements of its violation with particularity."  *Id.*

In addition, the Private Securities Litigation Reform Act ("PSLRA") requires a complaint alleging securities fraud to: (1) "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading," 15 U.S.C. § 78u–4(b)(1)(B); and (2) "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," *id.* § 78u–4(b)(2)(A).

Because Plaintiffs fail to allege any actionable misstatements or omissions by DJ Khaled, let alone a strong inference of scienter or any reliance, their claim must be dismissed.

### A.  Plaintiffs Allege No Actionable Misrepresentation or Omission by DJ Khaled

Plaintiffs' § 10(b) and Rule 10b-5 claim fails for the simple reason that Plaintiffs fail to identify any actionable misrepresentation or omission by DJ Khaled.  The only statements specified in the FAC that DJ Khaled is alleged to have made are contained in a five-sentence social media post:

> I just received my titanium centra debit card.  The Centra Card & Centra Wallet app is the ultimate winner in Cryptocurrency debit cards powered by CTR tokens! Use your bitcoins, ethereum, and more cryptocurrencies in real time across the globe.  This is a Game changer here.  Get your CTR tokens now!

FAC ¶¶ 213-15, 257.

Of these five sentences, only the first – "I just received my titanium centra debit card" – is even arguably a factual sentence, and that sentence is not alleged by Plaintiffs to be false.  In fact, Plaintiffs allege that DJ Khaled actually posted pictures of himself holding a Centra card, which are included within the FAC.  FAC ¶¶ 213-14, 257.  The remaining sentences of the post are not actionable statements.  *See, e.g., IBEW Local 595 Pension & Money Purchase Pension*

13

*Plans v. ADT Corp.*, 660 F. App'x 850, 857 (11th Cir. 2016) (per curiam) (affirming dismissal of § 10(b) claim where defendants' allegedly misleading statements that their plan was "thoughtful," "effective," and "optimal," among other descriptors, was non-actionable puffery); *ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 205-06 (2d Cir. 2009) (bank's representations about its "'highly disciplined' risk management and its standard-setting reputation for integrity" were non-actionable "puffery" because they were "too general to cause a reasonable investor to rely upon them"); *In re KLX, Inc. Sec. Litig.*, 232 F. Supp. 3d 1269, 1276–77 (S.D. Fla. 2017) (defendants' statements that the business "had a 'strong' position," was "in an envious position," and "that Defendants [were] 'confident,'" were non-actionable puffery).  No reasonable investor could regard DJ Khaled's labeling of Centra's products as the "ultimate winner" and a "Game changer" as having "significantly altered the 'total mix' of information made available" about CTR Tokens.  *SEC v. Morgan Keegan & Co., Inc.*, 678 F.3d 1233, 1245 (11th Cir. 2012) (quoting *TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)).

In an effort to gloss over this glaring defect, Plaintiffs mischaracterize DJ Khaled's statements.  Specifically, Plaintiffs allege that the "Promoter Defendants" (*i.e.,* DJ Khaled and Floyd Mayweather Jr., FAC ¶ 2) "falsely represented that (i) they actively used the Centra Debit Card; (ii) the Centra Debit Card functioned on the Visa network; and (iii) they invested in CTR Tokens."  FAC ¶ 248.

The actual sentences of DJ Khaled's alleged social media post, however, cannot reasonably be read as making any such representations.  The alleged social media posts quoted in the FAC make no claim that DJ Khaled "invested in CTR Tokens."  FAC ¶¶ 213-14, 257.  Nor do they claim that DJ Khaled "actively used the Centra Debit Card," or make any statement

about the Visa function.  In fact, DJ Khaled's alleged posts clearly made plain that he had "just received" the card – a statement that cannot reasonably be interpreted as a testimonial that he had used the card or verified that it worked, and in fact is flatly inconsistent with that inference.

Plaintiffs also half-heartedly allege that the Promoter Defendants failed to disclose that they were paid for their posts.  FAC ¶ 248.  Setting aside the fact that it is obvious from the text of DJ Khaled's posts that they were paid publicity, such an alleged "omission" is plainly immaterial, as the alleged posts themselves included no substantive or material statements.

