**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

JACOB ZOWIE THOMAS RENSEL, WANG
YUN HE, CHI HAO POON, KING FUNG
POON, JAE J. LEE, MATEUSZ
GANCZAREK, and RODNEY WARREN,
individually and on behalf of all others
similarly situated,

C.A. No. 1:17-cv-24500-RNS/Becerra

                  Plaintiffs,

v.

CENTRA TECH, INC., SOHRAB
SHARMA,  ROBERT FARKAS,
RAYMOND TRAPANI,  STEVEN
STANLEY, STEVEN SYKES, ALLAN
SHUTT, CHASE ZIMMERMAN, FLOYD
MAYWEATHER JR., AND KHALED
MOHAMED KHALED A/K/A DJ
KHALED,

                  Defendants.

**PLAINTIFFS' RENEWED MOTION AND INCORPORATED MEMORANDUM OF
LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION, APPOINTMENT AS
<u>CLASS REPRESENTATIVES, AND APPOINTMENT OF CLASS COUNSEL</u>**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT ....................................................................................................................3

    I.      PLAINTIFFS ARE TIMELY IN SEEKING CLASS CERTIFICATION .........................3

           A.      The Procedural History in This Action Demonstrates Plaintiffs Have
                    Timely Sought Class Certification ...........................................................4

                   1.      The PSLRA's Impact On Timing In The Action .........................5

                   2.      There Was No Deadline For Class Certification .........................9

           B.      Neither The First Motion Nor the Renewed Motion Were Untimely Under
                    Rule 23 and Local Rule 23.1.................................................................11

    II.     LEGAL STANDARD ON A MOTION FOR CLASS CERTIFICATION.....................13

    III.    THE PROPOSED CLASS SATISFIES RULE 23(A) ......................................14

           A.      The Class is Sufficiently Numerous ......................................................14

            B.      Questions of Law and Fact are Common to the Class............................15

            C.      Plaintiffs' Claims are Typical of the Class ............................................16

           D.      Plaintiffs will Fairly and Adequately Protect the Class's Interests.......17

    IV.    THE PROPOSED CLASS IS ASCERTAINABLE .........................................17

           A.      Claim Forms and Records To Be Submitted From Class Members.....................19

           B.      Members of the Class Are Ascertainable Through Reference to Specific
                    Centra Tech Business Records.................................................................21

                     1.      Centra Tech Spreadsheet Purporting to Contain Personally
                              Identifying Information and Transaction Details for Each Class
                              Member ........................................................................................21

                     2.      Centra Tech Also Collected Contact Information from ICO
                                Investors through Google Forms ...............................................23

                     3.      Records from Centra Tech's "ICO Database" and "ZOHO CRM
                                Database" ....................................................................................24

    V.     THE PROPOSED CLASS SATISFIES RULE 23(B)(3)...............................25

           A.      Questions of Law and Fact Predominate ...............................................25

| | | |
|---|---|---|
| | 1. | Whether CTR Tokens Are Investment Contract Securities ......................26 |
| | 2. | Plaintiffs are Entitled to a Presumption of Reliance Under *Ross v. Bank South, N.A.* ........................................................................................27 |
| B. | | A Class Action is Superior to Other Available Methods for the Fair and Efficient Adjudication of this Class Action ...........................................28 |

VI.   LEVI & KORSINSKY AND TAYLOR-COPELAND SHOULD BE APPOINTED CLASS COUNSEL .......................................................................29

CONCLUSION ...........................................................................................................30

REQUEST FOR HEARING ......................................................................................30

## Table of Authorities

### Cases

*A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*,
   321 F.R.D. 688 (S.D. Fla. 2017) ............................................................................ 15

*Abs Entm't v. CBS Corp.*,
   908 F.3d 405 (9th Cir. 2018) ................................................................................. 12

*Acticon AG v. China N. E. Petroleum Holdings Ltd.*,
   687 F. App'x 10 (2d Cir. 2017) .............................................................................. 12

*Alderman v. GC Servs. Ltd. P'ship*,
   No. 2:16-CV-14508, 2018 U.S. Dist. LEXIS 10205 (S.D. Fla. Jan. 19, 2018) ............... 23, 24

*Amchem Products, Inc. v. Windsor*,
   521 U.S. 591 (1997) ............................................................................................ 25

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013) ...................................................................................... 13, 28

*Andreas-Moses v. Hartford Fire Ins. Co.*,
   326 F.R.D. 309 (M.D. Fla. 2018) ............................................................................ 1

*Ault v. Walt Disney World Co.*,
   692 F.3d 1212 (11th Cir. 2012) ............................................................................. 16

*Badger Auctioneers, Inc. v. Ali*,
   No. 6:16-cv-572-Orl-31TBS, 2017 U.S. Dist. LEXIS 8857 (M.D. Fla. Jan. 10,
   2017) .............................................................................................................. 2, 11

*Bamert v. Pulte Home Corp.*,
   445 Fed. App'x 256 (11th Cir. 2011) ...................................................................... 27

*Belcher v. Ocwen Loan Servicing, LLC*,
   No. 8:16-cv-690-T-23AEP, 2018 U.S. Dist. LEXIS 61452 (M.D. Fla. Mar. 9,
   2018) ................................................................................................................ 19

*Beltran v. Interchange, Inc.*,
   No. 14-cv-03074-CMA-CBS, 2018 U.S. Dist. LEXIS 23940 (D. Colo. Feb. 2,
   2018) ................................................................................................................ 30

*Bianchi v. Dynamic Recovery Solutions*,
   No. 13-61997, 2015 WL 12711584 (S.D. Fla. April 28, 2015) ...................................... 9

*Busby v. JRHBW Realty, Inc.*,
   513 F.3d 1314 (11th Cir. 2008) ............................................................................. 16

*Bussey v. Macon Cty. Greyhound Park, Inc.*,
   562 F. App'x 782 (11th Cir. 2014) ......................................................................... 17

*C.V. Reit, Inc. v. Levy*,
   144 F.R.D. 690 (S.D. Fla. 1992) ............................................................................. 15

*Califano v. Yamasaki*,
   442 U.S. 682 (1979) ................................................................................................ 29

*Carriuolo v. Gen. Motors Co.*,
   823 F.3d 977 (11th Cir. 2016) .................................................................................. 1

*Cheney v. Cyberguard Corp.*,
   213 F.R.D. 484 (S.D. Fla. 2003) ....................................................................... 14, 15

*China Agritech, Inc. v. Resh*,
   138 S. Ct. 1800 (2018) ............................................................................................ 11

*City of Sunrise Gen. Emples. Ret. Plan v. FleetCor Techs.*, Inc.,
   No. 1:17-CV-02207-LMM, 2019 U.S. Dist. LEXIS 122231 (N.D. Ga. July 17,
   2019) ....................................................................................................................... 24

*C-Mart, Inc. v. Metro. Life Ins. Co.*,
   299 F.R.D. 679 (S.D. Fla. 2014) ............................................................................. 25

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013) ............................................................................................ 13, 25

*Cox v. American Cast Iron Pipe Co.*,
   784 F.2d 1546 (11th Cir. 1986) .............................................................................. 14

*Cox v. Porsche Fin. Servs.*,
   No. 1:16-CV-23409, 2018 U.S. Dist. LEXIS 192707 (S.D. Fla. Nov. 9, 2018) .................. 16

*Dusek v.Jp Morgan Chase & Co.*,
   No. 2:14-CV-184-FTM-29CM, 2015 WL 12826483 (M.D. Fla. Jan. 21, 2015) .................. 7

*Eldridge v. Pet Supermarket, Inc.*,
   No. 18-22531, 2019 U.S. Dist. LEXIS 142999, at *18 (S.D. Fla. Aug. 21,
   2019) ......................................................................................................................... 2

*Encarnacion v. Fin. Corp. of Am.*,
   No. 2:17-cv-566-FtM-38CM, 2018 U.S. Dist. LEXIS 203219 (M.D. Fla. Nov.
   14, 2018) ................................................................................................................. 22

*Fresco v. Auto Data Direct, Inc.*,
   03-61063-CIV-MARTINEZ-BANDSTRA, 2007 U.S. Dist. LEXIS 37863
   (S.D. Fla. May 11, 2007) ........................................................................................ 30

*Gross v. Medaphis Corp.*,
   977 F. Supp. 1463 (N.D. Ga. 1997) .......................................................................... 6

*Gustin v. Hoffman*,
  No. 6:08-cv-57-Orl-31DAB, 2008 U.S. Dist. LEXIS 116724 (M.D. Fla. Oct.
  28, 2008) ............................................................................................................ 3, 6

*Hurley v. United States Healthworks Med. Grp. of Wash*., P.S.,
  No. CV-05-0017-EFS, 2006 U.S. Dist. LEXIS 44062 (E.D. Wash. June 27,
  2006) ..................................................................................................................... 10

*Ibrahim v. Acosta*,
  326 F.R.D. 696 (S.D. Fla. 2018) ............................................................................ 29

*In re Alexander Grant & Co. Litig*.,
  110 F.R.D. 528 (S.D. Fla. 1986) ............................................................................ 26

*In re Amerifirst Sec. Litig*.,
  139 F.R.D. 423 (S.D. Fla. 1991) ........................................................... 3, 14, 15, 29

*In re Nat'l Austl. Bank Sec. Litig.*,
  2006 U.S. Dist. LEXIS 94163 (S.D.N.Y. Nov. 8, 2006) ......................................... 4

*In re Ocean Power Techs., Inc.*,
  Civil Action No. 3:14-CV-3799, 2016 U.S. Dist. LEXIS 158222 (D.N.J. Nov.
  15, 2016) ............................................................................................................... 30

*In re Sportsline.com Secs. Litig.*,
  366 F. Supp. 2d 1159 (S.D. Fla. 2004) .................................................................... 5

*In re Volkswagen "Clean Diesel" Mktg*.,
  328 F. Supp. 3d 963 (N.D. Cal. 2018) .................................................................... 28

*Internet Law Library, Inc. v. Southridge Capital Mgmt., LLC*,
  2003 U.S. Dist. LEXIS 11508 (S.D.N.Y. July 7, 2003) ........................................ 21

*Jackson v. Motel 6 Multipurpose, Inc.*,
  130 F.3d 999 (11th Cir. 1997) ............................................................................... 25

*Jackson v. Paycron Inc.*,
  No. 8:19-CV-00609-WFJ-AAS, 2019 U.S. Dist. LEXIS 80325 (M.D. Fla.
  May 13, 2019) .......................................................................................................... 8

*Jefferson v. Best Buy Co.*,
  No. 2:08cv121-WKW, 2010 U.S. Dist. LEXIS 47058 (M.D. Ala. Mar. 18,
  2010) ................................................................................................................... 4, 10

*Kamm v. Cal. City Dev. Co.*,
  509 F.2d 205 (9th Cir.1975) .................................................................................... 6

*Katz v MRT Holdings, LLC*,
  2008 U.S. Dist. LEXIS 114421 (S.D. Fla. Oct. 24, 2008)...................................... 27

*Keim v. ADF MidAtlantic, Ltd. Liab. Co.*,
  328 F.R.D. 668 (S.D. Fla. 2018).............................................................. 13, 23, 25

*Kilgo v. Bowman Trans.*,
   789 F.2d 859 (11th Cir.1986) ............................................ 14

*Klay v. Humana, Inc.*,
   382 F.3d 1241 (11th Cir. 2004) ........................................ 25

*Kron v. Grand Bahama Cruise Line, Ltd. Liab. Co.*,
   328 F.R.D. 694 (S.D. Fla. 2018) ......................... 13, 14, 16, 29

