United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Jacob Zowie Thomas Rensel and others, Plaintiff,<br><br>v.<br><br>Centra Tech, Inc. and others, Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. 17-24500-Civ-Scola |

## Order Granting Plaintiffs' Motion for Default Judgment

Consistent with Federal Rule of Civil Procedure 55(b)(2), the Plaintiffs seek the Court's entry of a default judgment against Defendant Centra Tech, Inc. ("Centra Tech"). A Clerk's default was entered against Centra Tech on January 30, 2019. (ECF No. 169.) Centra Tech moved to set aside the Clerk's default on June 15, 2019 (ECF No. 214), but the Court denied Centra Tech's motion on September 12, 2019. (ECF No. 234.) The Plaintiffs motion is now properly before this Court.

## I. Background

In December of 2017, the Plaintiffs in this case filed a class action complaint against Defendant Centra Tech and a number of related individuals. Defendant Centra Tech, a company founded in May 2016, purported to sell cryptocurrency, "Centra Tech Tokens" or "CTR Tokens," in an initial coin offering ("ICO"). The ICO allegedly raised funds for, among other things, a debit card backed by Visa and Mastercard that would allow users to instantly use cryptocurrencies to make purchases. Between July 23, 2017 and April 20, 2018, Centra Tech's ICO raised more than $32 million from thousands of investors. The founders of Centra Tech, Defendants Sharma, Farkas, and Trapani are currently the subjects of an SEC enforcement action for securities fraud (*S.E.C. v. Sharma et al.,* No. 18-cv-2909-DLC (S.D.N.Y.)[1] and are being criminally prosecuted in the Southern District of New York for the fraudulent Centra Tech scheme. *United States v. Sharma et al.,* No. 18-cr-340-LGS (S.D.N.Y.).

This case was originally filed against nine defendants; some are co-conspirators in the criminal case, while others were only peripherally involved with the alleged sale of false securities. The Court granted motions to dismiss as

---

[1] The SEC action is currently stayed during the pendency of the criminal prosecution.

to a handful of Defendants and the Plaintiffs voluntarily dismissed the remaining individual Defendants. The only remaining Defendant is Centra Tech.

## II.    Legal Standard

Federal Rule of Civil Procedure 55(b)(2) authorizes a court to enter default judgment against a defendant who fails to plead or otherwise defend. Fed. R. Civ. P. 55(b)(2). A "defendant, by his default, admits the plaintiff's well-pleaded allegations of fact," as set forth in the operative complaint. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009). In issuing a default judgment, a court may award damages "without a hearing [if the] amount claimed is a liquidated sum or one capable of mathematical calculation," as long as "all essential evidence is already of record." *S.E.C. v. Smyth*, 420 F.3d 1225, 1231, 1232 n.13 (11th Cir. 2005) (quoting *Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985)).

## III.    Analysis

### A. Violation of Section 12(a)(1) of the Securities Act

Section 12(a)(1), 15 U.S.C. § 77l(a)(1), of the Securities Act creates a private right of action against any person who "offers or sells a security in violation of" Section 5, 15 U.S.C. § 77e, of the Securities Act. *See, e.g., Raiford v. Buslease, Inc.*, 825 F.2d 351, 353 (11th Cir.  1987). In order to establish liability under Section 12(a)(1), a Plaintiff must prove (1) the defendants sold or offered to sell securities; (2) no registration statement was in effect as to the securities; and (3) interstate transportation or communication and the mails were used in connection with the sale or offer of sale. *SEC v. Levin*, 849 F.3d 995, 1001 (11th Cir. 2017).

A transaction or an investment contract qualifies as a security if it is: (1) an investment of money; (2) in a common enterprise; (3) with a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others. *SEC v. R.G. Reynolds Enters.*, 952 F.2d 1125, 1130 (9th Cir. 1991) (*citing Hocking v. Dubois*, 885 F.2d 1449, 1455 (9th Cir. 1989) (*en banc*), *cert. denied*, 494 U.S. 1078 (1990)).

Here, each of these elements is present. First, Plaintiffs invested Bitcoin, Ethereum, and other digital currencies to purchase CTR Tokens. (ECF No. 97 at ¶¶ 3, 32-41, 316.) As this Court has already recognized, under established law, an investment of cryptocurrency constitutes an "investment of money." (ECF No. 79 at 9-10 (citing *SEC v. Friendly*, 49 F. Supp. 2d 1363, 1368-69 (S.D. Fla. 1999) (King, J.))).

