UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| JACOB ZOWIE THOMAS RENSEL, WANG YUN HE, CHI HAO POON, KING FUNG POON, JAE J. LEE, MATEUSZ GANCZAREK, and RODNEY WARREN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CENTRA TECH, INC.,<br><br>Defendant | C.A. No. 1:17-cv-24500-RNS/Becerra |

**DEFENDANT'S MOTION FOR RECONSIDERATION OF FINAL DEFAULT
JUDGEMENT: CALCULATION OF DAMAGES AND INCORPORATED
<u>MEMORANDOM OF LAW</u>**

Defendant, Centra Tech, Inc. ("Centra Tech"), by and through undersigned counsel, hereby files this Motion for Reconsideration of Default Judgment: Calculation of Damages and Memorandum of Law ("Motion"), and respectfully requests this Honorable Court enter an order 1) setting this matter for hearing so this Honorable Court may consider Defendant's calculation of damages; or 2) entering Final Judgment based on the damage calculations set forth herein and states in support thereof:

## BACKGROUND

On December 13, 2017, Co-Lead Plaintiff Rensel initiated this action by filing a complaint against Centra Tech alleging that the Centra Tech's Official Sale constituted an unlawful offer and sale of unregistered securities (in the form of Centra Tokens) in violation of federal securities laws thus entitling Rensel and the putative class to rescission of their investments and/or compensatory damages ("Initial Complaint") [ECF No. 1].

On February 2, 2018, Centra Tech filed a motion to compel arbitration or, in the alternative, to dismiss the Initial Complaint. [ECF No. 26].

On April 9, 2018, the Court appointed Rensel and He as Co-Lead Plaintiffs pursuant to the Private Securities Litigation Reform Act. [ECF No. 59].

On May 29, 2018, Co-Lead Plaintiffs filed a motion seeking leave to amend the Initial Complaint so that Plaintiffs could support their claims with factual allegations arising from information revealed in connection with government actions. [ECF No. 73].

On June 25, 2018, Magistrate Judge, Simonton issued the TRO R&R which determined that Plaintiff Rensel lacked standing as he had made a profit from selling his Centra Tokens, and thus, sustained no loss. [ECF No. 79]. On October 9, 2018, with the Court's leave, Plaintiffs filed their First Amended Complaint for Violation of the Federal Securities Laws. [ECF No. 97]. On December 10, 2018, the Court granted Centra Tech's counsel's motion to withdraw from representation. [ECF No. 127]. The Court's December 10, 2018 Order directed Centra Tech to retain new counsel on, or before, December 28, 2018. *Id*. On December 28, 2018, Sharma filed a motion for an extension of time for Centra Tech to obtain new counsel. [ECF No. 147]. On January 3, 2019, the Court granted Sharma's motion and ordered Centra Tech's new counsel to enter an appearance on or before January 17, 2019. [ECF No. 148].

On January 31, 2019, a Clerk's Default pursuant to Fed. R. Civ. P. 55(a) was entered against Defendant Centra Tech. [ECF No. 172].

On June 7, 2019, the Court issued an Order directing Plaintiffs to "move for Default Judgment against Centra Tech on June 20, 2019. In response to the Court's June 7 Order, on June 13, 2019, Plaintiffs filed their Motion for Class Certification [ECF No. 212] ("Motion for Class Certification") and, pursuant to Federal Rule of Civil Procedure 55(b), their motion for Default Judgement against Defendant Centra Tech [ECF No. 211] ("Motion for Default Judgment").

On September 17, 2019, this Honorable Court issued its Order denying Plaintiffs' Motion for Class Certification. [ECF No. 235]. Shortly thereafter, on September 20, this Honorable Court issued its Order denying Plaintiffs' Motion for Default Judgment as the Court had denied Plaintiffs' Motion for Class Certification and it sought entry of a judgment that provided class-wide damages and. [ECF No. 236]. Additionally, this Honorable Court ordered Plaintiffs to "file a renewed motion for default judgment that provides damages calculations specific to their individual claims" by October 11, 2019. *Id*.

