United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Jacob Zowie Thomas Rensel and others, Plaintiffs, <br><br> v. <br><br> Centra Tech, Inc., Defendant. | ) <br> ) <br> ) <br> ) Civil Action No. 17-24500-Civ-Scola <br> ) <br> ) <br> ) |

**Order Granting the Plaintiffs' Renewed Motion for Class Certification**

In this putative class action, the Plaintiffs allege that Centra Tech, Inc. ("Centra Tech) violated securities laws through its fraudulent and unlawful sale of cryptocurrencies. (*See generally* Am. Compl., ECF No. 97.) The Court initially denied the Plaintiffs' motion for class certification as untimely and for failure to satisfy the ascertainability requirement by not offering sufficient proof of administrative feasibility. (Order, ECF No. 235.) The Court also denied the Plaintiffs' renewed motion for class certification. (Order, ECF No. 258.)

The Plaintiffs appealed this Court's order denying class certification. The Eleventh Circuit vacated this Court's order denying the Plaintiffs' initial motion for class certification and remanded for further proceedings. On remand, the Plaintiffs requested to proceed on their renewed motion for class certification (Renewed Mot. for Class Cert., ECF No. 239.) The Court held a hearing on the renewed motion on September 8, 2021. The Court has carefully considered the Eleventh Circuit's mandate, the parties' written submissions, the record, and the applicable law. For the reasons stated below, the Court **grants** Plaintiffs' renewed motion for class certification. (**ECF No. 239.**)

**1. Facts**

**A. Centra Tech and the Initial Coin Offering**

This litigation arises from Centra Tech, Inc.'s ("Centra Tech) alleged fraudulent and unlawful sale of cryptocurrencies. (*See generally* Am. Compl., ECF No. 97.) Plaintiffs Jacob Zowie Thomas Rensel, Wang Yun He, Chi Hao Poon, King Fung Poon, Jae J. Lee, and Mateusz Ganczarek are current and former owners of Centra Tech Tokens ("CTR Tokens") purchased during Centra Tech's initial coin offering ("ICO") from July 23, 2017 through October 5, 2017. (Am. Compl., ECF No. 97 at ¶¶ 1–3.)

Defendant Centra Tech is a company founded in May 2016 that purported to sell cryptocurrency. (*Id.* at ¶ 97.) Centra Tech marketed the use of the Centra Wallet or a Centra Card, forms of payment that would allow users to

pay for everyday purchases with cryptocurrencies. (*Id.* at ¶¶ 5, 6, 68.) Centra Tech falsely represented that the Centra Cards were purportedly backed up MasterCard and Visa. (*Id.* at ¶ 9.)

To raise funds to develop the marketed products, Centra Tech held an initial coin offering ("ICO") between July 23, 2017 and April 20, 2018. (*Id.* at ¶ 3.) The ICO involved the sale of "Centra Tech Tokens" or "CTR Tokens." Each token entitled the holder to certain rights related to Centra Tech, including a .08% of the "rewards of the network profit generated inside of the terms and conditions of the token." (*Id.* at ¶ 45.) Thus, although not marketed as a security, the CTR Tokens were securities similar to the stock sold at an initial public offering. (*Id.* at ¶¶ 59, 141, 161.) To entice investors, Centra Tech enlisted the promotional services of two well-known celebrities, Floyd Mayweather, Jr. and DJ Khaled. (*Id.* at ¶¶ 67, 68.) Centra Tech also began an online promotional campaign involving regular blog posts touting the benefits of CTR Tokens. (*Id.* at ¶¶ 90, 106.) As a result of those marketing efforts, thousands of investors, including the Plaintiffs, participated in the ICO. Centra Tech raised $32 million as a result of the ICO.

Centra Tech made several misrepresentations to investors in promoting the ICO. It claimed that the Centra Tech Debit Card would be able to operate on Visa and Mastercard networks and allow users to make transactions in digital currencies in "real time." (*Id.* at ¶ 230.) However, Centra Tech was never authorized to use the Visa or Mastercard networks and the Centra Tech Debit Card never allowed users to make digital currency transactions in real time. Centra Tech also fabricated fictional executives who they claimed were working with Centra Tech, touted Centra Tech's nonexistent insurance policy, and made false claims regarding its insurance and state licenses to increase investor confidence and solicit additional purchases of CTR Tokens. (*Id.* at ¶¶ 270-285; 286-291; 292-299.) Centra Tech made these statements to induce Plaintiffs and the general public to invest in more unregistered CTR Token securities and as part of a scheme to artificially inflate the value of the patently worthless unregistered CTR Token securities. (*Id.* at ¶¶ 336.)

