# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| JACOB ZOWIE THOMAS RENSEL, WANG YUN HE, CHI HAO POON, KING FUNG POON, JAE J. LEE, MATEUSZ GANCZAREK, and RODNEY WARREN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CENTRA TECH, INC.,<br><br>Defendant. | C.A. No. 1:17-cv-24500-RNS/Becerra |

### PLAINTIFFS' UNOPPOSED MOTION AND INCORPORATED MEMORANDUM OF LAW FOR JUDGMENT UPON DEFAULT PURSUANT TO FED. R. CIV. P. 55(B) AND LOCAL CIVIL RULE 7.1 AGAINST DEFENDANT CENTRA TECH, INC.

Court-appointed Class Representatives Jacob Zowie Thomas Rensel, Wang Yun He, Chi Hao Poon, King Fung Poon, Jae J. Lee, and Mateusz Ganczarek (collectively, "Plaintiffs"), respectfully submit this Unopposed Motion for Judgment upon Default ("Motion for Default Judgment") pursuant to FED. R. CIV. P. 55(b)(2) and Local Civil Rule 7.1, requesting a final default judgment be entered by the Court against defendant Centra Tech, Inc. ("Centra Tech" or the "Company"), and in favor of the certified Class in the amount of **THIRTY THREE MILLION, FOUR HUNDRED TWENTY TWO THOUSAND, THREE HUNDRED SEVENTY THREE DOLLARS, AND FORTY FIVE CENTS ($33,422,373.45)**, and in support thereof contemporaneously submit the Declaration of Donald Enright. This Motion, and the relief requested herein, is not opposed by Defendant Centra Tech.

### RELEVANT FACTUAL BACKGROUND

Defendant Centra Tech was a start-up company that purported to develop and market the Centra Debit Card which the Company claimed would permit individuals to store and spend their

cryptocurrencies, including Bitcoin ("BTC") and Ethereum ("ETH" or "Ether"), in real time at any vendor that accepted Visa or Mastercard. MTCA R&R[1] at 2; Certification Order at 2.[2]

To finance its operations and development of the Centra Debit Card and related products, Centra Tech conducted an "initial coin offering" or "ICO" through which the Company offered and sold CTR Tokens to the general public. *Id*.

Between July 23, 2017 and October 5, 2017 (the "Class Period"), in connection with Centra Tech's official ICO, Plaintiffs and the certified Class (defined below) purchased CTR Tokens directly from Centra Tech in exchange for at least 100,000 ETH in virtual currency investments, which includes investments made in BTC and Litecoin. *See* Enright Decl. ¶¶ 12-14, Ex. 1; Compl. ¶ 115.[3]

In late July 2017, Centra Tech issued a press release "that stated it had created 'the world's first Debit Card that is designed for use with compatibility on 8+ major cryptocurrency blockchain assets" and that the Centra ICO was a "'truly ground floor opportunity . . . that offers a comprehensive rewards program for both token and card holders while giving the ability to spend your cryptocurrency in real time with no fees.'" Omnibus Order at 1–2 (citing Compl. ¶¶ 91–2).[4] Additionally, the Company also touted that its "Centra Tech Debit Card would be able to operate on Visa and Mastercard networks and allow users to make transactions in digital currencies in 'real time.'" Certification Order at 2 (citing Compl. ¶ 230). "Centra Tech also published a series of white papers which touted the profit potential of investing in the ICO. Omnibus Order at 2 (citing Compl. ¶¶ 94–95). "None of the claims made by Centra Tech were true." *Id.* (citing Compl. ¶ 98); *see also* Certification Order at 2.

Centra Tech was never permitted to solicit investments from the general public. Compl. ¶ 4. The Company was created to serve as a fraudulent vehicle for the sole purpose of selling patently

---

[1] The term "MTCA R&R" refers to Magistrate Simonton's June 14, 2018 Report and Recommendation on Defendants' Motion to Compel Arbitration and Stay and/or in the Alternative to Dismiss (ECF No. 77).

[2] The term "Certification Order" refers to the Court's September 10, 2021 Order Granting the Plaintiffs' Renewed Motion for Class Certification (ECF No. 322).

[3] Citations to "Compl. ¶__" refer to Plaintiffs' First Amended Class Action Complaint for Violation of the Federal Securities Laws (ECF No. 97).