Plaintiffs fail to identify with particularity any other specific, material misstatements or omissions by DJ Khaled, as required by the PSLRA.  15 U.S.C. § 78u–4(b)(1)(B).[10]

### B. Plaintiffs Fail to Allege Facts Sufficient to Establish Scienter

Plaintiffs' § 10(b) and Rule 10b-5 claim also fails for the separate reason that they have offered no evidence of scienter.

In private federal securities litigation, the PSLRA requires that a plaintiff "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2)(A).  A "strong inference" of scienter is one that is "more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308,

---

[10] As set forth at note 2 above, the FAC also alleges that the "Promoter Defendants were each featured in videos purporting to use the Centra Debit Card and/or the Centra Wallet," FAC ¶ 248, and that "Khaled continued to solicit the purchase of CTR Tokens by posting endorsements of Centra Tech and the Centra Products in late-October 2017," FAC ¶ 68.  Because Plaintiffs fail to allege any statement made by Khaled in such a video or other endorsement, however, the PSLRA precludes these allegations as possible bases for § 10(b) liability.  15 U.S.C. § 78u–4(b)(1)(B) (requiring that a plaintiff "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed").

314 (2007).  In assessing whether a plaintiff has met this heavy burden, "the court must take into account plausible opposing inferences."  *Id.* at 323.  In the Eleventh Circuit, § 10(b) and Rule 10b–5 require a showing of either an "intent to deceive, manipulate, or defraud," or "severe recklessness."  *Thompson*, 610 F.3d at 634.

In their attempt to allege scienter by DJ Khaled, Plaintiffs again rely on a gross distortion of his statements, inaccurately alleging that the "Promoter Defendants" (1) "falsely claimed to have independently purchased CTR Tokens," and (2) "knew that any claims about their having conducting [sic] real-world purchase transactions utilizing a Centra Tech debit card were false and misleading at the time it [sic] was made, because such cards never functioned and were not capable of performing such a transaction."  FAC ¶ 325.  Because DJ Khaled did not claim to have purchased CTR Tokens or to have made real-world purchases using a Centra card, these allegations against him fail.

Nevertheless, even if DJ Khaled's posts could be interpreted as a representation that the Centra card worked (which they cannot), Plaintiffs fail to allege that DJ Khaled had knowledge that the card did not in fact work or that he intended to deceive Centra investors.  Nor do they allege any facts that could possibly support such an inference.

Instead, Plaintiffs, seemingly realizing the implausibility of such a logical leap, allege that if DJ Khaled had attempted to use his Centra debit card, he would have "instantly realized" that it did not work.  FAC ¶ 258.  Such allegations fall far short of the "severe recklessness" required to establish scienter.  As the Eleventh Circuit has explained, "severe recklessness" is a "demanding standard":

> Severe recklessness is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a

danger of misleading buyers or sellers which is either known to the defendant or so obvious that the defendant must have been aware of it.

*Thompson*, 610 F.3d at 634 (punctuation and other citations omitted).

Plaintiffs have alleged, at most, that DJ Khaled *could have* taken steps that *would have* led him to discover that the Centra card did not work.  They have offered no facts to support the inference that DJ Khaled's failure to do so represented negligence or "inexcusable negligence," let alone a more egregious "extreme departure from the standards of ordinary care," as required to satisfy "severe recklessness."  Further, they have failed to plead any facts suggesting that DJ Khaled suspected, or had any reason to suspect, that the Centra card that he had just received did not work.  Accordingly, the FAC fails to allege that DJ Khaled knew his failure to test the card presented a danger of misleading buyers, or that the danger was "so obvious" that he "must have been aware of it."  *Id.*

The Eleventh Circuit has concluded that such allegations that a defendant could have (or even should have) taken steps that would have revealed the falsity of the defendant's representation are insufficient to meet the demanding standard of "severe recklessness," even where the defendant is a sophisticated corporate executive who owes a duty to investors.  *See, e.g.*, *Brophy v. Jiangbo Pharms., Inc.*, 781 F.3d 1296, 1306 (11th Cir. 2015) (concluding that investors' allegations regarding overstatement of company's cash balances could suggest that defendant CFO was negligent and "failed to fulfill basic duties to investors," but failed to establish "severe recklessness"); *Durgin v. Mon*, 415 F. App'x 161, 165 (11th Cir. 2011) (per curiam) (concluding that scienter was inadequately pled where plaintiffs alleged that defendant executive officers falsely represented to investors that loan was "non-recourse" to company, when in fact defendants were privy to non-public information that the company had guarantee

obligations, where there were no allegations, e.g., that defendants ever read the guarantees or believed that they presented a material risk to investors requiring disclosure).