*Larsen v. Union Bank, N.A. (In re Checking Account Overdraft Litig., MDL No. 2036)*,
   275 F.R.D. 666 (S.D. Fla. 2011) ...................................... 25

*Miller v. Wells Fargo Bank, N.A.*,
   No. 1:16-CV-21145-UU, 2017 U.S. Dist. LEXIS 24572 (S.D. Fla. Feb. 22, 2017) ................................................................ 17

*Neumont v. Florida*,
   198 F.R.D. 554 (S.D. Fla. 2000) ......................................... 1

*Petrie v. Elec. Game Card, Inc.*,
   No. SACV 10-0252 DOC (RNBx), 2012 U.S. Dist. LEXIS 196221 (C.D. Cal. Mar. 6, 2012) ................................................................ 21

Porter v. Collecto Inc.,
   No. 14-21270, 2015 U.S. Dist. LEXIS 151379 (S.D. Fla. Nov. 2, 2015) ............................ 10

*Prado-Steiman ex rel. Prado v. Bush*,
   221 F.3d 1266 (11th Cir. 2000) .......................................... 1

*Reyes v. BCA Fin. Servs., Inc.*,
   2018 U.S. Dist. LEXIS 106449 (S.D. Fla. June 26, 2018) ........................................ 1, 17, 19

*Ross v. Bank South, N.A.*,
   885 F.2d 723 (11th Cir. 1989) ......................................... 27

*S.E.C. v. W.J. Howey Co.*,
   328 U.S. 293 (1946) ..................................................... 26

*Saade v. Insel*,
   No. 17-22003-Civ-WILLIAMS/TORRES, 2019 U.S. Dist. LEXIS 59189 (S.D. Fla. Apr. 4, 2019) ...................................... passim

*Sacred Heart Healthy Sys., Inc. v. Humana Military Healthcare Servs., Inc.*,
   601 F.3d 1159 (11th Cir. 2010) ........................................ 29

*Sanchez-Knutson v. Ford Motor Co.*,
   310 F.R.D. 529 (S.D. Fla. 2015) ....................................... 29

*SEC v. Friendly*,
   49 F. Supp. 2d 1363 (S.D. Fla. 1999) .................................. 26

*SEC v. Unique Fin. Concepts, Inc.*,
   196 F.3d at 1195 (11th Cir. 1999)..........................................................................27

*Sec. & Exch. Comm'n v. Levin*,
   849 F.3d 995 (11th Cir. 2017) ................................................................................26

*Shaw v. Set Enters.*,
   No. 15-62152-CIV-DIMITROULEAS/S, 2017 U.S. Dist. LEXIS 111790
   (S.D. Fla. June 30, 2017) .........................................................................................14

*Steen v. Capital One (In re Checking Account Overdraft Litig.)*,
   No. 1:09-MD 02036-JLK, 2012 U.S. Dist. LEXIS 200108 (S.D. Fla. July 18,
   2012) ........................................................................................................................15

*Thorpe v. Walter Inv. Mgmt., Corp.*,
   No. 1:14-cv-20880-UU, 2016 U.S. Dist. LEXIS 33637 (S.D. Fla. Mar. 16,
   2016) ...................................................................................................................4, 27

*Univ. of Kan. Ctr. for Research, Inc. v. United States*,
   No. 08-2565-JAR, 2009 U.S. Dist. LEXIS 79722 (D. Kan. Sep. 2, 2009).........2, 11

*Valley Drug Co. v. Geneva Pharms., Inc.*,
   350 F.3d 1181 (11th Cir. 2003) .........................................................................13, 16

*Walco Investments, Inc. v. Thene*,
   168 F.R.D. 315 (S.D. Fla. 1996).................................................................................3

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)..................................................................................................15

*Williams v. Mohawk Industries, Inc.*,
   568 F.3d 1350 (11th Cir. 2009) ...............................................................................15

*Williams v. New Penn Fin., LLC*,
   No. 3:17-cv-570-J-25JRK, 2018 U.S. Dist. LEXIS 226270 (M.D. Fla. Dec.
   20, 2018) ..................................................................................................................24

*Williams v. Southern Bell T&T Co.*,
   No. 77-1895, 1978 WL 73 (S.D. Fla. April 4, 1978).................................................10

*Williams v. Wells Fargo Bank, N.A.*,
   280 F.R.D. 665 (S.D. Fla. 2012)........................................................................14, 25

*Zeidman v. J. Ray McDermott & Co.*,
   651 F.2d 1030 (5th Cir. 1981) .................................................................................14

## **Statutes**

15 U.S.C. § 77b(a)(1)...................................................................................................25

15 U.S.C. § 77z-1(a)(3)(B) .............................................................................................5

## <u>Rules</u>

C.D. Cal. L.R. 23-3 ................................................................................................. 12

FED. R. CIV. P. 23 ................................................................................................. 11

FED. R. CIV. P. 23(A) ...................................................................................... passim

FED. R. CIV. P. 23(B)(3) .................................................................................. passim

FED. R. CIV. P. 23(C)(1)(A) ...........................................................................11, 12

FED. R. CIV. P. 23(G) .......................................................................................1, 28

FED. R. CIV. P. 83(A)(1) ........................................................................................ 12

M.D. Fla. R. 4.04(b) ............................................................................................... 11

N.D. Fla. R. 23.1 ................................................................................................... 11

S.D. Fla. L.R. 23.1(c) ...................................................................................... 4, 11

Court-appointed Co-Lead Plaintiffs Jacob Zowie Thomas Rensel ("Rensel") and Wang Yun He ("He") and proposed class representatives Chi Hao Poon, King Fung Poon, Jae J. Lee ("Lee"), and Mateusz Ganczarek ("Ganczarek") (collectively, "Plaintiffs"), respectfully submit this memorandum of law in support of their Renewed Motion for Class Certification ("Renewed Motion") and request that, pursuant to Federal Rules of Civil Procedure ("Rule") 23(a) and 23(b)(3) [FED. R. CIV. P. 23(a) and 23(b)(3)], the Court certify this case as a class action, appoint Plaintiffs as Class Representatives and appoint Levi & Korsinsky, LLP ("Levi & Korsinsky") and Taylor-Copeland Law as Class Counsel pursuant to Rule 23(g) [FED. R. CIV. P. 23(g)].

## PRELIMINARY STATEMENT

Plaintiffs previously moved to certify this securities class action against Defendant Centra Tech, Inc. ("Centra Tech") on June 13, 2019. [ECF No. 212] (the "First Motion"). On September 17, 2019, the Court issued its Order denying Plaintiffs' First Motion. [ECF No. 235] (the "Denial Order"). The Denial Order denied Plaintiffs' Motion on two grounds.

**First**, the Court determined that denial of the Motion was warranted because "Plaintiffs' motion for class certification [wa]s untimely" and "offer[ed] no excuse or justification for this delay . . . ." Denial Order at 4. In this Renewed Motion[1], Plaintiffs provide such justification, and explain the timing of events as they have occurred. As detailed in Section I, *infra*, Plaintiffs have been limited in their ability to pursue discovery or other relief in this Action because of the automatic stay of discovery and other proceedings provided for under the Private Securities Litigation Reform Act of 1995. Given the complete lack of discovery available to Plaintiffs

---

[1] Motions for class certification can be renewed without prejudice arising from any prior denials under Rule 23 and controlling precedent in this Circuit. *Reyes v. BCA Fin. Servs., Inc.*, 2018 U.S. Dist. LEXIS 106449, at *13 (S.D. Fla. June 26, 2018) ("'Rule 23(c)(1) specifically empowers district courts to alter or amend class certification orders at any time prior to a decision on the merits.'") (quoting *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1273 (11th Cir. 2000)); *Andreas-Moses v. Hartford Fire Ins. Co.*, 326 F.R.D. 309, 320 (M.D. Fla. 2018) ("Indeed, 'the power of the district court to alter or amend class certification orders at any time prior to a decision on the merits 'is critical, because the scope and contour of a class may change radically as discovery progresses and more information is gathered about the nature of the putative class members' claims.'") (quoting *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 988 (11th Cir. 2016)). Thus, the fact that the Court denied the First Motion does not change the standard of review for the Court's consideration of this Renewed Motion. *See, e.g.*, *Neumont v. Florida*, 198 F.R.D. 554, 555 (S.D. Fla. 2000) (analyzing renewed motion for class certification under Rule 23).

throughout the pendency of this litigation, the law is clear that Plaintiffs have not been tardy in seeking class certification.  Indeed, courts have ruled that class certification motions filed before discovery may actually be premature.  Moreover, neither Plaintiffs' First Motion nor the instant Renewed Motion have been untimely under this District's Local Rules or Rule 23.  Similarly, the Court has not issued a pretrial Scheduling Order adopting, or modifying, one of the proposed "scheduling tracks" set forth in the parties' January 16, 2019 Rule 26(f) Joint Discovery and Scheduling Report. [ECF No. 156] (the "26(f) Report").  Because the Court did not otherwise set a deadline for filing a motion for class certification, there were no deadlines under which a class certification motion could be untimely.[2]

**Second**, the Court denied certification upon a finding that Plaintiffs had "failed to meet their burden of demonstrating that the proposed classes are ascertainable."  Denial Order at 5.  In light of the foregoing, Plaintiffs now seek certification of the following revised proposed definition of the "Class":

> All persons or entities who purchased or otherwise acquired Centra Tech Tokens ("CTR Tokens") directly from Defendant Centra Tech in connection with its "official" initial coin offering from July 23, 2017 through October 5, 2017 ("Class Period").

> Excluded from the Class are: (i) defendant Centra Tech; (ii) any person who was an officer, director or employee of Centra Tech, Inc.; (iii) any immediate family member of any excluded person; (iv) any firm, trust, corporation or other entity in which any excluded person or entity has or had a controlling interest; and (v) the legal representatives, affiliates, heirs, successors in-interest, or assigns of any such excluded person or entity.

As detailed in Section IV, *infra*, each member of the proposed Class "can be ascertained by reference to objective criteria and the analysis of the criteria is administratively feasible." *Eldridge v. Pet Supermarket, Inc.*, No. 18-22531, 2019 U.S. Dist. LEXIS 142999, at *18 (S.D. Fla. Aug. 21, 2019).  Moreover, class certification and the appointment of Plaintiffs as class

---

[2] *Badger Auctioneers, Inc. v. Ali*, No. 6:16-cv-572-Orl-31TBS, 2017 U.S. Dist. LEXIS 8857, at *7 (M.D. Fla. Jan. 10, 2017) (agreeing that "there [wa]s no scheduling order entered on the docket, which means that there [we]re no litigation dates that Plaintiff [w]as . . . unable to meet") (internal quotation marks and citation omitted); *Univ. of Kan. Ctr. for Research, Inc. v. United States*, No. 08-2565-JAR, 2009 U.S. Dist. LEXIS 79722, at *8 (D. Kan. Sep. 2, 2009) ("The Court easily concludes that the motion is timely. No scheduling order has been entered in this matter; therefore, no deadlines have been imposed for discovery or otherwise.").

representatives is proper under Rule 23(a) because, as more fully set forth at length below: (i) the Class is so numerous that joinder of all members is impracticable; (ii) there are questions of law and fact which are common to the Class; (iii) Plaintiffs' claims are typical of the claims of the other members of the Class and Plaintiffs do not have any interests adverse to the Class; and (iv) Plaintiffs will fairly and adequately protect the interests of the Class and has retained competent counsel experienced in litigation of this nature.