Second, by purchasing CTR Tokens, Plaintiffs invested in a "common enterprise" with Defendant Centra Tech and its founders. In the Eleventh Circuit, "a common enterprise exists where the fortunes of the investor are interwoven with and dependent upon the efforts and success of those seeking the investment." *SEC v. Unique Fin. Concepts, Inc.*, 196 F.3d 1195, 1199 (11th Cir. 1999) (citation and quotations omitted). As this Court has recognized, "the fortunes of individual investors in the Centra Tech ICO were directly tied to the failure or success of the products the Defendants purported to develop," and "[a]n individual investor could exert no control over the success or failure of this investment." (ECF NO. 79 at 10.) Plaintiffs have thus established the existence of a common enterprise.

Third, the "reasonable expectation of profit" prong is satisfied when "the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise." *Bamert v. Pulte Home Corp.*, 445 Fed. App'x 256, 262 (11th Cir. 2011) (quoting *Williamson v. Tucker*, 645 F.2d 404, 418 (11th Cir. 1981)). Here, because the success of the CTR Tokens purchased by Plaintiffs was entirely dependent on the efforts and actions of the Defendant, the third prong is satisfied. Accordingly, the offering of CTR Tokens was an investment contract under the Securities Act, such that the Defendant sold or offered to sell securities by virtue of the Centra Tech ICO.

Additionally, no registration statement was ever filed with the SEC in connection with the Centra Tech ICO or CTR Tokens, ECF No. 97 at ¶ 82, nor has Centra Tech ever claimed that any such a registration was filed or in effect. Finally, Centra Tech utilized "an instrumentality of interstate commerce," by marketing and selling CTR Tokens on the internet, including through the Centra Tech Token Sale Home Page and the Centra Tech Smart Contracts. *Id.* at ¶ 315; ECF No. 79 at 11 (*citing SEC v. Levin*, No. 12-cv-21917, 2013 WL 594736, at *12 (S.D. Fla. Feb. 14, 2013) (King, J.) ("the Internet which necessarily includes email, is an 'instrumentality of interstate commerce.'")).

Based on the foregoing, Plaintiffs have established a sufficient basis for relief under Section 12(a)(1) and thus, the Court may proceed to determine the appropriate damages.

## B. Violation of Section 10(b) and SEC Rule 10b-5

Centra Tech is also liable under Section 10(b) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder. The elements of a securities fraud claim under Rule 10b are: "(1) that the defendant committed a deceptive or manipulative act, (2) in furtherance of the alleged scheme to defraud, (3) with scienter, and (4) reliance." *In re: Altisource Portfolio Sols., S.A. Sec. Litig.*, No. 14-

81156-CIV- WPD, 2015 WL 11988900, at *5 (S.D. Fla. Dec. 22, 2015) (citing *In re Alstom SA*, 406 F. Supp. 2d 433, 474 (S.D.N.Y. 2005)).

Here, Centra Tech made numerous material misrepresentations. (ECF No. 97 at ¶¶ 216-242.) It claimed that the Centra Tech Debit Card would be able to operate on Visa and Mastercard networks and allow users to make transactions in digital currencies in "real time." (*Id.* at ¶ 230.) However, Centra Tech was never authorized to use the Visa or Mastercard networks and the Centra Tech Debit Card never allowed users to make digital currency transactions in real time. Centra Tech also fabricated fictional executives who they claimed were working with Centra Tech, touted Centra Tech's nonexistent insurance policy, and made false claims regarding state licenses to increase investor confidence and solicit additional purchases of CTR Tokens. (*Id.* at ¶¶ 270-285; 286-291; 292-299.) Centra Tech made these statements to induce Plaintiffs and the general public to invest in more unregistered CTR Token securities and as part of a scheme to artificially inflate the value of the patently worthless unregistered CTR Token securities. (*Id.* at ¶¶ 336.)