On October 1, 2019, Plaintiffs filed their renewed and amended motion for class certification [ECF No. 239] ("Renewed Motion"). On October 2, 2019, Plaintiffs filed their motion for an extension of time to file their renewed motion for default judgment until such time that the Court ruled on their Renewed Motion. [ECF No. 240]. On October 3, 2019, this Honorable Court issued its Order granting Plaintiffs motion for an extension of time to file their renewed motion for default judgment and Ordered that the renewed motion would be "due two weeks after the Court's ruling on the Plaintiffs' motion for class certification." [ECF No. 241].

On November 20, 2019, this Honorable Court issued its Order denying Plaintiffs' Renewed Motion. [ECF No. 258]. On December 3, 2019 Plaintiff's filed an order for Final Default Judgement. [ECF No. 259].

On December 13, 2019 this Honorable Court granted Plaintiff's Motion Default Judgement. [ECF No. 263].

Defendant files this Motion for Reconsideration of Default Judgment based on the calculation of damages.

### MEMORANDUM OF LAW

I.  DISCUSSION

The entry of a default does not relinquish Centra Tech's right to contest whether 1) Plaintiffs' claims are well-pleaded; and 2) contesting Plaintiffs' alleged damages.

Rule 10(c) of the Federal Rules of Civil Procedure, provides in part: "A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes." A court's "…duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations." *Griffin Industries, Inc. v. Irvin,* 496 F.3d 1189, 1205-06 (11th Cir. 2007*).* "A default judgement, however, is a matter of discretion for the court, not a matter of right to the moving party," *World Atlantic Airlines v. Dynamic International Airways, LLC,* 2017 WL 3107193 at *2 (S.D. FL. Mar. 22, 2019). *See also, Pitts ex rel. Pitts v. Seneca Sports, Inc.,* 321 F Supp.2d 1353, 1356 (S.D. Ga. 2004).

Centra Tech acknowledges Judge Simonton's report and recommendation that this Honorable Court should adopt which sets forth: "the existence of recoverable damages is required to support a Section 12 claim. *In re Mutual Funds Inv. Litig.,* 384 F. Supp. 2d 845, 866 (D. Md. 2005). Section 12(a) provides for two alternative remedies: (1) rescission upon plaintiff's prompt tender of shares in exchange for the original purchase price, or (2) damages if a plaintiff has sold his shares. 15 U.S.C § 77/(a)(2) (2005); see also Eleventh Circuit Civil Pattern Jury Instructions § 6.6 (2013) ("To prove a claim under § 12(a)(1), [plaintiff] must prove each of the following facts by a preponderance of the evidence:….[a]nd fourth, you must find that [plaintiff] suffered damages"); *In re Broderbund,* 294 F.3d 1201, 1205 (9th Cir. 2002*)* (stating that "there can be no recovery [of damages under Section 12] unless the purchaser has suffered a loss, and dismissing Section 12 claims where the plaintiff sold his shares at a profit); *In re Mutual Funds Inv. Litig.,* 384 F. Supp. 2d. 845, 867 (D. Md. 2005*)* ("Because the existence of recoverable damages is an element of a Section 11 claim, a plaintiff must plead facts demonstrating that he suffered the particular type of injury contemplated by statue. Although the statutory language of Section 12(a)(2) is different, the effect is the same."[1] *See* [ECF No. 77]

Section 12(a) provides that any person who "offers or sells a security in violation of Section 5" may be sued "to recover the consideration paid for such security with interest thereon, less the

---

[1] "Although Section 12(a)(1) is sometimes referred to as a "strict liability" provision, this description refers primarily to the fact that a plaintiff is not required to prove scienter or negligence on the part of the defendant. *Lewis v. Walston & Co.,* 487 F.2d 617, 621 (5th Cir. 1973) ("Liability for the sale of unregistered securities is absolute under § 12(1) of the Securities Act of 1933. A purchaser may recover regardless of whether he can show any degree of fault, negligent or intentional, on the seller's part."). The fact that Section 12(a)(1) is a "strict liability" provision does not release plaintiffs from their obligation to plead and prove they have suffered a loss." *See,* ECF No. 77 at 9.