As a result of these misrepresentations, the founders of Centra Tech, Defendants Sharma, Farkas, and Trapani, are currently the subjects of an SEC enforcement action for securities fraud (*S.E.C. v. Sharma et al.,* No. 18-cv-2909-DLC (S.D.N.Y.) and are being criminally prosecuted in the Southern District of New York for the fraudulent Centra Tech scheme (*United States v. Sharma et al.,* No. 18-cr-340-LGS (S.D.N.Y.)).[1]

---

[1] Sohrab Sharma was sentenced to eight years in prison "in connection with his leading role in a scheme to induce victims to invest more than $25 million worth of digital funds in Centra

### B. Plaintiffs' Purchases of CTR Tokens

From July 23, 2017 through October 5, 2017, the Plaintiffs all purchased CTR Tokens through respective Centra smart contracts. (Am. Compl., ECF No. 97 at ¶ 73.) A smart contract is a "a system running on a 'blockchain' that enables transactions to automatically execute according to pre-specified rules. (*Id.* at ¶ 73.) Because smart contracts run on block chains, the execution of smart contracts and related transactions are recorded in the public ledgers that blockchains create. (*Id.*)

Centra Tech maintains business records of transactions to purchase CTR Tokens. These records contain information provided by investors to Centra Tech via Google Forms. (ECF Nos. 239-9, 239-10.) Investors who purchased CTR Tokens were asked to provide their names, contact information, digital wallet address, and emails. (*Id.*) Centra Tech also provided a spread sheet to the SEC containing the identities of all the investors in CTR Tokens and other Centra Tech products.[2]

On July 30, 2017, Co-Lead Plaintiff Jacob Zowie Thomas Rensel used 16 Ether to purchase 8,050 CTR Tokens. (*Id.* at ¶ 34.) On October 27, 2017, Rensel exchanged his CTR Tokens for 0.7096997 of Bitcoin, which at the time was valued at 13.723 Ether. (*Id.*) Rensel claims that because he bought CTR Tokens at 16.1 Ether and exchanged them for Bitcoin worth 13.723 Ether, he has suffered a loss in the amount of 2.38 Ether. (*Id.*)

Between September 21, 2017 and September 24, 2017, Co-lead Plaintiff Wang Yun He expended 511.35 Ether to purchase 102,269.4 CTR Tokens. (*Id.* at ¶ 38.) Yun He exchanged 150 Bitcoin to purchase 600,000 CTR Tokens between September 26, 2017 and October 1, 2017. (*Id.*) In total, Yun He purchased a total of 702,269.42079 CTR Tokens. (*Id.*) On December 16 and 17, 2017, Yun He sold all his CTR Tokens for 30.355 Bitcoin. (*Id.*) Yun He claims that this sale reflects a loss of 119.645 Bitcoin and 511.35 Ether.

On August 25, 2017, Plaintiff Chi Hao Poon expended 100 Ether to purchase 56,000 CTR Tokens. (*Id.* at ¶ 40.) Poon still holds the CTR Tokens purchased during the ICO. (*Id.*), Poon's 56,000 CTR Tokens are worth 0.00 Ether, representing a loss of 100 Ether.

---

Tech, Inc. . . . .Sharma pled guilty to conspiring to commit securities fraud, wire fraud, and mail fraud." https://www.justice.gov/usao-sdny/pr/leading-co-founder-cryptocurrency-company-sentenced-8-years-prison-ico-fraud-scheme. (Last visited on September 9, 2021). Robert Farkas was sentenced to one year and one day in prison in connection with his role in the Centra Tech scheme. https://www.justice.gov/usao-sdny/pr/co-founder-cryptocurrency-company-who-defrauded-ico-investors-sentenced-prison. (Last visited on September 9, 2021).
[2] At the oral argument on September 8, 2021, counsel for the Plaintiffs represented that a copy of this spreadsheet had been obtained through third-party discovery.

Plaintiff King Fung Poon used 100 Ether to purchase 56,000 CTR Tokens on August 25, 2017 and still holds the CTR Tokens he purchased on that date. (*Id.* at ¶ 42.) Since October 2018, the CTR Tokens decreased in value to 0.00 Ether, representing a loss of 100 Ether. (*Id.* at ¶ 43.)

Plaintiff Jae J. Lee used 30 Ether to purchase 6,000 CTR Tokens on September 12, 2017. (*Id.* at ¶ 44.) Lee's tokens are worth 0.00 Ether and indicate a loss of 30 Ether. (*Id.* at ¶ 45.)

Plaintiff Mateusz Ganczarek expended 40 Ether for 16, 2017 CTR Tokens on September 16 and 17, 2017. (*Id.* at ¶ 46.) Ganczarek purchased his tokens through a smart contract and still holds the original tokens he purchased during the ICO. (*Id.*)

### 2. Procedural Background

In the amended complaint, the Plaintiffs alleged violations of securities laws against Centra Tech, its principals, and promoters. The Plaintiffs voluntarily dismissed their claims against some Defendants and the Court dismissed the claims against other Defendants. Accordingly, the only claims that survive are those against Centra Tech for securities fraud under Section 12(a)(1) of the Securities Act, 15 U.S.C. § 771(a)(1), Section 10(b) of the Exchange Act, and Rule 10b–5 under the Securities Exchange Act, 17 C.F.R. § 240.10b–5.