[4] The term "Omnibus Order" refers to the Court's May 13, 2019 Omnibus Order on Defendants' Motions to Dismiss (ECF No 202).

worthless, unregistered CTR Tokens. *Id*.; *see also* Certification Order at 2 ("Centra Tech made these statements to induce Plaintiffs and the general public to invest in more unregistered CTR Token securities and as part of a scheme to artificially inflate the value of the patently worthless unregistered CTR Token securities.") (citing Compl. at ¶ 336.)

Plaintiffs and each of the members of the Class invested in the Centra ICO and sustained financial harm as a result of Defendant Centra Tech's violations of the Securities Act of 1933 ("Securities Act") and the Exchange Act of 1934 ("Exchange Act").

## RELEVANT PROCEDURAL HISTORY

On December 13, 2017, Plaintiff Rensel initiated the Action by filing a complaint against Centra Tech, the Centra Founders[5] and Centra Tech's former Chief Executive Officer alleging that the Centra Tech's ICO constituted an unlawful offer and sale of unregistered securities (in the form of CTR Tokens) in violation of the federal securities laws thus entitling Rensel and the putative class to rescission of their investments and/or compensatory damages (ECF No. 1) (the "Initial Complaint"). On that same day, Rensel filed his Application for a Temporary Restraining Order (ECF No. 4) (the "Initial TRO").

The Initial TRO sought an order temporarily restraining defendants from transferring or dissipating the funds raised in connection with the Centra ICO (the "ICO Proceeds"). *Id*. On December 14, 2017, the Court scheduled a hearing on the Initial TRO to take place on December 15, 2017 (the "TRO Hearing"). During the TRO Hearing's recess, the parties conferred and reached an agreement in lieu of proceeding with the TRO Hearing (the "Agreement"), which counsel for Plaintiff subsequently outlined to the Court, and to which counsel for defendants explicitly agreed on the record before this Court (ECF No. 10).

On December 29, 2017, pursuant to the terms of the Agreement, counsel for Defendant Centra Tech emailed a letter (ECF No. 23-7, the "Assurances Letter"), providing the address for Centra Tech's digital Ether wallet with the public wallet address of 0xdA6F983076725cB2899205A16E16d1ed60a0067A (the "ICO Proceeds Wallet")—which held the funds acquired from the Class during Centra Tech's ICO. *Id*.

---

[5] The term "Centra Founders" refers collectively to Sohrab Sharma ("Sharma"), Robert Farkas ("Farkas"), and Raymond Trapani ("Trapani").

On February 2, 2018, Defendant Centra Tech and the Centra Founders filed a motion to compel arbitration or, in the alternative, to dismiss the Initial Complaint (ECF No. 26) (the "MTCA"). On February 16, 2018, Plaintiff Rensel filed his opposition to the MTCA demonstrating that neither Rensel nor any putative class member was subject to the agreement to arbitrate that Centra Tech claimed to have existed. (ECF No. 31). *See* MTCA R&R at 4.

On April 9, 2018, the Court appointed Rensel and He as Co-Lead Plaintiffs pursuant to the Private Securities Litigation Reform Act. (ECF No. 59). Separately, on March 31, 2018, criminal charges were filed against two of Centra Founders—Sharma and Farkas. The Government's charges arise from Sharma and Farkas' actions relating to the Centra Tech ICO and include: (1) Conspiracy to Commit Securities Fraud; (2) Securities Fraud; (3) Conspiracy to Commit Wire Fraud; and (4) Wire Fraud. TRO R&R at 5 (citing *USA v. Sharma et al*, Case No. 1:18-cr-00340-LGS (S.D.N.Y. filed Mar. 31, 2018) "Criminal Action")). Shortly thereafter, on April 20, 2018, criminal charges were also filed against the third Centra Founder—Trapani. *Id*. In light of this new information, Plaintiff Rensel filed a renewed motion for a TRO on April 5, 2018 (ECF No. 54) (the "Renewed TRO Application").

On May 14, 2018, a grand jury in the Southern District of New York returned an Indictment charging Centra Tech's founders with conspiring to commit, and the commission of, securities and wire fraud in connection with their offer and sale of unregistered securities (CTR Tokens). Compl. ¶ 62.