Plaintiffs' suggestion that DJ Khaled, a celebrity hired to post on social media, was "severely reckless" in failing to root out Centra's alleged elaborate fraud is highly implausible.

### C. Plaintiffs Fail to Allege Reliance

Finally, Plaintiffs' § 10(b) and Rule 10b-5 claim also fails because the FAC does not allege that any of the Plaintiffs actually relied on DJ Khaled's statements in purchasing CTR tokens. "[A]s the Eleventh Circuit has observed, proof of reliance is an essential element of a Rule 10b–5 action as it 'establishes the causal link between the defendant's activities and the plaintiff's injuries and prevents federal securities law from affording unlimited liability.'" *Hamilton Partners, Ltd. v. Sunbeam Corp.*, No. 99-CV-8275, 2001 WL 34556527, at *5 (S.D. Fla. July 3, 2001) (quoting *Ross v. Bank South, N.A.,* 885 F.2d 723, 728 (11th Cir.1989) (*en banc*)).

Here, the FAC does not even allege that any Plaintiff was aware of DJ Khaled's statements, let alone that any Plaintiff "relied" on any statement by DJ Khaled in deciding to purchase CTR Tokens. Thus, having no possible basis for establishing actual reliance, Plaintiffs seek to relieve themselves of this burden by attempting to invoke the "fraud-created-the-market" doctrine. FAC ¶¶ 329-30. This doctrine, which is premised on the notion that "it is reasonable to rely on the market to screen out securities that are so tainted by fraud as to be totally unmarketable," permits a presumption of reliance only where the defendant's fraud creates a market for otherwise unmarketable securities. *Ross*, 885 F.2d at 729.

Plaintiffs allege that reliance can be presumed "because the action involves falsities so egregious and pervasive that they go to the very existence of CTR Tokens." FAC ¶ 329.

18

Plaintiffs explain that "absent the Founder Defendants' fraudulent conduct, CTR Tokens could not have been sold for any price," and "[a]ccordingly, Plaintiffs are entitled to the presumption of reliance because all CTR Tokens were offered and sold as a result of Defendants' brazen fraud and in particular, the Founder Defendants' egregious fraudulent conduct."  FAC ¶ 330.

Plaintiffs, however, do not attempt to explain how the fraud-created-the-market doctrine could apply to their § 10(b) claim against DJ Khaled, and the law is clear that it does not.

First, the fraud-created-the-market doctrine, established in *Shores v. Sklar*, 647 F.2d 462 (5th Cir. 1981) (*en banc*), and reaffirmed in *Ross*, 885 F.2d 723, applies only to Rule 10b-5(a) and Rule 10b-5(c) claims—so called "scheme" and "course of business" frauds, *not* to Rule 10b-5(b) claims like the one asserted against DJ Khaled in this case.[11]  The *Shores* court explained that "[m]isrepresentation and omission cases under 10b-5([b]) . . . require reliance on the document making the misrepresentation or omitting a material fact."  *Id.* at 471-72.

Second, the doctrine plainly does not apply because the FAC's allegations do not support, and in fact contradict, the factual showing required to support the presumption of reliance.  In *Ross*, the Eleventh Circuit made clear that "consistent with the principle that the fraud on the market theory does not convert securities law into a form of investor insurance," the fraud-created-the-market doctrine "imposes a scienter requirement":  for the reliance presumption to apply, the defendant must have (1) "*known* the securities could not be marketed," and (2) "brought the securities to market with the intent to defraud."  885 F.2d at 729-30.  As to DJ Khaled, the FAC's allegations foreclose application of the doctrine.