Furthermore, class certification is proper under Rule 23(b)(3) as: (i) the common questions of law and fact applicable to the Class predominate over individualized questions; and (ii) a class action is superior to other methods for the fair and efficient adjudication of this controversy.[3]  Accordingly, Plaintiffs respectfully renew their request for an order certifying the revised Class, appointing Plaintiffs as class representatives, and appointing Plaintiffs' counsel as class counsel.[4]

## ARGUMENT

### I.   PLAINTIFFS ARE TIMELY IN SEEKING CLASS CERTIFICATION

The Denial Order held that because Plaintiffs' First Motion was "untimely" and "offer[ed] no excuse or justification for this delay," denial of class certification was appropriate. Denial Order at 3–4.  Under prevailing law and the circumstances of this case, Plaintiffs could not have reasonably filed their First Motion and the instant Renewed Motion at an earlier date. Class certification is a complex determination requiring consideration of numerous factors. Class certification therefore generally requires significant discovery before it can be properly considered, and such class certification motions are rarely filed before motions to dismiss have been adjudicated and substantial discovery has been undertaken.  *See, e.g.*, *Gustin v. Hoffman*, No. 6:08-cv-57-Orl-31DAB, 2008 U.S. Dist. LEXIS 116724, at *7-8 (M.D. Fla. Oct. 28, 2008)

---

[3]  Securities cases, such as this action, are ideally suited for class treatment due to the predominance of common issues of fact and the impracticability of bringing individual actions to address a common wrong.  *See In re Amerifirst Sec. Litig*., 139 F.R.D. 423, 427 (S.D. Fla. 1991). "Generally, Rule 23 is liberally construed in order to meet its objectives."  *Walco Investments, Inc. v. Thene*, 168 F.R.D. 315, 323 (S.D. Fla. 1996).   This action satisfies each of the requirements of Rule 23.

[4]  The procedural history and facts relevant to this Renewed Motion are set forth in paragraphs 32 through 88 of the Declaration of Donald J. Enright in Support of Plaintiffs' Renewed Motion ("Enright Decl.").  The Enright Declaration is incorporated herein by reference.

(denying class certification as "clearly premature" and citing "serious concerns regarding the lack of pre-certification discovery").

In this Action, Plaintiffs could not conduct such discovery because of the PSLRA's automatic discovery stay, and their belief that moving for class certification would be premature. *See e.g.*, *In re Nat'l Austl. Bank Sec. Litig.*, 2006 U.S. Dist. LEXIS 94163, at *9 (S.D.N.Y. Nov. 8, 2006) (due to the PSLRA's procedural requirements, "Plaintiffs were not in a position to move for class certification because Defendants moved to dismiss the Complaint in lieu of filing an answer, and because discovery was stayed . . . it would have been premature to move for class certification under these circumstances"). Additionally, a motion for class certification cannot be properly deemed untimely where it has not missed a deadline and was filed early in the procedural history of a case, regardless of the passage of calendar time. *See, e.g.*, *Jefferson v. Best Buy Co.*, No. 2:08cv121-WKW, 2010 U.S. Dist. LEXIS 47058, at *12 (M.D. Ala. Mar. 18, 2010) (motion for leave to amend timely because "no scheduling order was entered in th[e] case" and thus, there was "no deadline in effect for amending the pleadings"). Finally, both Fed. R. Civ. P. 23 and this District's Local Rules support Plaintiffs' belief that filing for class certification would be premature without discovery. *See* S.D. Fla. L.R. 23.1(c) ("In ruling on any motion by a putative class action plaintiff for a determination under [Rule] 23(c)(1) as to whether an action is to be maintained as a class action, the Court may . . . order postponement of the determination pending discovery . . .."). Thus, Plaintiffs believe the timing of both the First Motion and the Renewed Motion are justified.

### A.   The Procedural History in This Action Demonstrates Plaintiffs Have Timely Sought Class Certification

The Denial Order found that Plaintiffs' "motion for class certification was filed 18 months[5] after the filing of the initial complaint and six months after the filing of the First

---

[5] The Denial Order's implicit determination that the filing of a motion for class certification "18 months" after the initial complaint was filed would constitute undue delay does not account for the fact that class actions typically require, at minimum, well over one year of litigation before a motion for class certification is filed. *See, e.g.*, *Thorpe v. Walter Inv. Mgmt. Corp.*, 2016 U.S. Dist. LEXIS 144133 (S.D. Fla. Oct. 14, 2016) (15 months between initial complaint and motion for class certification being filed); *Saade v. Insel*, No. 17-22003-Civ-WILLIAMS/TORRES, 2019 U.S. Dist. LEXIS 59189 (S.D. Fla. Apr. 4, 2019) (17 months); *Kron*, 328 F.R.D. 694 (23 months); *Snyder v. iCard Gift Card, LLC*, 0:15-CV-61718 (S.D. Fla. 2015) (26 months); *Wein, et*

Amended Complaint" and that "Plaintiffs' motion offers no excuse or justification for this delay." Denial Order at 4.  Plaintiffs believe that this justification is to be found in the law governing the substantive claims brought in this Action, as well as in the Action's procedural history.

### 1.   The PSLRA's Impact On Timing In The Action

Because Plaintiffs assert class claims under the federal securities laws, this Action is governed by the requirements set forth in the Private Securities Litigation Reform Act as amended (the "PSLRA"), 15 U.S.C. § 77z-1(a)(3)(B).  The PSLRA contains numerous procedural requirements which significantly extend the time between filing of the initial complaint and when a plaintiff could realistically move for class certification, namely the lead plaintiff appointment process and the automatic stay on discovery.

With respect to the appointment of lead plaintiff, although this Action was initiated on December 13, 2017, the Court did not appoint Rensel and He as Co-Lead Plaintiffs until April 11, 2018.  ECF No. 59.[6]  Thus, four months had passed after the filing of the initial complaint before Plaintiffs could properly pursue substantive litigation with the proper authority as lead plaintiffs under the PSLRA.

In addition to delays attendant to the lead plaintiff appointment process, the PSLRA imposes an automatic stay on discovery "until after Plaintiffs prevail at the motion to dismiss

---

*al v. Unicapital, et al*, 1:00cv2054 (S.D. Fla. 2000) (16 months); *Garcia v. Clarins USA, Inc. et al*, 1:14-CV-21249 (S.D. Fla. 2014) (22 months); *Inetianbor v. Cashcall, Inc. et al*, 0:13-CV-60066 (S.D. Fla. 2013) (40 months); *Dance v. Levitt Corp. et al*, 0:08-CV-60111 (S.D. Fla. 2008) (32 months); *Cifuentes et al v. Regions Bank*, 1:11-CV-23455 (S.D. Fla. 2011) (26 months); *Waterford Township General Employees Retirement System v. Bankunited Financial Corporation et al*, 1:08-CV-22572 (S.D. Fla. 2008) (24 months); *Cabot East Broward 2 LLC et al v. Cabot et al*, 0:16CV61218 (S.D. Fla. 2016) (19 months). ***Indeed, the median "Time from First Complaint Filing to Class Certification Decision" in federal securities class actions filed from January 2000 through December 2018 is 2.5 years***. *See* https://www.nera.com/content/dam/nera/publications/2019/PUB_Year_End_Trends_012819_Final.pdf.

[6] On January 2, 2017, counsel for Rensel caused the PSLRA Notice to be published.  *See* ECF No. 41 at 4.  As required under the PSLRA, on March 5, 2018, Co-Lead Plaintiffs Rensel and He filed their competing motions for appointment as lead plaintiff.  (ECF Nos. 39, 41).  Shortly thereafter, on March 13, 2019, Rensel and He requested that the Court appoint them as Co-Lead Plaintiffs as such would be in the best interests of the Class.  ECF No. 46.

stage." *In re Sportsline.com Secs. Litig.*, 366 F. Supp. 2d 1159, 1174 (S.D. Fla. 2004).  This discovery stay has severely impeded Plaintiffs' ability to seek class certification, as Plaintiffs believe that discovery is a necessary component to any class certification motion.  *See Abs Entm't*, 908 F.3d at 427908 F.3d 405, 427 (9th Cir. 2018) ("'The propriety of a class action cannot be determined in some cases without discovery'") (*quoting Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 210 (9th Cir.1975)).  Indeed, various Districts Courts in this Circuit have denied motions for class certification as premature where the PSLRA's discovery stay prevented plaintiffs from obtaining class certification discovery on the basis that plaintiffs should have obtained class certification discovery prior to moving.  *See, e.g.*, *Gross v. Medaphis Corp.*, 977 F. Supp. 1463, 1475 (N.D. Ga. 1997) ("Class discovery was stayed [under the PSLRA] until the Court ruled on Defendants' Motion to Dismiss . . . Since there has been no class discovery, the Court DENIES as premature Plaintiffs' Motion for Class Certification without prejudice to Plaintiffs' refiling the Motion after the class discovery."); *Gustin*, 2008 U.S. Dist. LEXIS 116724, at *7–8 (denying class certification as "clearly premature" and citing "serious concerns regarding the lack of pre-certification discovery").

A review of the litigation's history demonstrates that Plaintiffs have not had an opportunity to obtain discovery to support any class certification motion, on account of the PSLRA's discovery stay.  Here, Plaintiff Rensel filed his Motion for Expedited Discovery and an Order Directing Defendants to Provide the Particularized Limited Discovery Agreed Upon By the Parties in Open Court on January 19, 2018.  (ECF No. 23).[7]  Shortly thereafter, on February 2, 2018, Defendant Centra Tech and its founders filed their initial motion to compel arbitration or dismiss the Initial Complaint (the "First MTCA").  (ECF No. 26).  Accordingly, absent a grant of Plaintiff's motion for expedited discovery or a ruling on the First MTCA, the PSLRA's automatic stay on discovery prevented Plaintiff from obtaining discovery.

---

[7] Plaintiffs also attempted to convince the Court to order expedited discovery to no avail in their Renewed Motion for a Temporary Restraining Order requesting, *inter alia*, "an interim accounting, under oath, detailing . . . all investor monies, assets, digital currencies, virtual currencies, cryptocurrencies, collected in connection with the Centra ICO and Centra Tech's business operations."  *See also* ECF No. 96 (Order granting Plaintiffs leave to amend which denied Plaintiffs Motion for Expedited Discovery as "moot").

While the MTCA R&R was issued on June 14, 2018 (ECF No. 77), Plaintiffs and Centra Tech filed objections to the report.  Thus, the First MTCA remained pending until the Court issued its findings on September 25, 2018 (ECF No. 96).  However, on September 25, 2018, the Court directed Plaintiffs to file their Amended Complaint on October 9, 2018.  Because the FAC asserted claims against additional defendants that contemplated filing motions to dismiss, the PSLRA's automatic stay on discovery continued to prevent Plaintiffs from seeking discovery. *See Dusek v. JP Morgan Chase & Co.*, No. 2:14-CV-184-FTM-29CM, 2015 WL 12826483, at *1 n.3 (M.D. Fla. Jan. 21, 2015) ("[T]he PSLRA stay of discovery applies when an initial motion to dismiss is contemplated, but had not yet been filed.").

Plaintiffs' inability to seek or obtain discovery until adjudication of the various motions to dismiss was reaffirmed on March 8, 2019 in Magistrate Becerra's Report and Recommendation on the Stay of Discovery and on Defendant Sharma's Motion for Extension of Time. (ECF No. 190) ("Discovery R&R").  The Discovery R&R recommended that "discovery be stayed as to all parties until such time as all the motions to dismiss have been filed and heard by the Court" because such "would allow the Court the opportunity to rule on all motions to dismiss and proceed with the discovery phase (assuming that one or more of the motions is denied) at once, and not on different tracks."  *Id*. at 4.  On May 1, 2019, the Court adopted the Discovery R&R in full.  (ECF No. 200).