Centra Tech made these material misrepresentations with the requisite scienter because the misrepresentations were either intentional or made with reckless disregard for accuracy for the purposes of (a) personal financial gain; (b) inflating market demand for CTR Tokens during the Centra ICO; and (c) securing additional financing to continue as a growing concern. (*Id.* at ¶ 322-325.) Centra Tech had actual knowledge that: (i) Centra Tech had not been authorized to use the Centra Card on the Visa or Mastercard networks; (ii) the Company was not in a "partnership" with Bancorp"; (iii) both Edwards and Robinson were fictional persons and Defendant Trapani had not attended UCLA; (iv) Centra Tech did not have insurance during the official Centra Tech ICO; (v) the Company lacked any state money transmitter licenses during the Centra Tech ICO; and (vi) the certain named Defendants were not Centra Tech's managing partners. (*Id.* at ¶ 323.) Indeed, on July 17, 2019, one of the Centra Tech founders, Defendant Trapani, pled guilty to the identical fraudulent scheme Plaintiffs' Exchange Act claims are premised on. *See U.S. v. Trapani*, S1-18-Cr-340 (LGS) (S.D.N.Y.), ECF No. 147.

Finally, the Plaintiffs relied upon Defendants' false statements in deciding to purchase CTR Tokens during the ICO or on cryptocurrency exchanges at artificially inflated prices. (ECF No. 97 at ¶ 340; ECF No. 260-2 at ¶ 5; ECF No. 260-3 at ¶ 3; ECF No. 212-7 at ¶¶ 14–16; ECF No. 212-8 at ¶¶ 14–16; ECF No. 260-4 at ¶ 4, ECF No. 260-5 at ¶ 5; ECF No. 260-6 at ¶ 3.)

Based on the foregoing, the Plaintiffs have established a sufficient basis for relief under Section 10(b) and Rule 10b-5 and thus, the Court may determine the appropriate amount of damages.

## C. Damages

In seeking a default judgment, the Plaintiffs bear the burden of proving damages. They may do so through affidavits and other documentary evidence showing the amount and calculation of damages. *Tara Prods. Inc. v. Hollywood Gadgets, Inc.*, 449 F. App'x 908, 911–12 (11th Cir. 2011). "Where all the essential evidence is on record, an evidentiary hearing on damages is not required." *Empire Today, LLC v. Monblatt*, No. 18-cv-61219, 2019 WL 1491701, at *2 (S.D. Fla. April 4, 2019) (Bloom, J.) (citations and quotations omitted). *See also SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) ("Rule 55(b)(2) speaks of evidentiary hearings in a permissive tone. We have held that no such hearing is required where all essential evidence is already of record.") (citations omitted).

"Damages under § 12(a)(2) are measured by the difference between (i) the amount of consideration the plaintiff originally paid for the security, plus prejudgment interest, less (ii) the amount for which the plaintiff sold the [security], together with any income the plaintiff received on the security."' *In re MetLife Demutualization Litig.*, 624 F. Supp. 2d 232, 271 (E.D.N.Y. 2009).

Because investors invested using BTC or ETH, the Securities Act requires that Plaintiffs' Section 12 damages be calculated in terms of BTC or ETH. In providing a damages remedy for those who have sold their original securities, the Securities Act sought to put these injured investors back to their original, pre-investment position, thus effectuating the "substantial equivalent of rescission." *Pinter v. Dahl*, 486 U.S. 622, 641, n.18 (1988) ("Section 12 was adapted from common- law (or equitable) rescission, ... which provided for restoration of the status quo by requiring the buyer to return what he received from the seller. The statute, however, differs significantly from the source material. In particular, it permits the buyer who has disposed of the security to sue for damages ... This damages calculation results in what is the substantial equivalent of rescission.")

Accordingly, the proper computation of Plaintiffs' damages is the value of the BTC or ETH consideration paid for CTR Tokens reduced by the amount realized through that sale of CTR Tokens on the date of sale, if any. *See, e.g., Kane v. Shearson Lehman Hutton, Inc.*, 916 F.2d 643, 646 (11th Cir. 1990) (equating the damages provision in Section 12 of the Securities Act to the damages provided by Fla. Stat. § 517.211 and stating that such rescissory relief entitles a purchaser to "rescind his purchase, or, if he has already sold at a loss, to be put by an award of damages in as good a position as if he had rescinded the transaction").

This method of computation is consistent with the proper method of computing Plaintiffs' damages under Section 10(b). Where, as here, the defendant acquires Plaintiffs' property through fraudulent conduct, "damages

are the amount of the defendant's profit." *Affiliated Ute Citizens of Utah v. U.S.*, 406 U.S. 128, 155 (1972); *see also Pidcock v. Sunnyland America, Inc.*, 854 F.2d 443, 446 (11th Cir. 1988) ("once it has been determined that a purchaser acquired property by fraud, any profit subsequently realized . . . should be deemed the proximate cause of the fraud."). Here, Centra Tech realized profits through the appreciation of the BTC and ETH it acquired from Plaintiffs through fraud. Plaintiffs are entitled to retain the benefit of that appreciation under both Section 12 of the Securities Act and Section 10(b) of the Exchange Act. *Scheck Investments, L.P. v. Kensington Management, Inc.*, No. 04-21160, 2009 WL 1916501, at *4 (S.D. Fla. July 2, 2009) (Moreno, J.) ("Disgorgement of ill-gotten gains or profits from one who sells securities in violation of federal securities law is an accepted remedy in our Circuit.").