amount of income received thereon, upon the tender of such security, or for damages if he no longer owns the security. The term "consideration" means "the money or property given by the investor in exchange for the security." *Randall v. Loftsgaarden,* 478 U.S. 647,659-60 (1986). If the plaintiff still owns the security, he is entitled to a rescission, but not for damages; if he no longer owns the security, he is entitled to damages only. *Id.* at 655. For over twenty years, courts have held that a plaintiff fails to state a claim for damages under Section 12(a) of the Securities Act where the plaintiff has already sold the alleged security at issue for a profit. The rationale, as explained by the Ninth Circuit, is that "there can be no recovery unless the purchaser has suffered a loss." *In re Broderbund/Learning Co. Sec. Litig. v. Mattell, Inc*., 294 F.3d 1201, 1205 (9th Cir. 2001*)* (dismissing Section 12(a)(2) claim where plaintiff disposed of the security at issue for "an amount greater than the purchase price"). Federal district courts around the country have unanimously agreed. See *Siemers v. Wells Fargo & Co.*, No. C 05-04518 WHA, 2007 U.S. Dist. LEXIS 39091, at *13–15 (N.D. Cal. May 17, 2007) (dismissing Section 12(a)(2) claim where plaintiffs sold the relevant securities for a profit of 16% to 19%); *In re Mut. Funds Inv. Litig.*, 384 F. Supp. 2d 845, 866–67 (D. Md. 2005) (dismissing Section 12(a)(2) claim where plaintiffs sold the relevant securities for a profit); *PPM Am. v. Marriott Corp.*, 853 F. Supp. 860, 876 (D. Md. 1994*)* (dismissing Section 12(2) claim where plaintiffs sold the relevant securities for a profit).

    Since Section 10(b) does not contain provisions for damages, Section 12(b) is the best measurement of losses in this case in accordance with Section 28. "Although neither Section 10(b) of the Act nor Rule 10b–5 contains explicit provisions for determining damages, courts have applied the damages standard of Section 28 of the Securities Exchange Act of 1934, 15 U.S.C. Sec. 78bb(a), to Rule 10b–5 claims." *Ronald O. Pelletier v. Stuart-James Company, Inc.,* 863 F.2d 1550, (11th Cir. 1989), citing, *Feldman v. Pioneer Petroleum, Inc*., 813 F.2d 296, 301 (10th Cir.1987). Section 28(a) of the Securities Exchange Act of 1934, 15 U.S.C. Sec. 78bb(a), "limits recovery in any private damages action brought under the 1934 Act to 'actual damages.'"[2] *Blue Chip Stamps*, 421 U.S. at 734, 95 S.Ct. at 1925. See *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). In harmony with how losses are to be

---

[2] "15 U.S.C. Sec. 78bb(a) states in part: The rights and remedies provided by this chapter shall be in addition to any and all other rights and remedies that may exist at law or in equity; but no person permitted to maintain a suit for damages under the provisions of this chapter shall recover, through satisfaction of judgment in one or more actions, a total amount in excess of his actual damages on account of the act complained of." *Ronald O. Pelletier,* 863 F.2d at 1557 n. 11.

calculated in a security fraud case, Plaintiffs are entitled to judgment amount which they suffer actual damages, "In securities fraud cases, therefore, damages are determined in accordance with the extent to which a plaintiff is actually damaged as a result of the defendant's fraudulent conduct." See *Ronald O. Pelletier v. Stuart-James Company, Inc.,* 863 F.2d 1550, (11th Cir. 1989) citing *Harris v. Union Elec. Co.*, 787 F.2d 355 (8th Cir.1986). "Actual damages" has been interpreted to mean some form of economic loss and does not include punitive damages. See *Jones v. Miles*, 656 F.2d 103, 107 n. 8 (5th Cir. Unit B Aug. 1981). Generally, the appropriate measure of actual damages in a Rule 10b–5 case is out-of-pocket loss. See *Woods v. Barrett Bank of Ft. Lauderdale*, 765 F.2d 1004 (11th Cir.1985); *Alna Capital Ass'n v. Wagner*, 758 F.2d 562 (11th Cir.1985); *Hackbart v. Holmes*, 675 F.2d 1114 (10th Cir.1983).