Following Centra Tech's failure to appear in this action by a court-ordered date, the Plaintiffs filed a motion for a Clerk's Entry of Default against Centra Tech, (ECF No. 169), which the Clerk issued on January 31, 2019. (ECF No. 172.) On June 13, 2019, the Plaintiffs filed a motion for a default judgement against Centra Tech (ECF No. 211) and a motion for class certification. (ECF No. 212.) Two days later, counsel for Centra Tech finally entered a notice of appearance and filed a motion to set aside the Clerk's Entry of Default. (ECF Nos. 213, 214.) Centra Tech also filed a response in opposition the Plaintiffs' motion for default judgment and motion for class certification. (ECF Nos. 216, 217.) The Court decided the disputes in separate orders.

The Court denied the Plaintiffs' original motion for class certification and their renewed motion for class certification. The Court determined that the motion for class certification was untimely and that the Plaintiffs had failed to show the class was ascertainable by failing to prove administrative feasibility. (ECF No. 235.) The Court denied the renewed motion for failure to adduce new evidence, changed circumstances, or new information about the class members' claims. (Order, ECF No. 258.) Because Centra Tech had failed to appear in this case by a court-ordered date and had failed to excuse its noncompliance, the Court granted the Plaintiffs' motion for default judgment

and entered a final judgment against Centra Tech. (ECF No. 263.) The Court found Centra Tech liable to the individual Plaintiffs and awarded monetary damages to each named Plaintiff. (*Id.*)

The Plaintiffs appealed this Court's order denying their motion for class certification. On appeal, the Eleventh Circuit vacated this Court's order and remanded for further proceedings. *Rensel v. Centra Tech, Inc.*, 2 F.4th 1359, 1370 (11th Cir. 2021). The Court held that the motion was timely, that administrative feasibility was not a requirement of ascertainability or Rule 23, and that the Plaintiffs' proposed classes (including the one at issue in the renewed motion) "easily" satisfied the requirements of ascertainability. *Id.* Although the Eleventh Circuit did not reverse the finding of liability against Centra Tech, the appellate court vacated the final judgment in so far as it did not account for all of the relief sought by the Plaintiffs. *Id.*

After the Eleventh Circuit issued its mandate, the Court held a status conference on the matter on September 1, 2021. The Plaintiffs requested that the Court rule on the arguments advanced in the Plaintiffs' renewed motion for class certification (as opposed to those in the initial motion). (Renewed Mot. for Class Cert., ECF No. 239). The Court granted the Plaintiffs' request to proceed on their renewed motion, noting that the motion had been fully briefed by both parties. (*See generally,* Resp. in Opp'n, ECF No. 249; Reply, ECF No. 250.)

In the renewed motion for class certification, the Plaintiffs claim that Centra Tech's deception and fraudulent scheme had the effect of injuring thousands of persons who purchased CTR Tokens during the ICO. The Plaintiffs move to certify the following class:

> All persons and entities who purchased or otherwise acquired Centra Tech Tokens ("CTR Tokens") directly from Defendant Centra Tech in connection with its "official" initial coin offering from July 23, 2017 through October 5, 2017. ("Class Period").
> Excluded from the Class are: (i) defendant Centra Tech; (ii) any person who was an officer, director or employee of Centra Tech, Inc.; (iii) any immediate family member of any excluded person; (iv) any firm, trust, corporation or other entity in which any excluded person or entity has or had a controlling interest; and (v) the legal representatives, affiliates, heirs, successors in-interest, or assigns of any such excluded person or entity.

(Renewed Mot. for Class Certification, ECF No. 239 at 11.) The Plaintiffs ask the Court to appoint Plaintiffs Chi Hao Poon, King Fung Poon, Jae J. Lee, and Mateusz Ganczarek as Class Representatives and to appoint Levi & Korsinsky and Taylor-Copeland Law as Class Counsel. (*Id.* at 10, 29.) In their renewed motion, the Plaintiffs have dropped Plaintiff Rodney Warren from the proposed

Class because he purchased his CTR Tokens outside the Class period.

### 3. Legal Standard

"Under Rule 23, certification is proper where the proposed classes satisfy an implicit ascertainability requirement, the four requirements listed in Rule 23(a), and the requirements listed in any of Rule 23(b)(1), (2), or (3)." *Karhu v. Vital Pharms., Inc.*, 621 F. App'x 945, 946 (11th Cir. 2015). Specifically, Rule 23(a) requires that that party seeking certification demonstrate four prerequisites: "(1) that the class is so numerous that joinder of all members is impracticable; (2) that there are questions of law or fact common to the class; (3) that the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) that the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

Satisfaction of the Rule 23(a) factors, however, does not end the inquiry, and a class still may not be certified unless one of the requirements of Rule 23(b) are satisfied. *Klay v. Humana, Inc.*, 382 F.3d 1241, 1250 (11th Cir. 2004). The Plaintiffs pursue monetary relief and thus seek certification of the proposed class pursuant to Rule 23(b)(3). Rule 23(b)(3) requires a plaintiff to prove that common questions predominate over any questions affecting only individual members; and class resolution is superior to other available methods for the fair and efficient adjudication of the controversy. *Harris v. Nortek Glob. HVAC LLC*, No. 14-CIV-21884, 2016 WL 4543108, at *3 (S.D. Fla. Jan. 29, 2016) (citing *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615 (1997)). Additionally, although not explicitly contemplated by Rule 23, ascertainability is an implicit requirement for class certification. *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302 (11th Cir. 2021).