On May 29, 2018, Co-Lead Plaintiffs filed a motion seeking leave to amend the Initial Complaint so that Plaintiffs could support their claims with factual allegations arising from information revealed in connection with the Criminal Action. (ECF No. 73).

On June 11, 2018, counsel for Defendant Centra Tech and the Centra Founders filed a motion to withdraw from representing the Company and founders. (ECF No. 74). On June 12, 2018, Plaintiffs filed their opposition to the motion to withdraw. (ECF No. 75). On June 15, 2018, the Court granted Defendant Centra Tech's first counsel's motion to withdraw from representing the Company in this Action. (ECF No. 78).

On June 25, 2018, Magistrate Simonton issued the TRO R&R which determined that Plaintiffs had established a substantial likelihood that they would prevail on the merits of their claims for violation of Section 12(a)(1) of the Securities Act and ultimately recommended that an asset freeze be imposed over the 100,000 ETH contained in the ICO Proceeds Wallet. (ECF No.

79). The TRO R&R specifically held that "the offering of Centra Tokens was an investment contract under the Securities Act, such that the Defendants sold or offered to sell securities by virtue of the Centra Tech ICO." *Id*. at 10–11.  Shortly thereafter, the Centra Defendants filed an emergency motion to modify the asset freeze and revoke their consent as to 9,000 of the 100,000 ETH. Civil Action, *see* Enright Decl.**, Exhibit 1**, FBI Agent Brandon Racz Affidavit in Support of Seizure Warrant Pursuant to 18 U.S.C. 981 as to the 9,000 ETH (the "9,000 ETH Seizure Affidavit"), ¶16 (discussing circumstances surrounding Plaintiffs' efforts to secure the ICO Funds).  On September 25, 2018, Judge King in Claimants' Civil Action imposed an asset freeze covering 91,000 ETH of the ICO Funds contained in the digital wallet currently secured by law enforcement. *Id*; *see also* (ECF No. 95).

Between May and October 2018, the United States Government seized the 100,000 ETH in the ICO Proceeds Wallet from Centra Tech.  *United States v. Sohrab Sharma, et. al*, No. 1:18-cr-340 (S.D.N.Y.), ECF No. 445, at 13, Government's Opposition to Third Party Petition.  In October 2018, the FBI sought a warrant of seizure pursuant to 18 U.S.C. § 981 as to the remaining 9,000 ETH in the ICO Wallet. *See* Exhibit 1, 9,000 ETH Seizure Affidavit.  In requesting the 9,000 ETH Warrant, Agent Racz explained that seizure was necessary as the Centra Defendants in the Civil Action "revoked their consent to the seizure of the remaining 9,000 Ether units in the Seizure Wallet, and Judge King issued a preliminary injunction on or about September 25, 2018 that imposes an asset freeze over the 91,000 Ether units that are currently held in a digital wallet controlled by law enforcement but does not freeze or otherwise protect the remaining 9,000 Ether units in the Seizure Wallet." *Id.* ¶16.

On October 9, 2018, with the Court's leave, Plaintiffs filed their First Amended Complaint for Violation of the Federal Securities Laws (ECF No. 97).  On December 10, 2018, the Court granted Defendant Centra Tech's second counsel's motion to withdraw from representing the Company. (ECF No. 127). The Court's December 10, 2018 Order directed Centra Tech to retain and have their new counsel to file a notice of appearance on or before December 28, 2018. *Id*. On December 28, 2018, Sharma filed a motion for an extension of time for Centra Tech to obtain new counsel. (ECF No. 147). On January 3, 2019, the Court granted Sharma's motion and ordered Centra Tech's new counsel to enter an appearance on or before January 17, 2019. (ECF No. 148).

As a result of Centra Tech's repeated failure to retain and have counsel enter an appearance on its behalf, on January 30, 2019, Plaintiffs filed a request for a clerk's entry of default against

5

Defendant Centra Tech. (ECF No. 169). On January 31, 2019, a Clerk's Default pursuant to FED. R. CIV. P. 55(a) was entered against Defendant Centra Tech. (ECF No. 172).