With respect to the knowledge and intent requirements, Plaintiffs have not alleged any facts suggesting that DJ Khaled had any knowledge of the Centra Founder Defendants' alleged

---

[11] Count III is labeled "Violation of Section 10(b) and SEC Rule 10b-5(b)."

fraud scheme, or of the fact (if true) that the CTR Tokens could not have been marketed absent

the fraud.  Nor have plaintiffs alleged that DJ Khaled was severely reckless to those facts.  Even

if DJ Khaled could be said to have recklessly disregarded that his Centra card did not work

(which he cannot, as set forth above), that fact would suggest nothing more than a glitch or

setback in Centra's product – not that Centra was a fraud and its Tokens valueless.  Nothing in

the FAC suggests that DJ Khaled *could* have discovered the Founder Defendants' alleged

massive fraud to sell worthless CTR Tokens, let alone that he was severely reckless to this fact.

Moreover, the FAC makes clear that DJ Khaled did not "br[ing] the securities to market."

*Ross*, 885 F.2d at 729-30.  According to the FAC, CTR Tokens were marketed and sold starting

in July 2017, FAC ¶ 1, and DJ Khaled is not alleged to have had any knowledge of or

involvement with Centra or its ICO prior to his September 2017 social media posts, FAC ¶¶ 213-

14.  DJ Khaled could not possibly have "created" the market for CTR Tokens that existed for

months before his alleged involvement.  Plaintiffs' request that this Court *presume* reliance on

DJ Khaled's statements is particularly absurd given that all but one of the Plaintiffs had

purchased CTR Tokens *before* his alleged involvement.  *See* pages 11-12 above.  The law does

not permit such a counter-factual presumption.

In short, Plaintiffs' failure to allege any facts that could support reliance requires

dismissal of their § 10(b) and Rule 10b-5 claim against DJ Khaled.

## CONCLUSION

For the foregoing reasons, Plaintiffs' claims against defendant DJ Khaled (Counts I and III)

must be dismissed with prejudice. [12]

---

[12] Defendant DJ Khaled respectfully adopts and incorporates by reference the memorandum filed today by defendant Floyd Mayweather Jr. in support of his motion to dismiss to the extent that memorandum contains arguments that are equally applicable to DJ Khaled.

Respectfully submitted,

LANKLER SIFFERT & WOHL LLP
Charles T. Spada (*pro hac vice* pending)
Jeannie Rose Rubin (*pro hac vice* pending)
500 Fifth Avenue
New York, NY 10110
Tel: (212) 921-8399

        &

COLSON HICKS EIDSON, P.A.
255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
Tel: 305-476-7400
Fax: 305-476-7444

/s/ *Curtis B. Miner*
Curtis B. Miner, Esq.
Florida Bar No. 885681
curt@colson.com

*Attorneys for Defendant Khaled Khaled*

21

## CERTIFICATE OF ELECTRONIC FILING AND SERVICE

I HEREBY CERTIFY, that on December 21, 2018, I caused the foregoing document to be electronically filed with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all the following parties via transmission of Notice of Electronic Filing generated by CM/ECF:

| | |
|---|---|
| Donald J. Enright<br>John A. Carriel<br>**Levi & Korsinsky, LLP**<br>1101 30th Street, N.W. Suite 115<br>Washington, DC 20007<br>Email: denright@zlk.com<br>        jcarriel@zlk.com<br><br>Emily Cornelia Komlossy<br>**Komlossy Law P.A.**<br>4700 Sheridan Street, Suite J<br>Hollywood, FL 33021<br>Email: eck@komlossylaw.com<br><br>*Attorney for the Plaintiffs* | Adam Louis Schwartz<br>**Homer Bonner Jacobs**<br>1200 Four Seasons Tower<br>1441 Brickell Avenue<br>Miami, FL 33131<br>Email: aschwartz@homerbonner.com<br><br>*Attorney for Defendants Centra Tech, Inc.,*<br>*Sohrab Sharma, Raymond Trapani, and Robert*<br>*Farkas*<br><br>Christina Olivos<br>Edward Maurice Mullins<br>**Reed Smith LLP**<br>1001 Brickell Bay Drive<br>Suite 900<br>Miami, FL 33131-2847<br>Email: colivos@reedsmith.com<br>        emullins@reedsmith.com<br><br>*Attorney for Defendant Floyd Mayweather, Jr.* |

/s/ *Curtis B. Miner*
Curtis B. Miner, Esq.
Florida Bar No. 885681
curt@colson.com

22