On May 13, 2019, the Court issued its Omnibus Order granting certain previously-named defendants' motions to dismiss (ECF No. 202).  However, previously-named defendant Allan Shutt's Motion to Dismiss remained pending.  (ECF No. 199).  Accordingly, under the PSLRA and the Discovery R&R, Plaintiffs were ***still*** prevented from seeking any discovery.  Indeed, the PSLRA's discovery stay was not lifted until June 10, 2019, after Plaintiffs voluntarily dismissed their claims against the remaining individual defendants, as continued litigation against these defendants, even if successful, "would cause unnecessary delay to the resolution of their claims against Centra Tech" and was "unlikely to yield any additional recovery or benefit to the proposed class."  ECF Nos.  206, 210.  Moreover, until the various motions to dismiss were adjudicated and the voluntary dismissal occurred, Plaintiffs did not know what claims would survive, and therefore could not have adequately defined the class.

Unfortunately, at that point, Plaintiffs ***still*** could not seek discovery from Centra Tech as it was a party in default and "entry of a default against a defendant, unless set aside pursuant to

7

Rule 55(c), severely limits the defendant's ability to" participate in the action. *Tyco Fire & Sec., LLC v. Alcocer*, 218 Fed. Appx. 860 (11th Cir. 2007). Accordingly, Plaintiffs anticipated issuing subpoenas on Centra Tech, Sharma and various third parties to obtain limited class discovery prior to seeking class certification. However, on June 7, 2019, the Court issued an Order directing Plaintiffs to "move for Default Judgment against Centra Tech by **June 20, 2019**, consistent with Federal Rule of Civil Procedure 55(b)." (ECF No. 208) (Emphasis in original).

In light of the Court's June 7 Order, and in order to move for default judgment on behalf of the Class, Plaintiffs were compelled to move for class certification at that time, even though discovery had still not even commenced. *Jackson v. Paycron Inc.*, No. 8:19-CV-00609-WFJ-AAS, 2019 U.S. Dist. LEXIS 80325, at *2 (M.D. Fla. May 13, 2019) ("certification under Rule 23 remains a procedural requirement for a class to recover damages"); *Saade*, 2019 U.S. Dist. LEXIS 59189, at *3 (relief on behalf of a class "'cannot be granted to a class before an order has been entered determining that class treatment is proper'") (quoting *Davis v. Romney*, 490 F.2d 1360, 1366 (3d Cir. 1974)). Accordingly, to ensure compliance with the Court-ordered deadline for moving for default judgment, on June 13, 2019, Plaintiffs filed their First Motion and their Motion for Default Judgment. (ECF Nos. 211–12).

As reflected in the docket, this case has been hotly litigated since its initiation on December 13, 2017. At no point during the pendency of this action were Plaintiffs or their counsel sitting idly by. Enright Decl. ¶ 85. Rather, they were aggressively litigating on behalf of the putative class. *Id*.[8] Despite their aggressive best efforts, Plaintiffs have been hamstrung by

---

[8] For example, the following are some of Plaintiffs' substantive filings since this Action's initiation: *Ex Parte* Application for Emergency Asset Freeze (ECF No. 4) ("TRO"); Motion for Expedited Discovery (ECF No. 23); Reply Papers on same (ECF No. 28); Opposition to Defendant's Motion to Strike (ECF No. 30); Motion to Strike Defendant's Reply on its Motion to Strike (ECF No. 37); Reply Papers on same (ECF No. 49); Opposition to Defendant's First MTCA (ECF No. 31); Sur-reply on same (ECF No. 64); Motion to Strike Defendant's Reply on the First MTCA (ECF No. 37); Reply Papers on same (ECF No. 50); Motions for appointment as lead plaintiff (ECF Nos. 39, 41); Motion for Lead Plaintiff Discovery (ECF No. 44); Joint Motion for appointment as co-lead plaintiff (ECF No. 46); Renewed Application for Emergency Asset Freeze (ECF No. 54); Reply Papers on same (ECF No. 65); Motion for Leave to Amend attaching proposed Amended Complaint (ECF No. 73); Reply Papers on same (ECF No. 92); Opposition to first defense counsel's motion to withdraw (ECF No. 75); Objections to Report & Recommendation on the First MTCA (ECF No. 84); Opposition to Defendant's Emergency Motion to Modify Asset Freeze (ECF No. 85); Response to Defendant's Objections to R&R on

their inability to obtain discovery.  And, of course, once the Court had set a deadline for the filing of a Motion for Default Judgment, Plaintiffs filed the First Motion just one week later – a full week ahead of the Court-imposed deadline for the filing of the Motion for Default Judgment.

## 2.   There Was No Deadline For Class Certification

A scheduling order has not been issued in the Action, thus there has been no Court ordered deadline for a class certification motion.  On November 20, 2018, the Court issued its Order Requiring Discovery and Scheduling Conference.  (ECF No. 116) (the "November 20 Order").  Enright Decl. ¶ 22.  The November 20 Order directed the parties in this Action to "meet and confer regarding discovery and scheduling issues" on or before November 30, 2018, and thereafter submit a "joint-discovery-plan-and-conference report" within fourteen days of such conference.  *Id*.  Additionally, the Court directed the parties "to advise the Court whether they would prefer to be assigned to the expedited (Attachment 'A') or to the standard (Attachment 'B') [scheduling] track." *Id*.[9]

As noted in the Denial Order, "Courts often include a class certification deadline in their scheduling orders to avoid an untimely or late-filed motion for class certification."  Denial Order at 3 (citing *Bianchi v. Dynamic Recovery Solutions*, No. 13-61997, 2015 WL 12711584, at *1 (S.D. Fla. April 28, 2015) (Altonaga, J.)).  Here, on January 16, 2019, the 26(f) Report was filed which contained Plaintiffs' request that the Court assign the case to a scheduling track akin to the

---

First MTCA (ECF No. 88); Objections to Report & Recommendation on Renewed TRO (ECF No. 90); Amended Complaint (ECF No. 97); Opposition to second defense counsel's motion to withdraw (ECF No. 105); Motion for Alternative Service (ECF No. 153); Opposition to Mayweather Motion to Dismiss (ECF No. 161); Opposition to Khaled Motion to Dismiss (ECF No. 162); Opposition to Sykes Motion to Dismiss (ECF No. 162); Opposition to Stanley Motion to Dismiss (ECF No. 168); Motions for Clerk's Default (ECF Nos.169–171); Opposition to Extension to Obtain Records (ECF No. 184); Opposition to Motion to Set Aside Default (ECF No. 196); Opposition to Shutt Motion to Dismiss (ECF No. 201); Motion for Default Judgment (ECF No. 211); Motion for Class Certification (ECF No. 212), Reply Papers on same (ECF No. 218); Opposition to Renewed MTCA (ECF No. 219); Motion for Sanctions (ECF No. 222), Reply Papers on same (ECF No. 229); Motion to Strike Defendant's Reply on Renewed MTCA (ECF No. 223); Reply Papers on same (ECF No. 228); Motion for 1927 Sanctions (ECF No. 230); and Second Motion for Rule 11 Sanctions (ECF No. 232).

[9] Attachment A to the November 20 Order contained an example of Scheduling for "Expedited Track Cases" (the "Expedited Schedule").  Attachment B to that Order contained an example of Scheduling for "Regular Track Cases" (the "Regular Schedule").

Regular Schedule in "Attachment B" but requested that such schedule include "additional deadlines to account for briefing and a hearing on Plaintiffs' motion for class certification." ECF No. 156 at 3.

Had the Court issued a Scheduling Order adopting the Regular Schedule on the date the Rule 26(f) Report was filed, the deadline for Plaintiffs to file a motion for class certification would have been on or about November 20, 2019. If the Court had issued a Scheduling Order modeled after the Expedited Schedule Plaintiffs would have been required to move for class certification Plaintiffs by on or about July 3, 2019. Plaintiffs' First Motion would have been timely under either scenario. Indeed, Plaintiffs' Motion would have even been timely under the alternative schedule counsel for certain previously-named Defendants proposed in the 26(f) Report ("Defendants' Proposed Schedule"). ECF No. 156 at 5–6. Under Defendants' Proposed Schedule, "June 14, 2019" would have been set as the "Deadline [for Plaintiffs] to file motion for class certification."

However, the Court never entered a scheduling order,[10] and thus, there has never been a deadline set for Plaintiffs to file a motion for class certification in this Action.[11]

---

[10] In *Porter v. Collecto Inc.*, a court denied a "motion for class certification as untimely when filed 18 months after complaint and less than two months before trial." No. 14-21270, 2015 U.S. Dist. LEXIS 151379 (S.D. Fla. Nov. 2, 2015). However, the procedural posture and facts before the District Court in *Porter* are in no way analogous to those surrounding Plaintiffs' First Motion. In *Porter*: (i) the plaintiffs' claims were brought under the Fair Debt Collection Practices Act and thus, not governed under the PSLRA; (ii) the Court had previously issued a Scheduling Order setting September 2, 2015 as the "deadline for the filing of pretrial motions" and November 2, 2015 as the commencement of the trial; and (iii) the plaintiffs' motion for class certification was filed on September 16, 2015 and thus, failed to comply with a court-ordered deadline and genuinely untimely. *Id.* Here, unlike in *Porter*, Plaintiffs have not even obtained discovery, let alone approached a trial date. Moreover, unlike in *Porter*, Plaintiffs' claims are governed under the PSLRA's procedural requirements, the Court has not issued a Scheduling Order, and Plaintiffs were not instructed to file a motion for class certification under any Scheduling Order or otherwise court-ordered deadline.

[11] In ruling that Plaintiffs have been untimely in seeking class certification, the Court relied upon *Williams v. Southern Bell T&T Co.*, No. 77-1895, 1978 WL 73, at *2 (S.D. Fla. April 4, 1978). Denial Order at 3–4. The *Williams* court observed that "numerous other courts have held that when a plaintiff has failed to move for class certification in a timely manner, *i.e.* **in compliance with a local rule governing such matters or a court order**, such a plaintiff has failed to satisfy the mandate of Rule 23(a)(4) of fairly and adequately representing the interests of the putative class." *Williams*, 1978 WL 73, at *2 (emphasis added). Under the *Williams* court's criteria for

**B.      Neither The First Motion Nor the Renewed Motion Were Untimely Under Rule 23 and Local Rule 23.1**

As noted in the Denial Order, this District's rules do not require a plaintiff asserting class claims to file a motion for class certification within 90 days of the filing of the complaint. Denial Order at 3 (citing M.D. Fla. R. 4.04(b) and N.D. Fla. R. 23.1 as examples of local rules which do contain such requirements).  Importantly, the lack of a corresponding filing deadline in this District's local rules is not the result of an oversight, but rather was implemented by design. Prior to 2004, like the Middle and Northern Districts of Florida, this District's local rules also included a 90-day class certification filing requirement.  *See In re: Amendments to the Local Rules*, Admin Order 2011-11, at pg. 54 (S.D. Fla. filed Nov. 29, 2011).  However, such requirement was intentionally removed "to conform to the December 2003 amendment made to [Rule] 23(c)(1)(A)."  *Id.*[12]

Following its 2003 amendments, Rule 23 was amended to require a determination on class certification "at an early practicable time after a person sues or is sued as a class representative."  *Id.*  As explained by the Supreme Court in *China Agritech, Inc. v. Resh*, 138 S.