### i. Plaintiff Rensel's Losses: $350.10

Plaintiff Rensel purchased 13,369 CTR Tokens in exchange for 23.4 ETH. When Rensel sold those CTR Tokens he received BTC worth less than 23.4 ETH. (ECF No. 260-2 at ¶ 6.) Specifically, he received 1.18964396 BTC, then worth 23.1228 ETH. (*Id.* ¶ 7–8.) Accordingly, Rensel's total losses as a result of investing in CTR Tokens is 1.177 ETH. (*Id.* ¶ 9.) The dollar value of Rensel's total losses as a result of investing in CTR Tokens is $350.10. (*Id.* ¶ 10.) Rensel is thus entitled to a judgment against Centra Tech in the amount of $350.10.

### ii. Plaintiff He's Losses: $2,672,864.54

Plaintiff He purchased 1,283,717 CTR Tokens in exchange for 203.0054 BTC and 511.35 ETH. (ECF No. 260-3 at ¶ 4.) When He sold those CTR Tokens, he received less than 66.7 BTC in exchange. (*Id.* at ¶ 5.) He's total losses as a result of his investment in CTR Tokens is 136.3069 BTC and 511.35 ETH. (*Id.* at ¶ 6.) The dollar value of that BTC and ETH on the dates of He's sales was $2,672,864.54. (*Id.* at ¶¶ 7-10.) He is thus entitled to a judgment against Centra Tech in the amount of $2,672,864.54.

### iii. Plaintiff Chi Hao Poon's Losses: $111,331.20

Plaintiff Poon purchased 68,000 CTR Tokens in exchange for 160 ETH. (ECF No. 97 at ¶ 40.) Accordingly, Plaintiff Poon's total losses from investing in CTR Tokens is 160 ETH. On December 14, 2017, the date the complaint and summons in this action were served upon Defendant Centra Tech, the average closing price of ETH was $695.82. (ECF No. 260-3 at 27.) Accordingly, the dollar value of Poon's total losses as a result of investing in CTR Tokens is $111,331.20. Poon is thus entitled to a judgment against Centra Tech in the amount of $111,331.20.

### iv. Plaintiff King Fung Poon's Losses: $69,582

Plaintiff King Fung Poon purchased 56,000 CTR Tokens in exchange for 100 ETH. (ECF No. 97 at ¶ 42.) Accordingly, Plaintiff King Fung Poon's total losses from investing in CTR Tokens are 100 ETH. On December 14, 2017, the date the complaint and summons in this action were served upon Defendant Centra Tech, the average closing price of ETH was $695.82. (ECF No. 260-3 at 27.) Accordingly, the dollar value of King Fung Poon's total losses as a result of investing in CTR Tokens is $69,582. King Fung Poon is thus entitled to a judgment against Centra Tech in the amount of $69,582.

### v. Plaintiff Lee's Losses: $20,874.60

Plaintiff Lee purchased 6,000 CTR Tokens in exchange for 30 ETH. (ECF No. 260-4 at ¶ 5.) Accordingly, Plaintiff Lee's total losses from investing in CTR Tokens are 30 ETH. (*Id.* ¶ 6.) On December 14, 2017, the date the complaint and summons in this action were served upon Defendant Centra Tech, the average closing price of ETH was $695.82. (*Id.* ¶ 7.) Accordingly, the dollar value of Lee's total losses as a result of investing in CTR Tokens is $20,874.60. (*Id.* ¶ 9.) Lee is thus entitled to a judgment against Centra Tech in the amount of $20,874.60.