Here, Plaintiffs are attempting to obtain fully speculative damages, ones that actually contradict their own position[3], which ask for amounts that would have amounted to a value of BTC and ETH at almost all-time highs, and ones that would give them a monetary loss in U.S. Dollar value if they had those same positions sold at that very moment. "The measure of damages in a Rule 10b–5 case is limited to actual pecuniary loss suffered by the defrauded party, and does not include any speculative loss of profits," See *Ronald O. Pelletier v. Stuart-James Company, Inc.,* 863 F.2d 1550, (11th Cir. 1989) citing, "*Wolf v. Frank*, 477 F.2d 467, 478 (5th Cir.), cert. denied, 414 U.S. 975, 94 S.Ct. 287, 38 L.Ed.2d 218 (1973); see *also Harris v. American Inv. Co.*, 523 F.2d 220 (8th Cir.1975), cert. denied, 423 U.S. 1054, 96 S.Ct. 784, 46 L.Ed.2d 643 (1976). The damages here are actually computable in a very standard fashion, one that would be "substantial equivalent of rescission" to which he is entitled, See *Pinter v. Dahl,* 486 U.S. 622, 641, n.18 (1988), that would be monetary damages based on the U.S. Dollar value they had paid in at the time of their transactions or, in the alternative, damages measured in U.S. Dollar value at the time of their purchases, and recession for those who did not sell.

**II.  ARGUMENT**

**A.  PLAINTIFFS' CALCULATION OF DAMAGES IS FLAWED**

Plaintiffs, in their Motion for Final Default Judgement, submitted loss calculations that were flawed. When Plaintiffs computed the damages, they did not state the U.S. Dollar value of their

---

[3] Plaintiffs Rensel, He, Lee, Ganczarek, and Warren have stated in their almost identical "templated" affidavits that they had no intentions of, "…to convert that BTC or ETH to U.S. Dollars or any other fiat currency." *See,* ECF No. 260, Exhibits A – E, Points 4, 5, and/or 6.

purchases. However, in every other calculation, they have used U.S. Dollar calculations as it warranted a much higher monetary amount, instead of informing this Honorable court on how much Plaintiffs actually paid which would have provided this Honorable Court a full picture of the losses. Thus, the Plaintiffs, having not providing this Court an accurate view of the matters as Centra Tech has provided in the attached Defense Exhibits A-H. Centra Tech has provided a full picture of the transactions and calculated the accurate amounts. Due to the massive differences from what Plaintiffs' have stated, a hearing is warranted to address these issues. "[a] final default judgment is not possible against a party in default until the measure of recovery has been ascertained," which "typically requires a hearing, in which the defaulting party may participate." See *World Atlantic Airlines*, 2017 WL 3107193 at \*3.

Like other financial instruments and commodities, many virtual currencies, like BTC and ETH, as well as digital utility tokens, such as CTR, are broadly traded in substantial volume after their sales on public, online secondary markets known as "digital asset exchanges." Plaintiffs Rensel and He are two purchasers who sold their CTR Tokens on these "digital asset exchanges," specifically on Binance.com. *See,* ECF 260, Exhibits A and B. Plaintiff's Poon, Poon, Lee, Ganczarek, and Warren have not sold any of their CTR tokens since receiving them. *See,* ECF 260, Exhibits C, D, and E. Additionally, Plaintiffs Rensel, He, and Ganczarek made other purchases on secondary "digital asset exchanges" where the seller is unknown. Plaintiff Warren had never given any form of consideration or payment to Centra Tech, and his purchase of CTR Tokens were made on a secondary market "digital asset exchange" where the seller is unknown.

Centra Tech, through calculations consistent with this Court and Section 12(a), has determined that the amounts due in this matter for all Plaintiffs is **$49,335.29** and a recession of **430 Ether** and **1.834 Bitcoin**. In alternative, if this court determines that a recession is not appropriate, due to the decline in monetary value of the virtual currencies upon recession, specifically the 430 ETH and 1.834 BTC, the monetary damages measured in U.S. Dollars would be an additional **$133,860.46**. This would be a total final default judgement of **$183,195.75**, contrary to what the Plaintiffs are seeking under Section 12(a) and Section (10b).