In reviewing a motion for class certification, the Court must conduct a "rigorous analysis" of the facts and law to determine whether the parties proposing the class has met its burden of demonstrating compliance with Rule 23. *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 161 (1982); *see also Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1169 (11th Cir. 2010) (citation omitted). While the district court's class certification analysis "may 'entail some overlap with the merits of the plaintiff's underlying claim,' Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1195 (2013) (citations omitted). Rather, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.*

The defaulted status of a defendant will not preclude the plaintiffs from receiving class certification so long as the requirements of Rule 23 are satisfied. *Holmes v. DRS Processing LLC*, No. 3:18-CV-1193-J-39JRK, 2020 WL 7419687, at *4 (M.D. Fla. Nov. 3, 2020) (Klindt, MJ.), *report and recommendation adopted*, No. 3:18-CV-1193-J-39JRK, 2020 WL 8222232 (M.D. Fla. Dec. 23, 2020) (Davis, J.) (certifying class against a defaulted defendant); *Leo v. Classmoney.net*, No. 18-CV-80813, 2019 WL 238548, at *2 (S.D. Fla. Jan. 10, 2019) (Matthewman, J.) (recognizing that the prerequisites for class certification must be satisfied notwithstanding a defendant's failure to appear and defend an action); *Kron v. Grand Bahama Cruise Line, LLC*, 328 F.R.D. 694, 698-703 (S.D. Fla. 2018) (certifying class against a defaulted defendant in a TCPA case) (Martinez, J.).

### 4. Analysis

To show that class certification is appropriate under Rule 23, the party seeking class certification must show that the action satisfies the standards of both Rule 23(a) and 23(b). *Turner v. Beneficial Corp.*, 242 F.3d 1023, 1025 (11th Cir. 2001). The parties dispute whether the Plaintiffs' renewed motion for class certification is timely and whether the Plaintiffs have satisfied the requirements of Rule 23. Additionally, the Plaintiffs aver that because Centra Tech is a defaulted defendant it has lost its opportunity to oppose class certification.

In an abundance of caution and because the Court finds Centra Tech's arguments unavailing, the Court addresses those arguments in this Order. Moreover, the Court will not revisit the parties' timeliness arguments because the Eleventh Circuit already determined that the Plaintiffs' motion for class certification was timely. The Court likewise adopts the Eleventh Circuit's holding that the Plaintiffs have "easily" shown that the proposed class is ascertainable. Lastly, and after careful consideration, the Court finds that the Plaintiffs have satisfied the requirements of Rule 23 and the motion is due to be **granted**.

### A. Class Definition

Before reaching the Rule 23(a)'s requirements, the Court addresses the proposed class definition. Plaintiffs' class definition seeks to certify: "All persons and entities who purchased *or otherwise acquired* Centra Tech Tokens ("CTR Tokens") directly from Defendant Centra Tech in connection with its "official" initial coin offering from July 23, 2017 through October 5, 2017. ("Class Period")." (emphasis added).

The Court finds that with a slight modification, the definition is concise and specific such that the group is capable of being identified. Specifically, the proposed class should include only those individuals or entities who actually purchased and held CTR Tokens during the class period. *Luczak v. Nat'l Beverage Corp.*, No. 0:18-CV-61631-KMM, 2021 WL 3163544, at *3 (S.D. Fla. July 12, 2021) (Moore, J.) (modifying and approving class definition in a securities case that included those who actually held the securities at issue during the class period or because of the alleged misconduct).

Accordingly, the proposed class is modified only to the extent that it removes "otherwise acquired," from the proposed definition. *Id.*; *see also Thorpe v. Walter Inv. Mgmt., Corp.*, No. 1:14-cv-20880, 2016 WL 4006661, at *5 (S.D. Fla. Mar. 16, 2016) ("A plaintiff claiming a violation of a private securities fraud under Rule 10b–5 must prove, inter alia, reliance on the misrepresentation. It plainly follows then that a person who did not resolve to purchase a security cannot claim reliance on a purported misrepresentation.") (citation omitted and emphasis included in original). Notably, all the Plaintiffs, except Warren, purchased and held CTR Tokens during the proposed class period. The proposed definition is otherwise concise and specific as it excludes purchases made through secondary markets, which could affect the required showing of reliance on Centra Tech's misrepresentations. The Court also approves the exclusion of Centra Tech, its principals and their family members, and controlling shareholders.

### B. Ascertainability

The Court is not required to determine the issue of ascertainability because the Eleventh Circuit held that the Plaintiffs' proposed subclasses, including the class proposed here, "easily" met the standard for ascertainability. *Rensel*, 2 F. 4th at 1369. Even so, a brief discussion is necessary to the extent the parties' papers conflate ascertainability and administrative feasibility.