On June 7, 2019, the Court issued an Order directing Plaintiffs to "move for Default Judgment against Centra Tech by June 20, 2019, consistent with Federal Rule of Civil Procedure 55(b)." (ECF No. 208). In response to the Court's June 7 Order, on June 13, 2019, Plaintiffs filed their initial Motion for Class Certification (ECF No. 212) ("Motion for Class Certification") and, pursuant to Federal Rule of Civil Procedure 55(b), their motion for Default Judgement against Defendant Centra Tech (ECF No. 211) ("Motion for Default Judgment").

On June 15, 2019, Centra Tech's third counsel—Frank Gil—entered an appearance on the Company's behalf and filed a motion to set aside the Clerk's Default entered against it on January 31, 2019. (ECF Nos. 213–214). On September 12, 2019, the Court issued its Order Denying Centra Tech's Motion to Set Aside the Clerk's Default against the Company. (ECF No. 234) (the "Default Order"). In the Default Order, the Court found that setting aside the Clerk's Default was not warranted, as the Court had "given Centra Tech ample opportunity to comply with the court's orders" and Centra Tech "acted intentionally or with reckless disregard for the judicial process" by failing to comply with such orders. *Id*. at 2.

On September 17, 2019, the Court issued its Order denying Plaintiffs' Motion for Class Certification. (ECF No. 235). Shortly thereafter, on September 20, the Court issued its Order denying Plaintiffs' Motion for Default Judgment as the Court had denied Plaintiffs' Motion for Class Certification and the motion had sought entry of a judgment that provided class-wide damages. (ECF No. 236). Additionally, the Court Ordered Plaintiffs to "file a renewed motion for default judgment that provides damages calculations specific to their individual claims" by October 11, 2019. *Id*.

On October 1, 2019, with leave of the Court, Plaintiffs filed a renewed and amended motion for class certification (ECF No. 239) ("Renewed Motion"). On November 20, 2019, the Court denied Plaintiffs' Renewed Motion for failure to adduce new evidence, changed circumstances, or new information about the class members' claims." *See* Certification Order at 4. Because Centra Tech remained in default, Plaintiffs subsequently filed a motion for entry of default final judgment on their individual claims. The Court granted that motion and entered final judgment awarding monetary damages in favor of each of the named Plaintiffs against Centra Tech. (ECF No. 263).

6

Plaintiffs appealed the Court's order denying their motion for class certification. On appeal, the Eleventh Circuit vacated this Court's order and remanded for further proceedings. *Rensel v. Centra Tech, Inc.*, 2 F.4th 1359, 1370 (11th Cir. 2021); *see also* Certification Order at 5. On September 1, 2021, the Court held a status conference during which Plaintiffs requested that the Court rule on the class certification arguments advanced in the Renewed Motion. *Id.* On September 10, 2021, the Court granted certification of the following Class:

> All persons and entities who purchased Centra Tech Tokens ("CTR Tokens") directly from Defendant Centra Tech in connection with its "official" initial coin offering from July 23, 2017 through October 5, 2017 ("Class Period").
> Excluded from the Class are: (i) defendant Centra Tech; (ii) any person who was an officer, director or employee of Centra Tech, Inc.; (iii) any immediate family member of any excluded person; (iv) any firm, trust, corporation or other entity in which any excluded person or entity has or had a controlling interest; and (v) the legal representatives, affiliates, heirs, successors in-interest, or assigns of any such excluded person or entity.

(ECF No. 322).

In late 2020, the United States Government sold the 100,000 ETH seized from Centra Tech / the ICO Proceeds Wallet for approximately $33,422,373. *United States v. Sohrab Sharma, et. al*, No. 1:18-cr-340 (S.D.N.Y.), ECF No. 445, at 13, Government's Opposition to Third Party Petition.

## **ARGUMENT**
### I.     STANDARD FOR EFFECTING DEFAULT JUDGMENT

"[A] defaulted defendant is deemed to 'admit[] the plaintiff's well-pleaded allegations of fact.'" *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Entry of a default judgment is appropriate if the defendant's liability is well-pled in the complaint and the defendant has failed to participate in the litigation in good faith. *Eagle Hosp. Physicians v. SRG Consulting*, 561 F.3d 1298, 1307 (11th Cir. 2009); *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987).