---

determination on whether a motion for class certification is "timely", Plaintiffs' First Motion was filed in a timely manner as it was made in full compliance with all applicable rules and orders. *See, e.g.*, *Hurley v. United States Healthworks Med. Grp. of Wash.*, P.S., No. CV-05-0017-EFS, 2006 U.S. Dist. LEXIS 44062, at *14–15 (E.D. Wash. June 27, 2006) ("In light of Rule 23(c)(1)(A)'s vague requirement that certification issues be addressed 'at an early practicable time' and the lack of authority requiring motions for class certification be filed by any certain time, the Court finds Plaintiffs' motion is timely"); *Jefferson*, 2010 U.S. Dist. LEXIS 47058, at *12 (finding plaintiff's motion for leave to amend timely because "no scheduling order was entered in th[e] case" and thus, there was "no deadline in effect for amending the pleadings"); *Badger*, 2017 U.S. Dist. LEXIS 8857, at *7 (agreeing that "there [wa]s no scheduling order entered on the docket, which means that there [we]re no litigation dates that Plaintiff [w]as . . . unable to meet") (internal quotation marks and citation omitted); *Univ. of Kan. Ctr. for Research, Inc.*, 2009 U.S. Dist. LEXIS 79722, at *8 ("The Court easily concludes that the motion is timely. No scheduling order has been entered in this matter; therefore, no deadlines have been imposed for discovery or otherwise.").

[12] Prior to 2003, Rule 23(c)(1)(A) [Fed. R. Civ. P. 23(c)(1)(A)] required that a determination on class certification be made "as soon as practicable after commencement of an action."  Fed. R. Civ. P. 23 advisory committee's note of 2003.

---

Ct. 1800 (2018), this "alteration was made to allow greater leeway, more time for class discovery, and additional time to 'explore designation of class counsel' and consider 'additional [class counsel] applications rather than deny class certification,' thus 'afford[ing] the best possible representation for the class.'" 138 S. Ct. at 1807 (citing Advisory Committee's 2003 Note on subds. (c)(1)(A) and (g)(2)(A) of Fed. Rule Civ. Proc. 23, 2.). In fact, this District's Local Rules reflect that class certification almost always requires substantial discovery before it can be properly considered, and class certification motions are rarely filed before motions to dismiss have been adjudicated and substantial discovery has been undertaken. *See* S.D. Fla. L.R. 23.1(c) ("In ruling on any motion by a putative class action plaintiff for a determination under [Rule] 23(c)(1) as to whether an action is to be maintained as a class action, the Court may . . . order postponement of the determination pending discovery . . ..").

Additionally, a 90-day filing deadline for a class certification motion has been found to conflict with the flexibility afforded by the 2003 amendment to the Federal Rules, and is therefore not a guide to such a motion's timeliness. *See Abs Entm't v. CBS Corp.*, 908 F.3d 405, 427 (9th Cir. 2018). In *Abs Entm't v. CBS Corp.*, the Ninth Circuit held that the 90-day deadline for the filing of a class certification motion contained in C.D. Cal. L.R. 23-3 was "in direct contrast to the flexibility of the Federal Rule, which calls for a determination on class certification '[a]t an early practicable time after a person sues or is sued as a class representative.'" *Id*. (quoting Fed. R. Civ. P. 23(c)(1)). Accordingly, in considering Rule 23(c)(1), the Ninth Circuit opined that "'you should feel free to ignore local rules calling for specific time limits; such local rules appear to be inconsistent with the federal rules and, as such, obsolete.'" *Id*. (quoting Barbara J. Rothstein & Thomas E. Willging, Federal Judicial Center, *Managing Class Action Litigation: A Pocket Guide for Judges* 9 (3d ed. 2010)).[13] The Ninth Circuit concluded that C.D. Cal. L.R. 23-3's 90-day class certification filing requirement was incompatible with the Federal Rules of Civil Procedure and thus, in light of Fed. R. Civ. P.

---

[13] In light of the foregoing, any finding considering those 90-day filing requirements persuasive in framing a determination as to an appropriate timeline for moving for class certification would be misplaced.

83(a)(1)'s mandate that local rules "cannot be incompatible with Federal Rules," could not be used to deny class certification as untimely. *Abs Entm't*, 908 F.3d at 427.[14]

*       *       *

In light of the foregoing chain of events and the applicable law, Plaintiffs submit that they are not untimely in seeking class certification.

## II.    LEGAL STANDARD ON A MOTION FOR CLASS CERTIFICATION

Rule 23 "'establishes the legal roadmap courts must follow when determining whether class certification is appropriate.'" *Kron*, 328 F.R.D. at 698–99 (quoting *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1187 (11th Cir. 2003)). "Rule 23(a)'s requirements are

> (1)    the class is so numerous that joinder of all members is impracticable;
>
> (2)    there are questions of law or fact common to the class;
>
> (3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4)    the representative parties will fairly and adequately protect the interests of the class.

*Keim v. ADF MidAtlantic, Ltd. Liab. Co.*, 328 F.R.D. 668, 675 (S.D. Fla. 2018).

"In addition to Rule 23(a), the party seeking certification 'must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b).'" *Id.* (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)). At the class certification stage, a plaintiff is only required to demonstrate that the requirements of Rule 23 are met, not that the plaintiff will ultimately prevail on the merits. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013) (Rule 23 is not a "license to engage in free-ranging merits inquiries at the certification stage").

As detailed herein, each of the foregoing Rule 23(a) requirements are plainly met in this Action. Additionally, the proposed Class satisfies the requirements of Rule 23(b)(3) because "questions of law or fact common to class members predominate over any questions affecting

---

[14] *See also Acticon AG v. China N. E. Petroleum Holdings Ltd.*, 687 F. App'x 10, 12 (2d Cir. 2017) (finding district court "erred when it denied [a] class certification motion" on the grounds that it was filed "too late" and holding that a "motion for class certification should 'be denied [as untimely] only when the late timing of the determination may cause prejudice or unduly complicate the case.'") (quoting 7AA Wright & Miller, Fed. Prac. & P. § 1785.3 (3d ed.)).

only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  Furthermore, the members of the proposed Class can be ascertained through administratively feasible methods by reference to and analysis of objective criteria.  *Eldridge*, 2019 U.S. Dist. LEXIS 142999, at \*18-22.  Hence, for the reasons stated in the herein, Plaintiffs' Renewed Motion should be granted.

## III.   THE PROPOSED CLASS SATISFIES RULE 23(A)

Rule 23(a) sets four threshold requirements for class certification: (1) the class must be so numerous that joinder of all members is impracticable ("numerosity"); (2) there must be questions of law or fact common to the class ("commonality"); (3) the claims of the representative parties must be typical of the claims of the class ("typicality"); and (4) the representative parties must fairly and adequately protect the interests of the class ("adequacy"). FED. R. CIV. P. 23(a).  This case easily satisfies each of these requirements.

### A.   The Class is Sufficiently Numerous

Rule 23(a)(1) "requires that the class be 'so numerous that joinder of all members is impracticable.'"  While there is no fixed rule, generally a class size less than twenty-one is inadequate, while a class size of more than forty is adequate."  *Williams v. Wells Fargo Bank, N.A.*, 280 F.R.D. 665, 671–72 (S.D. Fla. 2012) (citing *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 489–90 (S.D. Fla. 2003)).  While a plaintiff must present some evidence that the class to be certified will satisfy the numerosity requirement of Rule 23, "it is well-settled that a specific number of class members is not necessary to satisfy Rule 23's numerosity requirement."  *Kron*, 328 F.R.D. at 700 (citing *Cox v. American Cast Iron Pipe Co*., 784 F.2d 1546, 1553 (11th Cir. 1986)); *see also Shaw v. Set Enters.*, No. 15-62152-CIV-DIMITROULEAS/S, 2017 U.S. Dist. LEXIS 111790, at \*5 (S.D. Fla. June 30, 2017) (numerosity satisfied where there were "approximately 4,500 Class Members and thus, joinder [was] impracticable") (citing *Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir.1986)).  Moreover, the numerosity requirement of Rule 23(a)(1) is generally assumed to have been met in class action suits involving securities. *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981); *AmeriFirs*t, 139 F.R.D. at 427.

Here, the Class is so numerous that joinder of all members is impracticable.  Plaintiffs allege that there are thousands of Class members and that "[a]ll members of the Class and subclasses may be identified by records maintained by Defendant[] and/or virtual currency

exchanges . . ..."  Compl. ¶ 26.  In support of this allegation, Plaintiffs have submitted evidence showing that during the Class Period, Defendants received ETH from thousands of unique addresses, which are personal identifiers of the putative class members.    (ECF No. 211-1).  Thus, the proposed class easily meets Rule 23's numerosity requirement.  *See Kron*, 328 F.R.D. at 700 ("[P]roposed class satisfies the numerosity requirement as Plaintiff has established a reasonable basis to believe that thousands of class members exist."); *Zeidman*, 651 F.2d at 1038 (observing that classes with as few as thirty members have been certified).

### B.    Questions of Law and Fact are Common to the Class

Rule 23(a)(2) requires that the proposed class have "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2).  Commonality is met if the plaintiffs allege standardized conduct by the defendants directed toward members of the proposed class.  *C.V. Reit, Inc. v. Levy*, 144 F.R.D. 690, 696 (S.D. Fla. 1992); *AmeriFirst*, 139 F.R.D. at 428 ("a court will normally find commonality where a question of law refers to standardized conduct by defendants towards members of the proposed class.").  This Court has held that  "'[w]hat matters to class certification is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.'"  *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 321 F.R.D. 688, 697 (S.D. Fla. 2017) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

"The 'commonality' requirement of Rule 23(a)(2) 'is a 'low hurdle' easily surmounted." *Steen v. Capital One (In re Checking Account Overdraft Litig.)*, No. 1:09-MD 02036-JLK, 2012 U.S. Dist. LEXIS 200108, at *55 (S.D. Fla. July 18, 2012) (citation omitted); *see also Cheney*, 213 F.R.D. at 490 (commonality threshold is "not high").  Here, virtually all of the questions of law and fact in this action are common to Plaintiffs and all other purchasers of CTR Tokens during the Class Period.  These common questions of law and fact include whether:

(i)    Defendant Centra Tech offered and sold unregistered securities to the Class during the Centra ICO;

(ii)    Defendant Centra Tech engaged in a fraudulent and manipulative scheme in connection with the Centra ICO;

(iii)    Defendant Centra Tech acted purposefully, knowingly or recklessly in omitting and/or misrepresenting material facts;

(iv)    CTR Token's price was artificially inflated during the Class Period as a result of material nondisclosures and/or misrepresentations; and

(v)     the members of the Class have sustained damages as a result of Centra Tech's sale of unregistered securities and/or fraudulent conduct alleged in the Complaint, and if so, what the appropriate measure of damages is.

Compl. ¶29.

Given that there are multiple questions of law and fact common to the Class, the commonality requirement of FED. R. CIV. P. 23(a)(2) has been plainly satisfied.  *See, e.g.*, *Williams v. Mohawk Industries, Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) ("[C]ommonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members.") (internal quotation marks omitted); *Saade*, 2019 U.S. Dist. LEXIS 59189, at *8 ("In fact, even 'a single common question' will suffice.") (quoting *Wal-Mart Stores, Inc.*, 564 U.S. at 350).