### vi. Plaintiff Ganczarek's Losses: $28,265.30

Plaintiff Ganczarek purchased 8,204.99 CTR Tokens in exchange for 40 ETH and 0.026111 BTC. (ECF No. 260-5 at ¶ 5.) Accordingly, Plaintiff Ganczarek's total losses  from investing in CTR Tokens are 40 ETH and 0.026111 BTC. (*Id.* ¶ 7.) On December 14, 2017, the date the complaint and summons in this action were served upon Defendant Centra Tech, the average closing price of ETH was $695.82 and the average closing price of BTC was $16,564. (*Id.* ¶ 8.) Accordingly, the dollar value of Ganczarek's total losses as a result of investing in CTR Tokens is $28,265.30. (*Id.* ¶ 10.) Ganczarek is thus entitled to a judgment against Centra Tech in the amount of $28,265.30.

### vii. Plaintiff Warren's Losses: $33,648.90

Plaintiff Warren purchased 39,528 CTR Tokens in exchange for 1.75796768 BTC. (ECF No. 260-6 at ¶ 4.) Accordingly, Plaintiff Warren's total losses from investing in CTR Tokens are 1.75796768 BTC. (*Id.* ¶ 6.) On December 17, 2017, the date of his investment, and four days after the complaint and summons in this action were served upon Defendant Centra Tech, the average closing price of BTC was $19,140.80. (*Id.* ¶ 5.) Accordingly, the dollar value of Warren's total losses as a result of investing in CTR Tokens is $33,648.90. (*Id.* ¶

7.) Warren is thus entitled to a judgment against Centra Tech in the amount of $33,648.90.

## IV.  Conclusion

Based on the foregoing, the Court **grants** the Plaintiffs' Motion for Default Judgment against Centra Tech. (**ECF No. 260.**) The Court grants the following relief:

i.  Judgment is hereby entered in favor of Plaintiff Jacob Zowie Thomas Rensel and against Centra Tech in the amount of **$350.10** plus prejudgment interest at the rate set forth in Fla. Stat. § 55.03 beginning on July 23, 2017 and post-judgment interest at the statutory rate set forth in 28 U.S.C. §1961 until the judgment is satisfied.

ii.  Judgment is hereby entered in favor of Plaintiff Wang Yun He and against Centra Tech in the amount of **$2,672,864.54** plus prejudgment interest at the rate set forth in Fla. Stat. § 55.03 beginning on July 23, 2017 and post-judgment interest at the statutory rate set forth in 28 U.S.C. §1961 until the judgment is satisfied.

iii.  Judgment is hereby entered in favor of Plaintiff Chi Hao Poon and against Centra Tech in the amount of **$111,331.20** plus prejudgment interest at the rate set forth in Fla. Stat. § 55.03 beginning on July 23, 2017 and post-judgment interest at the statutory rate set forth in 28 U.S.C. §1961 until the judgment is satisfied.

iv.  Judgment is hereby entered in favor of Plaintiff King Fung Poon and against Centra Tech in the amount of **$69,582** plus prejudgment interest at the rate set forth in Fla. Stat. § 55.03 beginning on July 23, 2017 and post-judgment interest at the statutory rate set forth in 28 U.S.C. §1961 until the judgment is satisfied.

v.  Judgment is hereby entered in favor of Plaintiff Jae J. Lee and against Centra Tech in the amount of **$20,874.60** plus prejudgment interest at the rate set forth in Fla. Stat. § 55.03 beginning on July 23, 2017 and post-judgment interest at the statutory rate set forth in 28 U.S.C. §1961 until the judgment is satisfied.

vi.  Judgment is hereby entered in favor of Plaintiff Mateusz Ganczarek and against Centra Tech in the amount of **$28,265.30** plus prejudgment interest at the rate set forth in Fla. Stat. § 55.03 beginning on July 23, 2017 and post-judgment interest at the statutory rate set forth in 28 U.S.C. §1961 until the judgment is satisfied.

vii.    Judgment is hereby entered in favor of Plaintiff Rodney Warren and against Centra Tech in the amount of **$33,648.90** plus prejudgment interest at the rate set forth in Fla. Stat. § 55.03  beginning on July 23, 2017 and post-judgment interest at the statutory rate set forth in 28 U.S.C. §1961 until the judgment is satisfied.

The Plaintiffs' motions to strike (**ECF No. 223**), Centra Tech's motion to quash (**ECF No. 242**), Defendant Sharma's motion to quash (**ECF No. 243**), and Plaintiffs' motion to strike (**ECF No. 252**) are **denied** as moot. The case will remain open as the Plaintiffs motions for sanctions (ECF Nos. 222, 230, 232) are still under consideration by Magistrate Judge Becerra.

**Done and ordered**, in chambers, in Miami, Florida on December 13, 2019.

_____
Robert N. Scola, Jr.
United States District Judge