Plaintiffs whom sold CTR Tokens, specifically Plaintiffs Rensel and He, are entitled to only monetary damages measured in U.S. Dollars as previously ruled in this case,[4] pursuant to Section

---

[4] Judge Simonton cited in her Report & Recommendation that, "Plaintiff has cited SEC v. Shavers for the proposition that Bitcoin, and by extension other cryptocurrencies, have already been

12, because they no longer hold the alleged security. Plaintiffs who did not sell CTR Tokens, specifically Plaintiff's Poon, Poon, Lee, Ganczarek, and Warren are entitled to a rescission, but not damages.[5]

Plaintiffs are asserting that Centra Tech, "realized tremendous profits through the appreciation of the BTC and ETH it acquired from Plaintiffs through fraud," *See*, ECF 260 at 17. This argument is flawed. Centra Tech offered three core products during the Centra Tech official sale; Centra Tokens ("CTR Tokens"), Centra Cards, and Centra Wallet. The CTR Tokens were immediately received by all Plaintiffs upon completion of their purchases and the Centra Wallets were delivered and/or made available to purchasers. Centra Cards operating on the MasterCard network were shipped globally, including to Plaintiffs Poon and Poon, whom actually used their Centra Cards to make purchases as exactly advertised, contrary to what is claimed. These facts **cannot be disputed**.

Plaintiffs also allege in their claim for relief under Section 10(b) that, "Plaintiffs are entitled to retain the benefit of that appreciation under both Section 12 of the Securities Act and Section 10(b) of the Exchange Act." *See*, ECF 260 at 13. Centra Tech has never realized any of these "profits" claimed by the Plaintiffs as these purchases made through the Centra Tech Official Sale. The United States Government has seized in total of 91,000 and 9,000 (100,000 total) units of Ether valued today at approximately **$14,932,937.00** which is in excess of what the Plaintiffs are

---

determined to be money. Case No. 4:13-cv416, 2013 WL 4028182 (E.D. Tex. 2013); see ECF No. [64] at p. 8-9. However, the court therein did not address the calculation of loss, but rather concluded only that Bitcoin is a form of money such that the plaintiff's investment of Bitcoin met the definition of an investment contract and was a security subject to the Securities Acts of 1933 and 1934. Id. at *2. The Defendants have not disputed the characterization of Centra Tokens as securities at this stage of the instant proceedings, although they intend to make such a challenge in the future. ECF No. [26] at 2, n.1 ("Centra Tech's unwavering position— which it will present at an appropriate time in these proceedings, if necessary—has been and remains that because of CTR's significant utility and lack of other similarities to an investment contract, it is not a security under the test articulated by the United States Supreme Court in SEC v. W.J. Howey Co., 328 U.S. 293 (1946)."), See ECF- 77 Page 14.

[5] 15 U.S.C. 77l ("…or for damages if he no longer owns the security"); In re AOL Time Warner, Inc. Sec. & "ERISA" Litig., 381 F. Supp. 2d 192, 246–47 (S.D.N.Y. 2004) ("A plaintiff asserting a claim under Section 12(a)(2) is entitled to two forms of relief: (1) damages or (2) rescission . . . If the plaintiff still owns the security, he is entitled to rescission, but not damages; if he no longer owns the security, damages, not rescission, are the appropriate remedy.")

claiming they have losses to. In fact, Centra Tech founders have already filed a motion within their own respective case a "Motion to Return Ether" to give back the Ether units to court-approved purchasers.[6] This also includes funds that Plaintiffs provided to Centra Tech in Ether and in Bitcoin that were converted to Ether.