Ascertainability serves as an implied prerequisite of Rule 23. *Cherry*, 986 F.3d at 1302 (11th Cir. 2021). "Class representatives bear the burden of establishing that their proposed class is adequately defined and clearly ascertainable, and they must satisfy this requirement before the district court can consider whether the class satisfies the enumerated prerequisites of Rule 23(a)." *Id.* The Eleventh Circuit has traditionally collapsed class definition and ascertainability into one inquiry. *Id.* To that end, "a proposed class is ascertainable if it is adequately defined such that its membership is capable of determination." *Id.* at 1304. And "membership can be capable of determination without being capable of *convenient* determination." *Id.*

(emphasis in original). *Id.* at 1303. On the other hand, a class is inadequately defined when it is defined through vague or subjective criteria. *Id.* at 1301. When a proposed class lacks an adequate definition, the district court cannot ascertain who belongs in that proposed class. *Id.* at 1302. Neither this analysis nor the remainder of the Rule 23 analysis requires "administrative feasibility"; if the action involves a proposed Rule 23(b)(3) class, like the present matter, the district court may consider administrative feasibility as part of the manageability criterion under Rule 23(b)(3). *Id.* at 1304.

  Here, the Plaintiffs have adduced sufficient evidence to "meet the *Cherry* standard for ascertainability." *Rensel*, 2 F. 4th at 1369. Indeed, membership in the class turns on objective, verifiable criterion of having purchased CTR Tokens during the specific dates of the ICO. *Id.* For example, a spreadsheet produced by Centra Tech to the Securities Exchange Commission identifies all of the investors who purchased digital tokens issued by Centra Tech, each investor's contact information, the digital wallet addresses of the investors that purchased CTR Tokens, and information identifying each purchase. The spreadsheet contains tabs and includes purchase information during the ICO period. Plaintiffs' counsel represented at oral argument that the Plaintiffs had come into possession of the spreadsheet through third-party discovery. Thus, they have a means for identifying all individuals who purchased CTR Tokens and identifying those who purchased the tokens during the class period through a cross-referencing process.

  Centra Tech also maintained business records of information submitted by investors that purchased CTR Tokens during the ICO. The business records contain information from ICO investors including their email addresses, full names, digital wallet addresses, birth dates, and home addresses. (ECF Nos. 234-5, 239-9, 239-10.) For example, the Plaintiffs submit an email from Centra Tech to Poon confirming the purchase of CTR Tokens. (ECF No. 239-10.) This confirmation email has a date, the purchaser's name, home address, email address, and digital wallet address. (*Id.*) Similarly, the Plaintiffs advance a blank Google Form document related to the Centra ICO, which requires investors to provide identifying contact information. (ECF No. 239-9.) Centra Tech has also represented to the Court that it maintains some records in relation to purchases of CTR Tokens. (Sykes Decl., ECF No. 26-3 at ¶¶ 16–18.)

  As the Eleventh Circuit held, the Plaintiffs have adduced sufficient means to show that class membership is capable of being determined. *Rensel*, 2 F.4th at 1370. That the Plaintiffs have yet to obtain some of these records from Centra Tech is not dispositive in this case because discovery has not been meaningfully conducted and Centra Tech does not dispute the existence of the documents or that the Plaintiffs may obtain same through discovery. *Cherry*,

108 F. 3d at 1303 ("A class is "clearly ascertainable" if we are certain that its membership is "capable of being" determined . . . But membership can be capable of determination without being capable of *convenient* determination. Administrative feasibility is not an inherent aspect of ascertainability.") (emphasis added in original) (internal citations omitted).

Centra Tech argues that the motion should be denied because it asserts a new theory or new proposed class. (ECF No. 246 at 10.) In other words, Centra Tech avers that the Plaintiffs have improperly amended the class from the three subclasses proposed in the original motion. However, the proposed class in the renewed motion was also raised in the original motion and considered by the Eleventh Circuit.

### C. Requirements of Rule 23(a)

#### *(1) Numerosity*

Rule 23(a)(2)'s numerosity prerequisite requires that "the class is so numerous that joinder of all members is impracticable." "[A] plaintiff need not show the precise number of members in the class." *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983) (citations omitted). "A reasonable estimate is enough." *Bostwick v. SMH (US) Inc.*, 1998 WL 934642, at *3 (N.D. Ga. Oct. 30, 1998), *aff'd sub nom. Bostick v. SMH (US), Inc.*, 228 F.3d 413 (11th Cir.2000) (citing *Evans*). While there is no exact number to establish numerosity, the Eleventh Circuit has found that "generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (internal citation omitted). Accordingly, the numerosity requirement is a "generally low hurdle." *Vega*, 564 F.3d at 1267. Even so, a plaintiff still has the burden to make "*some* showing" that the class meets the numerosity requirement. *Id.* The Eleventh Circuit has acknowledged that at least one court has recognized that when the numerosity question is a close one, a balance should be struck in favor of a finding of numerosity because the court has the option to decertify pursuant to Rule 23(c)(1). *Evans*, 696 F.2d at 930.