"If the facts in the complaint are sufficient to establish liability, then the Court must determine the amount of damages." *Fin. Servs. Vehicle Tr. v. Castaneda*, No. 18-25264-CIV, 2019 U.S. Dist. LEXIS 73647, at *4 (S.D. Fla. Apr. 30, 2019) (citation omitted). "'In issuing a default judgment, a court may award damages 'without a hearing [if the] amount claimed is a liquidated

7

sum or one capable of mathematical calculation,' as long as 'all essential evidence is already of record.'" Order Granting Plaintiffs' Motion for Default Judgment as to their individual claims ("Individual Final Judgment Order"), ECF No. 263, at 2 (quoting *S.E.C. v. Smyth*, 420 F.3d 1225, 1231, 1232 n.13 (11th Cir. 2005)).

## II. PLAINTIFFS' WELL-PLED ALLEGATIONS ESTABLISH A SUFFICIENT BASIS FOR RELIEF AND ENTRY OF DEFAULT JUDGMENT

As set forth in the Complaint, the Class's claims under Section 12(a)(1) of the Securities Act are premised on Centra Tech's "unlawful solicitation, offer and sale of unregistered securities in violation of Section 5 of the Securities Act" and that the "Centra ICO was an unlawful offering of unregistered securities, in the form of CTR Tokens, for which no exemption from registration was available under the federal securities laws." Compl. ¶ 6.

With respect to the Class's claims under the Exchange Act, such are premised on Centra Tech's "fraudulent and manipulative scheme" involving the issuance of "false and materially misleading statements concerning, *inter* alia: (1) relationships with Visa and Mastercard; (2) relationships with Bancorp; (3) the experience and existence of Centra Tech's executive team; (4) the value of CTR Tokens and the benefits from owning CTR Tokens; (4) Centra Tech's insurance covering investors' funds; (5) the listing of CTR Tokens on virtual exchanges; (6) state licenses Centra Tech had acquired to operate the Centra Products; and/or (7) the nature of Centra Tech's relationships with the Promoter Defendants." *Id*. ¶ 11.

### A. Violation of Section 12(a)(1) [15 U.S.C. § 77l(a)(1)] of the Securities Act

Section 12(a)(1), 15 U.S.C. § 77l(a)(1), of the Securities Act creates a private right of action against any person who "offers or sells a security in violation of" Section 5, 15 U.S.C. § 77e, of the Securities Act. *See e.g., Raiford v. Buslease, Inc.*, 825 F.2d 351, 353 (11th Cir. 1987). "In order to establish liability under Section 12(a)(1), a Plaintiff must prove (1) the defendants sold or offered to sell securities; (2) no registration statement was in effect as to the securities; and (3) interstate transportation or communication and the mails were used in connection with the sale or offer of sale." Individual Final Judgment Order, at 2 (citing *SEC v. Levin*, 849 F.3d 995, 1001 (11th Cir. 2017)).

A transaction qualifies as an investment contract and, thus, a security if it is: (1) an investment of money; (2) in a common enterprise; (3) with a reasonable expectation of profits to

be derived from the entrepreneurial or managerial efforts of others. Individual Final Judgment Order, at 2 (citing *SEC v. R.G. Reynolds Enters.*, 952 F.2d 1125, 1130 (9th Cir. 1991).

Here, each of these elements are present. First, each Class member invested BTC, ETH, or other cryptocurrencies to purchase CTR Tokens. Individual Final Judgment Order at 2 (citing FAC ¶¶ 3, 32-41, 316). As this Court has already recognized, "under established law, an investment of cryptocurrency constitutes an 'investment of money' sufficient to satisfy the *Howey* test." *Id.* (citing *SEC v. Friendly*, 49.F. Supp.2d 1363, 1368-69 (S.D. Fla. 1999)).

Second, by purchasing CTR Tokens, all Class members, including Plaintiffs, invested in a "common enterprise" with Defendant Centra Tech and its founders. Individual Final Judgment Order at 3. "In the Eleventh Circuit, 'a common enterprise exists where the 'fortunes of the investor are interwoven with and dependent upon the efforts and success of those seeking the investment.'" *Id.* (citing *SEC v. Unique Fin. Concepts, Inc.*, 196 F.3d 1195, 1199 (11th Cir. 1999)). As this Court has recognized, here, "the fortunes of individual investors in the Centra Tech ICO were directly tied to the failure or success of the products the Defendants purported to develop," and "[a]n individual investor could exert no control over the success or failure of this investment." *Id.* (citing TRO R&R at 10). Plaintiffs have thus "established the existence of a common enterprise." *Id.*; *see also* FAC ¶¶ 150–163.