### C.     Plaintiffs' Claims are Typical of the Class

"Rule 23(a)(3) requires that 'the claims or defenses of the representative parties are typical of the claims or defenses of the class.' "The claims of the class members do not need to be identical to those of the class representative; rather, there must exist 'a sufficient nexus ... between the legal claims of the named class representatives and those of individual class members to warrant class certification.'   This nexus exists if the claims of the class representative and the class members 'arise from the same event or pattern or practice and are based on the same legal theory.'" *Cox v. Porsche Fin. Servs.*, No. 1:16-CV-23409, 2018 U.S. Dist. LEXIS 192707, at *16 (S.D. Fla. Nov. 9, 2018) (quoting *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216–17 (11th Cir. 2012)).

Here, like all members of the Class, Plaintiffs each: (i) allege that Defendant violated the Securities Act's registration provisions by offering and selling unregistered securities (in the form of CTR Tokens) in connection with the Centra ICO, (ii) allege that Defendant engaged in a fraudulent and manipulative scheme in connection with the Centra ICO; (iii) purchased CTR Tokens in the Centra ICO in reliance upon numerous material misrepresentations made by Centra Tech; and (iv) sustained damages as a result of their respective, investment in the Centra ICO during the Class Period as a result of the Defendant's wrongful conduct.

Thus, Plaintiffs' claims and the Class' claims arise out of the same wrongful conduct and are premised on the same legal theory.  Plaintiffs' claims are typical of those of the Class as they

have the same interests and have suffered the same injuries as the other members of the Class. *See, e.g.*, *Busby v. JRHBW Realty, Inc*., 513 F.3d 1314, 1322 (11th Cir. 2008).

        **D.**     **Plaintiffs will Fairly and Adequately Protect the Class's Interests**

Rule 23(a)(4) requires Plaintiffs to show that they "will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). "To satisfy the adequacy requirement, the named plaintiff and his counsel must demonstrate they will adequately protect the interests of the putative class. . . . Adequacy of representation under Rule 23(a) 'encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.'" *Kron*, 328 F.R.D. at 701 (quoting *Valley Drug Co.*, 350 F.3d at 1187).

First, Plaintiffs are well suited to represent the Class. Plaintiffs' interests are the same as those of the absent Class members, and there are no conflicts between them and the Class. Furthermore, Co-Lead Plaintiffs Rensel and He were appointed Lead Plaintiffs pursuant to the PSLRA by this Court and have been actively involved in this litigation. Plaintiffs, as evidenced by their participation in this litigation and declarations submitted in support of the instant motion, are willing to serve as representative parties on behalf of the class and are aware of their fiduciary duties to absent class members if appointed class representatives. *See* Declarations of all the Plaintiffs attached as Exhibits A-F to the Enright Decl.

Second, Plaintiffs have engaged Levi & Korsinsky, LLP and Taylor-Copeland Law to represent them in this litigation. As described more fully in Section VI, below, both firms are experienced in the areas of class actions and securities litigation, and particularly securities litigation involving initial coin offerings. Plaintiffs' counsel have the skill and knowledge to effectively and expeditiously prosecute this action on behalf of the Class. Additionally, Plaintiffs' counsel have been vigorously prosecuting Plaintiffs' claims on behalf of the putative class.

## IV.    THE PROPOSED CLASS IS ASCERTAINABLE

When, like here, a plaintiff seeks class certification under Rule 23(b)(3), he or she must show that the proposed class "members can be ascertained by reference to objective criteria and the analysis of the criteria is administratively feasible, *i.e.*, the procedure must be a 'manageable process that does not require much, if any, individual inquiry.'" *Saade*, 2019 LEXIS 59189, at *13 (quoting *Bussey v. Macon Cty. Greyhound Park, Inc.*, 562 F. App'x 782, 787 (11th Cir.

2014)).  It is important to note, however, that "'[c]lass members *need not be identified at certification; instead, the ascertainability element only requires that class members be identifiable at some point* in the proceeding."  *Saade*, 2019 LEXIS 59189, at *13 (emphasis added and internal citation omitted); *see also Reyes*, 2018 U.S. Dist. LEXIS 106449, at *13 ("As one court in this district put it: 'when considering whether Plaintiff has satisfied the implicit, threshold requirements of ascertainability under Rule 23, the Court *only considers whether class members can be identified at all*, at least in any administratively feasible (or manageable) way.'") (quoting *Miller v. Wells Fargo Bank, N.A.*, No. 1:16-CV-21145-UU, 2017 U.S. Dist. LEXIS 24572, at *4 (S.D. Fla. Feb. 22, 2017)) (emphasis added)).

As previously noted, the Court's Denial Order found that, based on the previously proposed class definitions, "Plaintiffs are unable to demonstrate that their proposed classes are ascertainable."  Denial Order at 4.  Additionally, the Denial Order held that "[t]he world of cryptocurrency and currency exchanges is a highly technical area and the Plaintiffs would need to explain to the Court how currency exchanges work, what information is stored, and how the Plaintiffs would access this information to identify potential class members."  *Id*. at 5.

Harkening to the Court's admonitions, Plaintiffs' Renewed Motion proposes a revised definition of the proposed class

> All persons or entities who purchased or otherwise acquired CTR Tokens directly from Defendant Centra Tech in connection with its "official" initial coin offering from July 23, 2017 through October 5, 2017.

Specifically, members of this proposed Class can be identified by two objective criteria: (1) they purchased CTR Tokens in Centra Tech's official initial coin offering; and (2) such purchases occurred from July 23, 2017 through October 5, 2017.  *See e.g., Audet v. Fraser*, No. 3:16-cv-0940 (MPS), 2019 U.S. Dist. LEXIS 104195, at *37-38 (D. Conn. June 21, 2019) (certifying class of cryptocurrency investors and finding "the criteria for class membership in this case—purchases of designated products during a specified timeframe by all persons or entities except governmental agencies and those with certain relationships to a defendant—are clearly objective" and thus "easily clears" the "modest [ascertainability] threshold").

Plaintiffs propose the following administratively feasible methods for identifying class members:

### A.     Claim Forms and Records To Be Submitted From Class Members

Plaintiffs propose to disseminate notice to the Class and solicit standardized claims from potential Class members, which would then be cross referenced and corroborated by reference to objective, immutable, public transaction records maintained on the Ethereum blockchain and/or Centra Tech's business records.  Plaintiffs would use a substantially similar claim form to that approved for use in a similar matter involving an issuer of unregistered securities through an initial coin offering:  *SEC v. Arisebank, et al*, 3:18-cv-00186 (N.D. Tex.).  In *Arisebank*, the District Court approved a Claims Process designed to compensate investors in the Arisebank ICO, which requested ICO investors to submit an online "Proof of Claim" form containing several data fields, including identifying information, transaction details and supporting documentation.  The proposed claims process and order approving such are attached as Exhibits 10 and 11 respectively to the Enright Decl.[15]

---

[15]     Plaintiffs are submitting herewith the Affidavit of Cameron R. Azari, Esq., a claims administrator with Epiq Global, as Exhibit 12 to the Enright Dec.  This affidavit explains in detail how the Class could be notified, ascertained and managed through the claims process.  Specifically, the affidavit explains that: (i) "data for the purpose of class notice can be readily acquired" and that once such data "is compile, all identifiable Class members would be sent individual notice *via* email and/or physical mail", *id*. ¶¶17–18; (ii) after an assessment is made of the "completeness of the mailing database" a determination would be made as to whether "any supplementary publication notice" is needed to "allow Class members who do not receive direct mail notice to learn of the case and direct them to resources where they may self-identify as potential Class members", *id*. ¶20; (iii) the administrator would likely establish an "informational website" "to enable potential Class members to obtain additional information and documents" as well as maintain a toll-free phone number "to allow potential Class members to call and request a Detailed Notice and listen to recorded information that includes answers to frequently asked questions and directs them to the case website", *id*. ¶22; (iv) a "Claim Form" "will be available to Class Members wishing to file a claim *via* informational website or mail.  The Claim Form will require certain information regarding the claimants' purchases or transactions of Centra Tech Tokens directly from Centra Tech in connection with its Initial Coin Offering.  In addition, claimants will be required to provide documentation in support of those transactions", *id*. ¶24; and (v) the "information from each Claim (including the Claimant's name, address, account number/information from his, her, or its supporting documentation, and the Claimant's purchase/acquisition transactions in Centra Tech Tokens) will be entered into a dedicated database for this matter" to "verify that all required information had been provided."  *Id*. ¶25.  Ultimately, the administrator concludes "that given the available data identified by court records and the objective definition of the Class, it is my opinion that Rule 23 notice can be effectively provided and an administratively feasible process for identifying and confirming Class membership implemented, if and when an award may be available."  *Id*. ¶27.

Claim forms containing similar information provided from members of the proposed Class could be used to readily ascertain members of the Class. *Belcher v. Ocwen Loan Servicing, LLC*, No. 8:16-cv-690-T-23AEP, 2018 U.S. Dist. LEXIS 61452, at *23–24 (M.D. Fla. Mar. 9, 2018) (ascertainability met where class members could be identified through "the use of self-identification . . . corroborated by objective evidence in [defendant's] records and in other records"); *Reyes*, 2018 U.S. Dist. LEXIS 106449, at *38 (ascertainability met where defendants "'records [we]re in fact useful for identification purposes' because they narrow the potential class" and there was *"*no indication that, in this particular case, self-identification through affidavits [wa]s not administratively feasible or 'otherwise problematic'") (citation omitted).

For example, a transaction ID provided on a claim form could be quickly cross checked on the public Ethereum blockchain to ensure that the transaction occurred within the Class Period and that funds were sent to one of the public wallets that Centra Tech has acknowledged it used to receive investments in the Centra ICO.[16]  Furthermore, such a form would afford potential Class members with an opportunity to provide objective documentary evidence to demonstrate their membership in the Class, such as time stamped email records received from Centra Tech confirming their investment in the Centra ICO. *See, e.g.*, ECF No. 32-1 (email from Centra Tech to Rensel confirming his status as an "ICO contributor" and providing instructions on accessing the "Centra Wallet").

It is important to emphasize that it is possible to determine the merits of such claims using just the information publicly available through the Ethereum blockchain.  Such claims' transaction ID and wallet information can be cross-referenced against the Ethereum blockchain to determine to what extent the claimant actually purchased Centra Tokens in the ICO. Similarly, in *Audet*, in granting class certification, the Honorable Michael P. Shea of the United States District Court for the District of Connecticut explained that putative class members' cryptocurrency investments could also be "confirmed on the Bitcoin blockchain by searching for customers' wallet addresses" and that "any public blockchain website can be used to locate and

---

[16] By way of example, to confirm Plaintiff Chi Hao Poon's status as a member of the Class, Plaintiffs' counsel requested, and received, Chi Hao Poon's ETH wallet address and email confirmations he received from Centra Tech regarding his investment in the Centra ICO. *See* Enright Decl., ¶¶ 9–11, Exs. 7–9.

confirm such transactions." 2019 U.S. Dist. LEXIS 104195, at *45–46. Here, like in *Audet*, class members' investments could also be verified on the public Ethereum blockchain.[17]

### B.   Members of the Class Are Ascertainable Through Reference to Specific Centra Tech Business Records

Although Class members' claims can be vetted by cross-referencing specific blockchain information and other information and documents in the Class members' own possession that could be submitted in connection with the claims process[18], identification of Class members (for, *inter alia*, the purpose of distributing Class notice) can be readily accomplished by referencing business records in the possession of several targets for subpoenas, including Sharma, Sharma's criminal defense counsel, Zoho CRM, GoDaddy, Google, the SEC, and the U.S. Attorneys for the Southern District of New York.[19]  Such records have been specifically shown to exist in the course of this Action, the SEC Action, and the Criminal Action.  There is no reason to expect that they would be particularly difficult to access from one or more sources.  As such, as set forth below, the Class is readily ascertainable.