Indeed, virtual currencies, such as BTC and ETH, are highly volatile and are not regulated products such as stocks or securities. Virtual currencies are based on open-source technology and have extreme price fluctuations with no underlying backing such as a company or commodity. As such, at the time of the Plaintiffs' purchases until now, these virtual currencies have fluctuated several hundreds of percentiles measured in profits and losses. To calculate any hypothetical scenarios based on the Plaintiffs' Motion for Default Judgement is nonsensical. The Plaintiffs have already asserted in their Affidavits they had no intention of selling their Bitcoin or Ethereum yet, they are seeking to achieve monetary damages based on speculative values **if** they had sold Bitcoin and Ethereum at their nearly all-time highs in December of 2017. Therefore, even **if** Plaintiffs' had not sold their Bitcoin or Ethereum, as they have declared in their affidavits, the value they would have had retained today is substantially less than what Centra Tech has calculated in accordance to Section 12(b).

1. **PLAINTIFF RENSEL IS ENTITLED TO NO MONETARY JUDGEMENT AS HE MADE A PROFIT OF OVER 100%.**

Originally, Plaintiff Rensel was dismissed by Judge Simonton, *See,* ECF No. 77 at 11, due to a lack of standing by earning a profit on his sales of CTR Tokens. Plaintiff Rensel sold all of his CTR Tokens on the "digital asset exchange" Binance.com for **$6,996.94**. Plaintiff Rensel had acquired his CTR tokens from the Centra Tech Official Sale and from unknown sellers on Etherdelta, a digital asset exchange, for a total of **$2,327.93**. These figures are based on the U.S. Dollar value of his purchase of CTR tokens, with units of Ether, at the exact time and date of the transaction and the U.S. Dollar value of his sales of CTR tokens, for units of Bitcoin, at the exact time and date of transaction. *See, Def. Exhibit B*. Since Plaintiff Rensel made a profit of **$4,659.43**, which equates to over a **100% gain,** Rensel is not entitled to any relief of damages under Section 12(a) and Section 10(a).

---

[6] See United States v. Sharma et. al., 1:18-CR-00340, *See* ECF 193.

## 2. PLAINTIFF HE IS ENTITLED TO A MONETARY JUDGEMENT OF $49,335.30.

Plaintiff He sold all of his CTR Tokens on the secondary market "digital asset exchange" Binance.com for **$1,032,332.89**. Plaintiff He had acquired his CTR tokens from the Centra Tech Official Sale and from unknown sellers on Binance.com, a digital asset exchange, for **$1,080,716.72**. These figures are based on the U.S. Dollar value of his purchase of CTR tokens with units of Ether and Bitcoin at the exact time and date of the transaction and the U.S. Dollar value of his sales of CTR tokens for units of Bitcoin at the exact time and date of transaction as well as transaction fees in BNB, another virtual currency, and CTR Tokens, in U.S Dollar amount at the time these fees were paid. *See, Def. Exhibit C*. Assuming arguendo that Plaintiff He is entitled to a default judgement against Centra Tech, He has sustained a monetary loss of **$49,335.30** and is entitled only to a judgement in this amount under Section 12(a) and Section 10(a).

## 3. PLAINTIFF CHI HAO POON IS ENTITLED TO A RECISSION OF 160 ETHER, OR, IN THE ALTERNATIVE, $45,604.20 BY RETURNING 68,000 CTR TOKENS.

Plaintiff Chi Hao Poon purchased 68,000 CTR Tokens with 160 Ether from the Centra Tech Official Sale. The U.S. Dollar value was **$45,604.20** at the time the purchase was made. Plaintiff Chi Hao Poon has not submitted an affidavit like the other Plaintiffs in this case. *See,* ECF No. 260. Centra Tech believes that Plaintiff Chi Hao Poon did not submit an affidavit because Plaintiff's counsel has created a generic "template" affidavit which would of exposed Plaintiff Poon to perjury as Plaintiff Poon had received a Centra Card that operated on the MasterCard network where he used the card to make purchases in stores that accepted MasterCard globally which enabled Poon to spend his cryptocurrencies. Assuming arguendo that Plaintiff Poon is entitled to a default judgement against Centra Tech, Plaintiff Poon is entitled to a recession of his purchase.