The Plaintiffs have satisfied the numerosity requirement and Centra Tech does not dispute this in its response to the renewed motion. The Plaintiffs allege that there are thousands of Class members that will be confirmed through the methods described in the prior section. The Centra Tech spreadsheet identifies at least 3500 different purchases (not investors) during the ICO, and the criminal complaint alleges that thousands of individual and entities were harmed by Centra Tech's scheme. (Renewed Mot. for Class

Certification, ECF No. 239 at 22.) The Court is satisfied that the Plaintiffs satisfied the numerosity requirement.

### (2) *Commonality*

Rule 23(a)(2)'s commonality requirement demands "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). As with numerosity, the Eleventh Circuit has described the commonality requirement as a "low hurdle" or a "light burden," as commonality "does not require that all questions of law and fact raised be common." *Williams v. Mohawk Indus., Inc.*, 13 568 F.3d 1350, 1356 (11th Cir. 2009). "Commonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members. *Id.* at 1355. In other words, what matters to class certification is "the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

The Plaintiffs advance a series of questions that will be answered through common proof, including whether Centra Tech sold unregistered securities; whether Centra Tech knowingly engaged in a fraudulent scheme related to its ICO; whether CTR Token prices were artificially inflated during the Class period as a result of Centra Tech's misrepresentations; and whether the Class member sustained damages as a result of Centra Tech's sale of unregistered securities and fraudulent conduct. (Renewed Mot. for Class Certification, ECF No. 239 at 15–16.)

The Plaintiffs have met their burden because the Class members share issues of law and fact relating to Centra Tech's misrepresentations and the resulting financial harm to the Plaintiffs. *See Katz v. MRT Holdings, LLC*, No. 07-61438-CIV, 2008 WL 4725284, at *3 (S.D. Fla. Oct. 24, 2008) (Cohn, J.) (finding plaintiffs had satisfied commonality requirement in a securities fraud class action because they shared questions regarding whether federal securities laws were violated, whether the defendants sold unregistered securities, and whether the defendants participated in a fraudulent scheme); *Aranaz v. Catalyst Pharm. Partners Inc.*, 302 F.R.D. 657, 665 (S.D. Fla. 2014) (Ungaro, J.) (determining commonality requirement had been satisfied in securities fraud case).

### (3) *Typicality*

Rule 23(a)(3)'s typicality prerequisite requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The claims of the class members do not need to be identical to those

of the class representative; rather, there must exist "a sufficient nexus . . . between the legal claims of the named class representatives and those of individual class members to warrant class certification." *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012). This nexus exists if the claims of the class representative and the class members "arise from the same event or pattern or practice and are based on the same legal theory." *Id.* at 1217 (citing *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984)).

The claims of proposed class representatives Hao Poon, Poon, Lee, and Ganczarek are typical of those of the class. The Plaintiffs allege that: they each purchased CTR Tokens during the ICO; CTR Tokens are unregistered securities; Centra Tech made several misrepresentations to induce the Plaintiffs to purchase CTR Tokens; Centra Tech worked in concert with its principals and promoters to defraud investors; and the Plaintiffs relied to their detriment on Centra Tech's misrepresentations. (Class Representatives' Decl., ECF Nos. 239-26, 239-27, 239-28, 239-29, and 239-30); (Am. Compl., ECF No. 97.) Thus, the claims arise from the same event, are premised on the same legal theory, and share the same essential characteristics. *Thorpe*, 2016 WL 4006661, at *8 (finding the plaintiffs satisfied typicality requirement in a securities fraud case because "[t]he alleged fraudulent statements comprise the wrongful acts which will serve as the *same* factual predicate for Plaintiffs and all members of the class and which will determine whether Defendants are liable under the *same* securities fraud theories.") (emphasis in original); *Katz*, 2008 WL 4725284, at *3 (in securities fraud and sale of unregistered securities case, the court found the plaintiffs satisfied the typicality requirement because the claims stemmed from the same event and were based on the same legal theories).

### *(4) Adequacy*

Rule 23(a)(4) requires adequacy of representation, stating that "the representative parties will fairly and adequately protect the interests of the class." This requirement applies to both the named plaintiffs and their counsel. *London v. Wal–Mart, Inc.*, 340 F.3d 1246, 1253 (11th Cir. 2003). The adequacy analysis encompasses two inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003).

The Court finds that the named Plaintiffs possess the same interests as the other putative class members. Further, the Court is not aware of any conflicts that would preclude the named Plaintiffs or their counsel from

adequately representing and protecting the interests of the proposed class.