Third, the "'reasonable expectation of profit' prong of the *Howey* test is satisfied when 'the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise.'" Individual Final Judgment Order at 3 (citing *Bamert v. Pulte Home Corp.*, 445 Fed. App'x 256, 262 (11th Cir. 2011)). Here, because the success of the CTR Tokens purchased by the Class was entirely depend on the efforts and actions of Defendants, the third prong is satisfied. *Id.*; *see also* TRO R&R at 10; FAC ¶¶ 150-163. Accordingly, as already determined by this Court, "the offering of Centra Tokens was an investment contract under the Securities Act, such that Defendants sold or offered to sell securities by virtue of the Centra Tech ICO." Individual Final Judgment Order at 3; *see also* TRO R&R at 10–11; ECF No. 95.

Additionally, no registration statement was ever filed with the SEC in connection with the Centra ICO or CTR Tokens, FAC ¶ 82, nor has Centra Tech ever claimed that any such a registration was filed or in effect. Individual Final Judgment Order at 3. Finally, Centra Tech utilized "an instrumentality of interstate commerce," by marketing and selling CTR Tokens on the

9

internet, including through the Centra Tech Token Sale Home Page and the Centra Tech Smart Contracts. *Id.* (citing FAC ¶ 315); ECF No. 79 at 11 (*citing Levin*, 2013 WL 594736, at *12) ("the Internet which necessarily includes email, is an 'instrumentality of interstate commerce.'").

Based on the foregoing, Plaintiffs have "established a sufficient basis" for relief in favor of the Class under Section 12(a)(1) and thus, the Court may proceed to a court may determine the appropriate damages.

> **B.    Violation of Section 10(b) [15 U.S.C. § 78j(b)] and SEC Rule 10b-5 [17 C.F.R. § 240.10b-5]**

Centra Tech is also liable under Section 10(b) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder. The elements of a securities fraud claim under Rule 10b are: "(1) that the defendant committed a deceptive or manipulative act, (2) in furtherance of the alleged scheme to defraud, (3) with scienter, and (4) reliance." *In re: Altisource Portfolio Sols., S.A. Sec. Litig.*, No. 14-81156-CIV- WPD, 2015 WL 11988900, at *5 (S.D. Fla. Dec. 22, 2015) (citing *In re Alstom SA*, 406 F. Supp. 2d 433, 474 (S.D.N.Y. 2005)).

Here, Centra Tech made numerous material misrepresentations. FAC ¶¶ 216-242. It claimed that the Centra Debit Card would be able to operate on Visa and Mastercard networks and allow users to make transactions in digital currencies in "real time." *Id.* ¶ 230. However, Centra Tech was never authorized to use the Visa or Mastercard networks and the Centra Debit Card never allowed users to make digital currency transactions in "real time." Centra Tech also fabricated fictional executives who they claimed were working with Centra Tech, touted Centra Tech's nonexistent insurance policy, and made false claims regarding state licenses to increase investor confidence and solicit additional purchases of CTR Tokens. *Id.* ¶¶ 270-285; 286-291; 292–299. Centra Tech made these statements to induce Plaintiffs and the Class to invest in more unregistered CTR Token securities and as part of a scheme to artificially inflate the value of the patently worthless unregistered CTR Token securities. *Id.* ¶¶ 336.

Centra Tech made these material misrepresentations with scienter because the misrepresentations were either intentional and/or made with reckless disregard to accuracy for the purposes of (a) personal financial gain; (b) inflating market demand for CTR Tokens during the Centra ICO; and (c) securing additional financing to continue as a growing concern. *Id.* ¶¶ 322-325. Centra Tech had actual knowledge that: (i) Centra Tech had not been authorized to use the Centra Card on the Visa or Mastercard networks; (ii) the Company was not in a "partnership"

with Bancorp"; (iii) both Edwards and Robinson were fictional persons and Defendant Trapani had not attended UCLA; (iv) Centra Tech did not have insurance during the official Centra ICO; (v) the Company lacked any state money transmitter licenses during the Centra ICO; and (vi) the Promoter Defendants were not Centra Tech's "managing partner(s)." *Id.* ¶ 323. Indeed, on July 17, 2019, one of the Centra Founders—Trapani—pled guilty to, *inter alia*, the identical fraudulent scheme Plaintiffs' Exchange Act claims are premised on. *See U.S. v. Trapani*, S1-18-Cr-340 (LGS) (S.D.N.Y.), ECF No. 147.