### 1.   Centra Tech Spreadsheet Purporting to Contain Personally Identifying Information and Transaction Details for Each Class Member

An Excel spreadsheet that Centra Tech originally produced on or about January 18, 2018 to the SEC was stated to "identify all the investors who purchased any digital tokens issued by Centra Tech, along with (among other things) each investor's contact information, the amount of

---

[17] *See also* Enright Decl., ¶¶ 9–11, Exs. 7–9.

[18] *See* Section IV.A, *supra*.

[19] Indeed, on September 26, 2019, Plaintiffs subpoenaed these individuals and entities for precisely the information discussed herein – thereby demonstrating that such a process is indeed feasible.  *See* subpoenas attached as Exhibits 13–23 to the Enright Decl.  Plaintiffs note that they could not have subpoenaed these records while the PSLRA automatic stay of discovery was in effect.  *See Petrie v. Elec. Game Card, Inc.*, No. SACV 10-0252 DOC (RNBx), 2012 U.S. Dist. LEXIS 196221, at *4 (C.D. Cal. Mar. 6, 2012) (striking allegations utilizing subpoenaed information as such "was obtained during the PSLRA's automatic stay on discovery"); *Internet Law Library, Inc. v. Southridge Capital Mgmt., LLC*, 2003 U.S. Dist. LEXIS 11508, at *11 (S.D.N.Y. July 7, 2003) (issuing subpoenas constituted an attempt to "circumvent the PSLRA's [discovery]                                                                                           constraints").

digital funds each investor provided for the purchase of Centra tokens, the digital wallet addresses identifying the digital wallets used by each investor to purchase Centra tokens, the transaction hash number identifying each purchase, and the digital wallet addresses identifying the digital wallets used by Centra Tech to receive digital funds from each investor." (ECF No. 54-2 Ex. 2 ¶ 32). This spreadsheet contains several tabs, including "[t]he CentraToken tab" which "contains information regarding more than 1800 purchases of Centra Tokens from between on or about July 30 to August 26, 2017" and the "CentraSale tab" which "contains information regarding more than 1700 purchases of Centra Tokens from between on or about September 19, 2017 to September 26, 2017." *Id.*[20]

Access to the information on this spreadsheet would make identifying Class members nearly effortless, and thus makes the proposed class clearly ascertainable. *Encarnacion v. Fin. Corp. of Am.*, No. 2:17-cv-566-FtM-38CM, 2018 U.S. Dist. LEXIS 203219, at *9 (M.D. Fla. Nov. 14, 2018) (class ascertainable where defendant "ha[d] the names and addresses of the individuals to whom it sent L2N Collection Letters" because "the address list, in and of itself, identifie[d] potential class members").

The Court's Denial Order noted that Plaintiffs might not be able to obtain this spreadsheet because there was no indication that "the government would share this spreadsheet . . . ." Denial Order at 5. However, the record from the Criminal Action demonstrates that, by April 15, 2019, Centra Tech's owner, Sharma, received electronic copies of all records Centra Tech had previously produced to the SEC, thereby clearly indicating that he and his criminal defense counsel would have this documentation readily available. Crim. Action, ECF No. 138 at 2. Accordingly, Plaintiffs are working to obtain this spreadsheet by issuing a subpoena to Sharma, Sharma's criminal defense counsel, the SEC and the U.S. Attorney for the Southern District of New York. The ability to obtain such records through subpoenas is sufficient to

---

[20] The Denial Order also expressed concern that this spreadsheet may "only partially cover" the dates in the Class Period. Regardless of whether this is the case, each member of the Class is still easily ascertainable. Indeed, Plaintiffs Masteusz, Lee, and Chi Hao Poon made investments in the Centra ICO from September 11, 2017 through September 15, 2017. While this period of time might or might not be covered by the spreadsheet provided to the government, Plaintiffs' counsel was able to easily ascertain and confirm Plaintiffs Masteusz, Lee and Chi Hao Poon as Class members by receipt of: (1) the ETH wallet addresses they used to invest in the Centra ICO; and (2) email confirmations they received regarding their investments. *See,* fn. 16, *supra*.

establish ascertainability. *See, e.g.*, *Saade*, 2019 U.S. Dis. LEXIS 59189, at *15–16 (finding proposed class of airline passengers ascertainable under the assumption that the Department of Transportation required defendant airline to collect "customer information, including customer names, email addresses, street addresses, and phone numbers" and "it [wa]s possible that Plaintiff c[ould] subpoena the department to ascertain the necessary information").

### 2. Centra Tech Also Collected Contact Information from ICO Investors through Google Forms

Centra Tech also received and maintained records of information submitted by ICO purchasers through the Google Form.[21]   Through this mechanism, the Company collected personally identifying information from Centra ICO investors, including: (i) "Email address"; (ii) "First Name"; (iii) "Last Name"; (iv) "ETH Wallet Address"; (v) "ETH TX Hash"; (vi) "Amount of ETH contributed?"; (vii) "Home Address"; (viii) "Date Of Birth"; (ix) "Phone Number"; and (x) "Centra Card Type."  Enright Decl., Ex. 4

Similarly, Centra used the "Centra Token White List Sign up" Google Form.[22]   Through this mechanism, the Company collected personally identifying information from Centra ICO investors, including: (i) "Email address"; (ii) "First Name"; (iii) "Last Name"; (iv) "Centra Slack Handle Username" (v) "Home Address"; (vi) "Date Of Birth"; (vii) "Phone Number"; and (viii) "ETH Wallet Address"; and "Amount to Contribute in ETH." Enright Decl. Ex. 5.

Reference to the investor information collected by Centra Tech's Google Forms provides yet another means of readily identifying Class members.  Again, this more than suffices to satisfy the ascertainability requirement.  *See, e.g.*, *Alderman v. GC Servs. Ltd. P'ship*, No. 2:16-CV-14508, 2018 U.S. Dist. LEXIS 10205, at *8 (S.D. Fla. Jan. 19, 2018) (class found to be properly ascertainable "based on objective criteria that c[ould] be determined from Defendant's

---

[21] This Google Form was previously filed in this Action [ECF No. 31-2] but is reattached as Exhibit 4 to the Enright Decl.  This form had been available at: https://docs.google.com/forms/d/1mumq0Z5rjxQ6JNkVPlZV4y0Qs45zGhkeiWnT2EOY8L8/viewform?edit requested=true.

[22] This Google Form is attached as Exhibit 5 to the Enright Decl.  As demonstrated in Centra Tech's September 4, 2017 posting entitled "Centra Tech White List Update" (attached as Exhibit. 6 to the Enright Decl.), to invest in the Centra ICO as a member of Centra's "Whitelist", investors were required to "fill out our White List Form, which can be found: https://goo.gl/forms/6KQarpT4LuXxBwNa2."

business records").  Furthermore, should Centra Tech, Sharma and/or Sharma's criminal defense counsel refuse to produce records generated through submissions of the Google Form, Plaintiff could subpoena Google to obtain these records.  Again, the availability of this information in this manner operates to satisfy the ascertainability requirement.  *Keim*, 328 F.R.D. at 680 (class ascertainable where "user identification information c[ould] be obtained from [] phone carriers or through inquiry from the individual subscriber[s]").

### 3. Records from Centra Tech's "ICO Database" and "ZOHO CRM Database"

Defendant has previously filed excerpts from Centra Tech's "ICO Database"[23] which contained, *inter alia*, Co-Lead Plaintiff Rensel's name, email address, phone number, home address, ETH Wallet Address, the dates of his investments in the Centra ICO, the amount of his investment in the Centra ICO, and the transaction ID's for his investments.  *Id*.  Defendant represented to the Court that this ICO Database contained the records of all ICO investors.  ECF No. 26-3 ¶¶ 16–18.  Access to these records would again provide a straightforward means to specifically identify every member of the Class, and thereby satisfy the ascertainability requirement.  *Alderman*, 2018 U.S. Dist. LEXIS 10205, at *8 (class found to be properly ascertainable "based on objective criteria that c[ould] be determined from Defendant's business records").

Additionally, members of the Class could be identified, located and contacted by reference to the records from Centra Tech's "Zoho CRM Database", such as the four records from such Database defendants previously filed in this Action.  ECF No. 34-3.  These Zoho CRM Database records contained, *inter alia*, Co-Lead Plaintiff Rensel's and three additional Centra ICO investors' names, phone numbers, email addresses, home addresses, dates of birth, and ETH Wallet addresses.  *Id*.  With such records, Class members could each be identified with ease.  *See, e.g.*, *City of Sunrise Gen. Emples. Ret. Plan v. FleetCor Techs.*, Inc., No. 1:17-CV-02207-LMM, 2019 U.S. Dist. LEXIS 122231, at *6–7 (N.D. Ga. July 17, 2019) (class "easily" ascertainable where the class was "defined by reference to FleetCor stock purchase dates and obtaining those members' names can easily be done by looking to investor records"); *Williams v. New Penn Fin., LLC*, No. 3:17-cv-570-J-25JRK, 2018 U.S. Dist. LEXIS 226270, at *3-4 (M.D.

---

[23] ECF No. 26-5.

Fla. Dec. 20, 2018) (ascertainability met where proposed definition of class was "based on objective criteria, all of which [we]re determinable from Shellpoint's business records").

## V.    THE PROPOSED CLASS SATISFIES RULE 23(B)(3)

As noted, "[i]n addition to Rule 23(a), the party seeking certification 'must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b).'"  *Keim*, 328 F.R.D. at 675 (quoting *Behrend*, 569 U.S. at 33).  Here Plaintiffs seek certification under Rule 23(b)(3).  "Rule 23(b)(3) provides that certification is available if the Court finds 'that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'"  *Saade*, 2019 U.S. Dist. LEXIS 59189, at *16 (quoting FED. R. CIV. P. 23(b)(3)).

### A.    Questions of Law and Fact Predominate

"To satisfy the predominance requirement, the named plaintiff must establish that the issues subject to generalized proof in the class action, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof."  *C-Mart, Inc. v. Metro. Life Ins. Co.*, 299 F.R.D. 679, 691–92 (S.D. Fla. 2014) (citing *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997)).  "'Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief.'"  *Wells Fargo Bank, N.A.*, 280 F.R.D. at 674 (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004)).

Where, as here, the Plaintiffs' claims involve allegations that Defendant Centra Tech committed the same unlawful acts in the same manner against the entire Class, common claims are found to predominate.  *Kirkpatrick*, 827 F.2d at 724.  The Supreme Court has recognized that "[p]redominance is a test readily met in certain cases alleging…securities fraud…"  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *see also Larsen v. Union Bank, N.A. (In re Checking Account Overdraft Litig., MDL No. 2036)*, 275 F.R.D. 666, 676 (S.D. Fla. 2011) ("Indeed, predominance is 'a test readily met in certain cases alleging consumer or securities fraud . . ..'") (citation omitted).

As discussed *supra*, the predominance of common questions over individual claims is apparent from the fact that if Plaintiffs and every other Class member were each to bring an individual action, they would each still be required to prove Defendants' liability and would need

to prove the same allegations. "Courts generally focus on the liability issue in deciding whether the predominance requirement is met, and if the liability issue is common to the class, common questions are held to predominate over individual questions." *In re Alexander Grant & Co. Litig.*, 110 F.R.D. 528, 534 (S.D. Fla. 1986).

Here, there is clear predominance of common questions over individual issues because *all* elements of Plaintiffs' claims present questions that are susceptible to class-wide resolution.