However, since the U.S. Dollar value of Ether today is $149,[7] if Plaintiff Poon were to receive a recession, he would be at a monetary loss of **$21,764.20,** which is what Plaintiff's counsel will subsequently argue. Therefore, in the alternative, if this Honorable Court does not agree that

---

[7] See https://coinmarketcap.com/currencies/ethereum based on the price of Ether on December 5, 2019.

recession is appropriate here, and in order to meet the "substantial equivalent of rescission" to which he is entitled, See *Pinter v. Dahl,* 486 U.S. 622, 641, n.18 (1988), Plaintiff Chi Hao Poon is entitled to a monetary judgement of **$45,604.20** under Section 12(a) and Section 10(a) in return of his 68,000 CTR Tokens. *See Def. Exhibit D.*

### 4. PLAINTIFF KING FUNG POON IS ENTITLED TO A RECISSION OF 100 ETHER, OR, IN THE ALTNERATIVE, $33,006 BY RETURNING 56,000 CTR TOKENS.

Plaintiff King Fung Poon purchased 56,000 CTR Tokens with 160 Ether from the Centra Tech Official Sale. The U.S. Dollar value was **$33,006.00** at the time the purchase was made. Plaintiff King Fung Poon has not submitted an affidavit like the other Plaintiffs in this case. *See,* ECF No. 260. Centra Tech believes that Plaintiff King Fung Poon did not submit an affidavit because Plaintiff's counsel had created a generic "template" affidavit which would of exposed Plaintiff King Fun Poon to perjury as Plaintiff Poon had received a Centra Card that operated on the MasterCard network and had actually used the card to make purchases in stores that accepted MasterCard globally which enabled Poon to spend his cryptocurrencies. Assuming arguendo that Plaintiff King Fung Poon is entitled to a default judgement against the Defendant, Plaintiff King Fung Poon is entitled only to a recession of his purchase.

However, since the U.S. Dollar value of Ether today is $149, if Plaintiff King Fun Poon were to receive a recession, he would be at a monetary loss of **$18,106.00** which is what Plaintiff's counsel will subsequently argue. Therefore, in the alternative, if this Honorable Court does not agree that recession is appropriate, and in order to meet the "substantial equivalent of rescission" to which he is entitled, See *Pinter,* 486 U.S. at 641, n.18, Plaintiff King Fung Poon is entitled to a monetary judgement of **$33,006.00** under Section 12(a) and Section 10(b) in return of his 56,000 CTR Tokens. *See Def. Exhibit E.*

### 5. PLAINTIFF LEE IS ENTITLED TO A RECISSION OF 30 ETHER, OR, IN THE ALTNERATIVE, $8,843 BY RETURNING 6,000 CTR TOKENS.

Plaintiff Lee purchased 6,000 CTR Tokens with 30 Ether from the Centra Tech Official Sale. The U.S. Dollar value was **$8,843.00** at the time the purchase was made. Plaintiff Lee is entitled to a default judgement against the Defendant in the form of a recession of his purchase.

However, since the U.S. Dollar value of Ether today is $149, if Plaintiff Lee were to receive a recession, he would be in a monetary loss of **$4,373.00** which is what Plaintiff's counsel will subsequently argue. Therefore, if this Honorable Court does not agree that recession is appropriate, and in order to meet the "substantial equivalent of rescission" to which he is entitled, See *Pinter,* 486 U.S. at 641, n.18, Plaintiff Lee is entitled to a monetary judgement of only **$8,843.00** under Section 12(a) and Section 10(a) in return of his 6,000 CTR Tokens. *See Def. Exhibit F*.

6. **PLAINTIFF GANCZAREK IS ENTITLED TO A RECISSION OF 40 ETHER AND 0.0262 BTC, OR, IN THE ALTERNATIVE, $11,416.35, BY RETURNING 8,204.99 CTR TOKENS.**

Plaintiff Ganczarek purchased 8,204.99 CTR Tokens with 40 Ether from the Centra Tech Official Token Sale and 0.0262 BTC from an unknown seller from Cryptopia, a digital asset exchange. The U.S. Dollar value was **$11,266.10** made with the Ether and no more than **$150.25**[8] made with Bitcoin totaling **$11,416.35** at the time the purchase was made. Assuming arguendo that Plaintiff Ganczarek is entitled to a default judgement against the Defendant, Plaintiff Ganczarek is entitled to a recession of his purchase.