Centra Tech argues that there is clearly a conflict between the named Plaintiffs because Warren has been excluded from the proposed class as he purchased his CTR Tokens outside the class period. (Resp. in Opp'n, ECF No. 264 at 11.) This argument is unavailing. Centra Tech fails to cite to any authority supporting its argument. Warren's exclusion from the proposed class does not constitute a substantial conflict for purposes of the adequacy requirement. Indeed, the Court has already found that Centra Tech is liable to Warren and has awarded him damages. The other Plaintiffs can continue representing the interests and rights of the class members. Moreover, Plaintiffs' counsel has set forth sufficient qualifications and experience in handling similar matters. (Firm resumes, ECF Nos. 239-2, 239-3.)

Accordingly, the Plaintiffs have satisfied all of the requirements of Rule 23(a).

### D. Requirements of Rule 23(b)

To satisfy Rule 23(b), a movant must show that the action satisfies at least one of three alternative standards. *Pickett v. Iowa Beef Processors,* 209 F.3d 1276, 1279 (11th Cir.2000). The Plaintiffs move for class certification under Rule 23(b)(3), under which certification is appropriate only if: (1) "questions of law or fact common to class members predominate over any questions affecting only individual members"; and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also Harris v. Nortek Glob. HVAC LLC*, No. 14-CIV-21884, 2016 WL 4543108, at *3 (S.D. Fla. Jan. 29, 2016) (Bloom, J.) (citing *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615 (1997)).

#### *(1) Predominance*

To satisfy the predominance requirement of Rule 23(b)(3), a movant must show that issues subject to generalized proof, which are applicable to the putative class members equally, predominate over issues requiring individualized evidence. *Jackson v. Motel 6 Multipurpose, Inc.,* 130 F.3d 999, 1005 (11th Cir.1997). Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability that is more substantial than the impact of any individualized issues in resolving the claims of each class member. *See Sacred Heart*, 601 F.3d at 1170. The court's inquiry is typically focused on "whether there are common liability issues which may be resolved efficiently on a class-wide basis." *Brown v. SCI Funeral Servs. of Fla.,* 212 F.R.D. 602, 606 (S.D. Fla. 2003) (Graham, J.).

In this case, the Plaintiffs allege two distinct causes of action against Centra Tech: (1) violations of Section 12(a)(1), 15 U.S.C. § 77l(a)(1), of the Securities Act; and (2) violations of under Section 10(b) of the Exchange Act and SEC Rule 10b-5. Because these causes of action involve different elements, the Court will address each cause separately. Generally, class actions are "a particularly appropriate means for resolving securities fraud actions." *In re AmeriFirst Sec. Litig.,* 139 F.R.D. 423, 427 (S.D. Fla. 1991) (Hoeveler, J.). However, individual issues of reliance may sometimes render a securities class action inappropriate. *Katz,* 2008 WL 4725284, at *4.

Section 12(a)(1), 15 U.S.C. § 77l(a)(1), of the Securities Act creates a private right of action against any person who "offers or sells a security in violation of" Section 5, 15 U.S.C. § 77e, of the Securities Act. *See, e.g., Raiford v. Buslease, Inc.,* 825 F.2d 351, 353 (11th Cir. 1987). In order to establish liability under Section 12(a)(1), a plaintiff must prove (1) the defendants sold or offered to sell securities; (2) no registration statement was in effect as to the securities; and (3) interstate transportation or communication and the mails were used in connection with the sale or offer of sale. *SEC v. Levin,* 849 F.3d 995, 1001 (11th Cir. 2017). Therefore, claims for the sale of unregistered securities do not involve individual issues of reliance. Accordingly, courts have found that cases involving such claims meet the predominance requirement of Rule 23(b)(3). *See Katz,* 2008 WL 4725284, at *5; *see also In re 1 Glob. Cap. LLC*, No. 18-19121-RAM, 2020 WL 1486791, at *5 (Bankr. S.D. Fla. Mar. 23, 2020) (Mark, J.) (finding action involving claims for the sale of unregistered securities meets the predominance requirement); *Cooper v. Miller Johnson Steichen Kinnard, Inc.,* 2003 WL 1955169, *5 (D. Minn. Apr. 21, 2003) (Kyle, J.) (finding action involving claims for the sale of unregistered securities "easily" meets the predominance requirement); *Dietrich v. Bauer,* 192 F.R.D. 119 (S.D.N.Y. 2000) (Sweet, J.) (finding action involving claims for sale of unregistered securities satisfies the predominance requirement). Accordingly, the Plaintiffs claims under Section 12(a)(1) satisfy the predominant requirement.

The elements of a securities fraud claim under Rule 10b are: "(1) that the defendant committed a deceptive or manipulative act, (2) in furtherance of the alleged scheme to defraud, (3) with scienter, and (4) reliance." *In re: Altisource Portfolio Sols., S.A. Sec. Litig.*, No. 14-81156-CIV- WPD, 2015 WL 11988900, at *5 (S.D. Fla. Dec. 22, 2015) (citing *In re Alstom SA*, 406 F. Supp. 2d 433, 474 (S.D.N.Y. 2005)). While the element of reliance is required to establish the Plaintiffs' securities fraud claims, the Court finds that that any individual issues of reliance do not prevent certification of the proposed class.