Finally, while reliance is also an element of the Class's claims under Section 10(b) of the Exchange Act, the Court has found that the fraud-created-the-market presumption of reliance applies to the Class's claims. Specifically, the Court's Certification Order found:

> Plaintiffs seek to rely on the fraud-created-the-market presumption of reliance. Courts that have recognized this theory have limited its use to the narrow circumstance 'where but for the fraud the securities would not have been marketable.' *Lipton v. Documation, Inc.*, 734 F.2d 740, 747 (11th Cir. 1984) . . . As evidence of their theory, the Plaintiffs have cited to the criminal and enforcement actions against Centra Tech and its individual principals for securities fraud, as well as the white paper, blog posts, and social media posts that were circulated to induce investors to purchase CTR Tokens during the ICO. The Court is satisfied that Centra Tech's misrepresentations, such as their assurances that the offered securities were backed by Visa and Mastercard, that they were insured by a third party, or even that they had real and not fictitious managers, would have prevented CTR Tokens from being marketed.

(ECF No. 322 at 14–15.); *see also* FAC ¶ 340. Accepting the First Amended Complaint's allegations as true, Defendant Centra Tech is liable to the Class for its unlawful and fraudulent conduct.

Based on the foregoing, Plaintiffs have established a sufficient basis for relief under Section 10(b) and Rule 10b-5 and thus, the Court may determine the appropriate damages.

### III. THE AMOUNT OF CLASS-WIDE DAMAGES

In seeking a default judgment, Plaintiffs bear the burden of proving damages. They may do so through affidavits and other documentary evidence showing the amount and calculation of damages. *Tara Prods.*, 449 F. App'x at 911–12. "'Where all the essential evidence is on record, an evidentiary hearing on damages is not required.'" *Today, LLC v. Monblatt*, No. 18-cv-61219, 2019 WL 1491701, at *2 (S.D. Fla. Apr. 4, 2019) (Bloom, J.) (quoting *Ordonez v.*

11

*Icon Sky Holdings LLC*, No. 10-60156-CIV-SEITZ/SIMONTON, 2011 U.S. Dist. LEXIS 96939, at *1 (S.D. Fla. Aug. 30, 2011)).

As demonstrated in the First Amended Complaint, the record developed in connection with the Initial TRO Application, MTCA, Renewed TRO Application, Renewed Motion for Class Certification, the related Government Actions, and further supported by the attached Declaration of Donald J. Enright and accompanying exhibits, the Class invested at least 100,000 ETH with Centra Tech in connection with the official Centra Tech ICO. Because the CTR Tokens the Class received in exchange have no value whatsoever, Defendant Centra Tech is indebted to the Class in the sum of at least **100,000 ETH.** *See, e.g.*, Certification Order at 2 ("Centra Tech raised $32 million as a result of the ICO."); Enright Decl. at ¶¶ 12-14, Ex. 1; ECF No. 276 at 3 ("Because investors purchased CTR Tokens using Bitcoin or Ethereum, the Securities Act requires that Plaintiffs' damages be calculated in terms of Bitcoin or Ethereum in order to place the Plaintiffs back in their preinvestment position.").

Damages under the Securities Act are designed "to put these injured investors back to their original pre investment position, thus effectuating the 'substantial equivalent of rescission.'" ECF No. 263 at 5 (*quoting Pinter v. Dahl*, 486 U.S. 622, 641, n.18 (1988) ("Section 12 was adapted from common- law (or equitable) rescission, … which provided for restoration of the status quo by requiring the buyer to return what he received from the seller. The statute, however, differs significantly from the source material. In particular, it permits the buyer who has disposed of the security to sue for damages … This damages calculation results in what is the substantial equivalent of rescission.").