### 1.    Whether CTR Tokens Are Investment Contract Securities

"In order to establish liability under Section 12(a)(1), a Plaintiff in the Eleventh Circuit must prove (1) the Defendants sold or offered to sell securities; (2) no registration statement was in effect as to the securities; and (3) interstate transportation or communication and the mails were used in connection with the sale or offer of sale." TRO R&R at 8 (citing *Sec. & Exch. Comm'n v. Levin*, 849 F.3d 995, 1001 (11th Cir. 2017)).

Under Section 2(a)(1) of the Securities Act, a "security" includes an "investment contract." 15 U.S.C. § 77b(a)(1). An investment contract is "an investment of money in a common enterprise with profits to come solely from the efforts of others." *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 301 (1946).

Under the *Howey* test, whether the sale of CTR Tokens in the Centra ICO constituted "investment contracts," and thus, securities, undoubtedly raises common, class-wide questions, and this Court has already concluded the offering of CTR "Tokens was an investment contract under the Securities Act, such that the Defendants sold or offered to sell securities by virtue of the Centra Tech ICO." TRO R&R.[24]

First, Class members invested BTC, ETH, and other currencies into the Centra ICO. As this Court has already recognized, "[i]t is well-established that the 'investment of money' required for an investment contract need not be made in cash, and refers more generally to 'an arrangement whereby an investor commits assets to an enterprise or venture in such a manner as to subject himself to financial losses.'" TRO R&R at 9 (quoting *SEC v. Friendly*, 49 F. Supp. 2d

---

[24] The term "TRO R&R" refers to Magistrate Simonton's June 25, 2019 Report and Recommendation on Plaintiff's Application for a Temporary Restraining Order (ECF No. 79). This Court later affirmed Magistrate Simonton's Report and Recommendation (ECF No. 95 at 3).

1363, 1368–69 (S.D. Fla. 1999)).  Thus, this constitutes a common, class-wide question of fact and law.

Second, the *Howey* inquiry will focus on whether investors were investing in a "common enterprise." In the Eleventh Circuit, "a common enterprise exists where the 'fortunes of the investor are interwoven with and dependent upon the efforts and success of those seeking the investment of third parties." *SEC v. Unique Fin. Concepts, Inc.*, 196 F.3d at 1195, 1199 (11th Cir. 1999).  As this Court has recognized, here, "the fortunes of individual investors in the Centra Tech ICO were directly tied to the failure or success of the products the Defendants purported to develop," and "[a]n individual investor could exert no control over the success or failure of this investment."  TRO R&R at 10.  Plaintiffs have thus "established the existence of a common enterprise."  *Id.*  This is clearly another common, class-wide question of fact and law.

Finally, the third prong of the *Howey* test is satisfied when "the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise.'" *Bamert v. Pulte Home Corp*., 445 Fed. App'x 256, 262 (11th Cir. 2011).  Here, because the success of the CTR Tokens purchased by all Class members "was entirely depend on the efforts and actions of Defendants, the third prong is satisfied."  TRO R&R at 10; ECF 95.  Again, this is a common question of law and fact.

## 2. Plaintiffs are Entitled to a Presumption of Reliance Under *Ross v. Bank South, N.A.*

"To prevail on the merits in a Section 10(b) and Rule 10b-5 claim, Plaintiffs must prove: (1) a material misrepresentation or omission; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance on the misrepresentation or omission; (5) economic loss; and, (6) a causal connection between the material misrepresentation or omission and the loss, otherwise known as 'loss causation.'" *Thorpe*, 2016 U.S. Dist. LEXIS 33637, at *35–6  .  The "central inquiry in determining whether common issues predominate in a Section 10(b) and Rule 10b-5 claim predicated on public statements is whether the element of reliance will require individualized proof." *Id.*

While reliance is also an element of the Class' claims under Section 10(b) of the Exchange Act, the "fraud-created-the-market-doctrine" creates a presumption of reliance, where, as here, "the security at issue would have been unmarketable but for the alleged fraud." *See,*

27

*e.g., Katz v MRT Holdings, LLC*, 2008 U.S. Dist. LEXIS 114421, at *14–5 (S.D. Fla. Oct. 24, 2008) (*citing Ross v. Bank South, N.A*., 885 F.2d 723, 729 (11th Cir. 1989); *see also In re Volkswagen "Clean Diesel" Mktg*., 328 F. Supp. 3d 963, 971 (N.D. Cal. 2018).[25]   Here, the fraud was Centra Tech's scheme to unload patently worthless CTR Tokens by pretending that the Centra Debit Card functioned, Centra Tech had nonexistent relationships with Visa and Mastercard, Centra Tech had nonexistent licenses from state regulatory agencies, and that Centra was run by executives who did not exist.   Compl. ¶¶ 326–330.   Once this fraudulent scheme was made public by the announcement of the SEC Action and the Criminal Action, the price of CTR Tokens plummeted to almost zero, where it remains.[26]

As noted, a plaintiff need not *prove* the elements of her or his claim on class certification. "[P]roof is not a prerequisite to class certification.   Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class."   *Amgen*, 568 U.S. at 459 (emphasis in original).   Here, there is a clear predominance of common questions over individual issues because *all* elements of Plaintiffs' claims present questions that are susceptible to class-wide resolution.

### B.      A Class Action is Superior to Other Available Methods for the Fair and Efficient Adjudication of this Class Action

The second requirement for certification under Rule 23(b)(3) is that a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). Rule 23 provides four factors relevant to this inquiry:

> (1) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (2) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (4) the likely difficulties in managing the class action.

*Id*.

---

[25] Notably, there is no reliance element for Plaintiffs' Securities Act claims.

[26] *See*  https://coinmarketcap.com/currencies/centra/.

"The focus of the superiority analysis is on 'the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs.'" *Kron*, 328 F.R.D. at 702 (quoting *Sacred Heart Healthy Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1183–84 (11th Cir. 2010)).   Here, not only do common questions predominate, but class action treatment is also superior to other methods for the fair and efficient adjudication of this controversy.  Securities actions such as this easily satisfy the superiority requirement of Rule 23.  Most violations of the federal securities laws, such as those alleged in the Complaint, inflict economic injury on large numbers of geographically dispersed persons to such an extent that pursuing individual litigation is not feasible.  Under such circumstances, the alternatives to a class action are either no recourse for thousands of investors who cannot afford to prosecute their claims, or a multiplicity of individual suits resulting in the inefficient administration of justice.  Such "[s]eparate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts."  *Kennedy*, 710 F.2d at 718; *AmeriFirst*, 139 F.R.D. at 435; *Kreuzfeld*, 138 F.R.D. at 603.  This duplication of actions is the very "evil that Rule 23 was designed to prevent."  *Califano v. Yamasaki*, 442 U.S. 682, 690 (1979).

Accordingly, for the reasons discussed above, this action is appropriate for class certification, embodying, as it does, all the hallmarks of securities class actions traditionally certified in this Circuit and elsewhere.

## VI.    LEVI & KORSINSKY AND TAYLOR-COPELAND SHOULD BE APPOINTED CLASS COUNSEL

"Under Rule 23(g)(1), 'unless a statute provides otherwise, a court that certifies a class must appoint class counsel.'"  *Sanchez-Knutson v. Ford Motor Co.*, 310 F.R.D. 529, 542 (S.D. Fla. 2015) (citing FED. R. CIV. P. 23(g)(1)). "In appointing class counsel, the court: must consider (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."  *Ibrahim v. Acosta*, 326 F.R.D. 696, 702 (S.D. Fla. 2018) (quoting FED. R. CIV. P. 23(g)).

Plaintiffs have selected and retained Levi & Korsinsky and Taylor-Copeland Law as the proposed Class Counsel. Both firms have extensive experience in successfully prosecuting

complex financial class actions such as this Action, and are well-qualified to represent the class. *See* Enright Decl., Ex. 1 (firm resume of Levi & Korsinsky, LLP) and  Ex. 2 (firm resume of Taylor-Copeland Law).  *See also In re Ocean Power Techs., Inc.*, Civil Action No. 3:14-CV-3799, 2016 U.S. Dist. LEXIS 158222, at *22 (D.N.J. Nov. 15, 2016) ("Lead Counsel, Levi & Korsinsky, is highly specialized in the field of securities class action litigation, and . . . is therefore qualified to represent the Settlement Class."); *see also* Enright Decl., Ex. 3, Lex Machina's Second Annual Securities Litigation Report (naming Levi & Korsinsky as the Top Securities Firm for the period of January 2017 and June 30, 2018).   Furthermore, both firms have dedicated significant resources to investigating, substantiating, and pursuing the Class' claims.  Accordingly, Levi & Korsinsky and Taylor-Copeland Law satisfy the requirements of Rule 23(g) and should therefore be appointed Class Counsel.  *See Fresco v. Auto Data Direct, Inc.*, 03-61063-CIV-MARTINEZ-BANDSTRA, 2007 U.S. Dist. LEXIS 37863, at *7 (S.D. Fla. May 11, 2007) (appointing class counsel where counsel had "experience in class actions and complex litigation" and "demonstrated vigorous prosecution of the class claims throughout the litigation"); *Beltran v. Interchange, Inc.*, No. 14-cv-03074-CMA-CBS, 2018 U.S. Dist. LEXIS 23940, at *45 (D. Colo. Feb. 2, 2018) (appointing class counsel where counsel had "already put in a great deal of work into [the] action, [had] extensive experience in handling complex class action suits, [were] knowledgeable about relevant law, and [had] ample resources to vigorously advocate for Plaintiffs").

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court: (1) certify this action as a class action under Rules 23(a) and (b)(3); (2) appoint Plaintiffs as Class Representatives; and (3) appoint Levi & Korsinsky and Taylor-Copeland Law as Class Counsel.

## REQUEST FOR HEARING

Pursuant to L.R. 7.1(b), Plaintiffs request a hearing on their Renewed Motion for class certification.  Plaintiffs believe that oral argument on the Renewed Motion would assist the Court with addressing any novel issues concerning cryptocurrencies, blockchain technologies and/or "smart contracts" that may distract from the core legal questions at issue. Plaintiffs estimate that approximately one (1) hour would be necessary to hold a hearing on this Renewed Motion.

Dated: October 1, 2019

Respectfully submitted,

**KOMLOSSY LAW P.A.**

/s/ *Emily C. Komlossy*
Emily Komlossy (FBN 7714)
eck@komlossylaw.com
4700 Sheridan St., Suite J
Hollywood, FL 33021
Phone: (954) 842-2021
Fax: (954) 416-6223

*Attorneys for Plaintiffs*

**OF COUNSEL:**

**LEVI & KORSINSKY, LLP**
Eduard Korsinsky
30 Broad Street, 24th Floor
New York, New York 10004
Telephone: (212) 363-7500
Facsimile: (212) 636-7171

Donald J. Enright (*admitted pro hac vice*)
Elizabeth K. Tripodi
John A. Carriel (*admitted pro hac vice*)
**LEVI & KORSINSKY, LLP**
1101 30th Street, N.W., Suite 115
Washington, DC 20007
Telephone: (202) 524-4290
Fax: (202) 333-2121

James Taylor-Copeland (admitted *pro hac vice*)
**TAYLOR-COPELAND LAW**
james@taylorcopelandlaw.com
501 W. Broadway Suite 800
San Diego, CA 92101
(619) 400-4944

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed a true and correct copy of the foregoing document, along with its exhibits, with the Clerk of the Court using CM/ECF on October 1, 2019. I also certify that the foregoing document is being served this day on all counsel of record via CM/ECF to all counsel so registered, including counsel for Centra Tech, Inc.


/s/  *Emily C. Komlossy*