However, since the U.S. Dollar value of Ether and Bitcoin today is $149 and $7,347, if Plaintiff Ganczarek were to receive a recession, he would be at a monetary loss of **$5,263.85,** which is what Plaintiff's counsel will subsequently argue. Therefore, in the alternative, if this Honorable Court does not agree that recession is appropriate, even though recession would restore the exact position the Plaintiff would be in if he did not purchase CTR Tokens, in order to meet the "substantial equivalent of rescission" to which he is entitled, See *Pinter,* 486 U.S. at 641, n.18, Ganczarek is entitled to a monetary judgement of only **$11,416.35** under Section 12(a) and Section 10(a) return of his 68,000 CTR Tokens. *See Def. Exhibit G.*

7. **PLAINTIFF WARREN IS ENTITLED TO A RECISSION OF 1.75797 BTC, OR, IN THE ALTERNATIVE, $35,010.9 BY RETURNING 39,528 CTR TOKENS.**

---

[8] Since Plaintiff Ganczarek did not include his trading records from the "digital asset exchange" Cryptopia, the way Centra Tech calculated the value was taking the highest possible value of Bitcoin on the date of the transaction and giving the Plaintiff the benefit of the doubt that he executed the trade at the highest value to ensure no dispute can be made on the amount.

In total, Plaintiff Warren, purchased 39,528 CTR Tokens with 1.75797 BTC. Plaintiff Warren also paid 0.07984656 in transaction fees. The U.S. Dollar value was **$35,010.91** at the time the purchase was made. Plaintiff's counsel has erroneously calculated Plaintiff Warren's loss amount, and it's Centra Tech's position that Plaintiff Warren's loss amount is greater than what Plaintiff's counsel has asserted. Assuming arguendo that Plaintiff Warren is entitled to a default judgement against the Defendant, Plaintiff Warren is entitled to a recession of his purchase.

However, since the U.S. Dollar value of Bitcoin today is $7,347, if Plaintiff Warren were to receive a recession, he would be at a monetary loss of **$21,508.48,** which is what Plaintiff's counsel will subsequently argue**.** Therefore, in the alternative, if this Honorable Court does not agree that recession is appropriate, even though recession would restore him to the exact position the Plaintiff would be in if he did not purchase CTR Tokens, in order to meet the "substantial equivalent of rescission" to which he is entitled, *Pinter,* 486 U.S. at 641, n.18, Warren is entitled to a monetary judgement of **$35,010.91** under Section 12(a) and Section 10(a) in return of his 39,528 CTR Tokens. *See Def. Exhibit H.*

## CONCLUSION

WHEREFORE, Centra Tech, based upon the foregoing reasons, respectfully requests this Honorable Court enter an order 1) setting this matter for hearing so the Court can consider Defendant's calculation of damages; or 2) entering final judgment based on the damage calculations set forth.

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed this 13th day of December 2019 with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served via transmission of Notices of Electronic Filing generated by CM//ECF or some other authorized manner for those counsel and/or parties in interest who are not authorized to receive electronically Notices of Electronic Filing.

      /s/ Frank E. Gil

      _____

      Frank E. Gil

## **SERVICE LIST**

**KOMLOSSY LAW P.A**.
Emily Cornelia Komlossy
Florida Bar No.: 7714
eck@komlossylaw.com
4700 Sheridan Street,
Suite J Hollywood, FL
33021
Telephone: (954) 842-2021
Facsimile: (954) 416-6223
Counsel for Plaintiffs

**LEVIN & KORSINSKY, LLP**
Donald J. Enright
Admitted *pro hac vice*
1101 30th Street, N.W., Suite 115
Washington, DC 20007
Telephone: (202) 524-4290

James Taylor- Copeland (admitted *pro hac vice*)
**TAYLOR-COPELAND LAW**
james@taylorcopelandlaw.com
501 W. Broadway Suite 800
San Diego, CA 92101
(619) 400-4944