The Plaintiffs seek to rely on the fraud-created-the-market presumption

of reliance. Courts that have recognized this theory have limited its use to the narrow circumstance "where but for the fraud the securities would not have been marketable." *Lipton v. Documation, Inc.*, 734 F.2d 740, 747 (11th Cir. 1984) (recognizing that in a setting of "a new issue offering," certain actors who introduce an otherwise unmarketable security into the market by means of fraud could be liable in an action for securities fraud); *Katz*, 2008 WL 4725284, at *5 (finding that plaintiffs in a security fraud class action had satisfied the requirement of predominance through a fraud-created-the-market theory because the plaintiffs showed that but for the defendant's fraud, the securities would have been unmarketable); *AAL High Yield Bond Fund v. Ruttenberg*, 229 F.R.D. 676, 678-79 (N.D. Ala. 2005) (finding that plaintiffs in putative class action had satisfied the element of predominance through a fraud-created-the-market presumption because they had shown that but for the defendants' false and misleading statements, the securities would not have come on the market and that the initial offering allowed the defendants to disseminate those false statements). As evidence of their theory, the Plaintiffs have cited to the criminal and enforcement actions against Centra Tech and its individual principals for securities fraud, as well as the white paper, blog posts, and social media posts that were circulated to induce investors to purchase CTR Tokens during the ICO. The Court is satisfied that Centra Tech's misrepresentations, such as their assurances that the offered securities were backed by Visa and Mastercard, that they were insured by a third party, or even that they had real and not fictitious managers, would have prevented CTR Tokens from being marketed. In light of the foregoing, the Court finds that the plaintiff has satisfied the predominance requirement of Rule 23(b)(3).

### *(2) Superiority*

To satisfy the superiority requirement of Rule 23(b)(3), a movant must show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The focus of this analysis is on the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Sacred Heart*, 601 F.3d at 1183–84. Rule 23(b)(3) lists matters pertinent to this finding: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."

The Plaintiffs argue that it would be superior to manage this litigation as a class action. They cite to common questions of law, the absence of evidence that there are any conflicts between individual class members, and the fact that the action stems from the same event and resulted in the same kind of harm to the Plaintiffs.

At oral argument, and for the first time in this litigation, Centra Tech argued that a class action is not superior because the relief would be duplicative of the enforcement and criminal actions against Centra Tech's principals. Centra Tech offered no evidence to support its proposition that those actions would provide full relief to the class members, nor did it cite to any case law. In response, counsel for the Plaintiffs represented that he had spoken to government attorneys regarding a risk of duplicative awards to the Plaintiffs and learned that those actions were not guaranteed to result in a financial award to the putative class members.

Class treatment is often the best method for resolving securities fraud claims predicated on public misrepresentations. *See, e.g., Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983) (affirming certification of securities fraud class action and noting "[i]ndeed, we find that this suit involving a single conspiracy and fraudulent scheme against a large number of individuals is particularly appropriate for class action. Separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts."); *In re AmeriFirst Sec. Litig.,* 139 F.R.D. at 427 ("It is well-recognized that class actions are a particularly appropriate means for resolving securities fraud actions."); *In re Health Ins. Innovations Sec. Litig.,* No. 8:17-CV-2186-T-60SPF, 2020 WL 10486665, at *6 (M.D. Fla. Oct. 21, 2020) (Flynn, J.), *report and recommendation adopted*, No. 8:17-CV-2186-T-60SPF, 2020 WL 10486666 (M.D. Fla. Nov. 19, 2020) (Barber, J.) ("It is well recognized that a class action is not only a superior method but sometimes the only feasible method to fairly and efficiently adjudicate a controversy, such as this one, involving a large number of purchasers of securities allegedly injured by securities law violations."). This case is no exception. The Court is not aware of any reason why the putative class members might have a special interest in controlling their individual claims. On the contrary, it appears that the class members would favor class treatment because there are an abundance of common issues and facts in this case. *See Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 155 (1982) ("Class relief is peculiarly appropriate when the issues involved are common to the class as a whole and when they turn on questions of law applicable in the same manner to each member of the class because it saves the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical

fashion under Rule 23.") (internal quotations omitted); *Sacred Heart,* 601 F.3d at 1184 ("[T]he predominance analysis has a tremendous impact on the superiority analysis for the simple reason that, the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims both relative to other forms of litigation such as joinder or consolidation, and in absolute terms of manageability.") (internal quotations omitted).

Accordingly, class certification is warranted under Rule 23.

### 5. Conclusion

For the reasons stated herein, the Court **grants** the Plaintiffs' renewed motion for class certification. **(ECF No. 239.)** Lead Plaintiffs Jacob Zowie Thomas Rensel and Wang Yun He, and proposed class representatives Chi Hao Poon, King Fung Poon, Jae J. Lee, and Mateusz Ganczarek are appointed as Class Representatives. Additionally, Levi & Korsinsky, LLP and Taylor-Copeland Law are hereby appointed as Class Counsel.

**Done and ordered**, in chambers, in Miami, Florida on September 10, 2021.

Robert N. Scola, Jr.
United States District Judge