Here, the Government sold the 100,000 ETH seized from the ICO Proceeds Wallet for approximately $33,422,373. *United States v. Sohrab Sharma, et. al*, No. 1:18-cr-340 (S.D.N.Y.), ECF No. 445, at 13, Government's Opposition to Third Party Petition. As the 100,000 ETH can no longer be used to provide rescission to members of the Class, a judgment in the amount of the $33,422,373 realized through the sale of that ETH will come closest to effectuating the "substantial equivalent of rescission." ECF No. 263 at 5.

This method of computation is consistent with the proper method of computing the Class' damages under Section 10(b). *Id.* Where, as here, the defendant acquires property through fraudulent conduct, "damages are the amount of the defendant's profit." *Affiliated Ute Citizens of Utah v. U.S.*, 406 U.S. 128, 155 (1972); *see also Pidcock v. Sunnyland America, Inc.*, 854 F.2d

443, 446 (11th Cir. 1988) ("once it has been determined that a purchaser acquired property by fraud, any profit subsequently realized . . . should be deemed the proximate cause of the fraud.").

Centra Tech obtained at least 100,000 ETH from the Class during the July 23, 2017 to October 5, 2017 Class Period. That 100,000 ETH had an average value of approximately $28,680,000 during the Class Period. Enright Decl. at ¶¶ 19-20. The Government sold the 100,000 ETH for $33,422,373 and has recognized that the remaining portion represents "proceeds from appreciation in the market price" of the ETH. *United States v. Sohrab Sharma, et. al*, No. 1:18-cr-340 (S.D.N.Y.), ECF No. 411, at 3. As the $33,422,373 represents Centra Tech's profit as a result of obtaining at least 100,000 ETH from the Class, the Class is entitled to a judgment against Centra Tech in that amount. *Scheck Investments, L.P. v. Kensington Management, Inc.*, 2009 WL 1916501 (S.D. Fla. July 2, 2009) ("Disgorgement of ill-gotten gains or profits from one who sells securities in violation of federal securities law is an accepted remedy in our Circuit.").

Accordingly, Plaintiffs have obtained and presented sufficient evidence demonstrating that the Class invested at least 100,000 ETH and that, under both Section 12(a)(1) of the Securities Act and Section 10(b) of the Exchange Act, the Class is thus entitled to an award of damages in the amount of **$33,422,373.45**.

## CONCLUSION

In sum, Plaintiffs have obtained and presented sufficient evidence to support the Court's entry of the final judgment requested herein. Additionally, Defendant Centra Tech has, through its counsel, advised Plaintiffs that it does not contest and will not oppose the requested entry of judgment in the requested amount. Accordingly, Plaintiffs respectfully ask that the Court enter the proposed Default Final Judgment against defendant Centra Tech in favor of the Class, awarding the Class damages in the amount of $33,422,373.

## CERTIFICATE OF CONFERENCE

Counsel for Defendant Centra Tech has explicitly informed counsel for Plaintiffs that Centra Tech does not oppose the relief sought in this Motion.

Dated: November 23, 2021

**OF COUNSEL:**

**LEVI & KORSINSKY, LLP**
Eduard Korsinsky
30 Broad Street, 24th Floor
New York, New York 10004
Telephone: (212) 363-7500
Facsimile: (212) 636-7171

Donald J. Enright (*admitted pro hac vice*)
Elizabeth K. Tripodi
**LEVI & KORSINSKY, LLP**
1101 30th Street, N.W., Suite 115
Washington, DC 20007
Telephone: (202) 524-4290
Fax: (202) 333-2121

James Taylor-Copeland (admitted *pro hac vice*)
**TAYLOR-COPELAND LAW**
james@taylorcopelandlaw.com
501 W. Broadway Suite 800
San Diego, CA 92101
(619) 400-4944

John A. Carriel (admitted *pro hac vice*)
**ZELLE LLP**
1775 Pennsylvania Ave, NW, Suite 375
Washington, DC 20006
Telephone: (202) 899-4111
Facsimile: (612) 336-9100

Respectfully submitted,

**KOMLOSSY LAW P.A.**

/s/  *Emily C. Komlossy*
Emily Komlossy (FBN 7714)
eck@komlossylaw.com
4700 Sheridan St., Suite J
Hollywood, FL 33021
Phone: (954) 842-2021
Fax: (954) 416-6223

*Attorneys for Plaintiffs and the Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 23, 2021, I electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via CM/ECF.

/s/ *Emily C. Komlossy*
Emily C. Komlossy