**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No: 1:17-cv-24500-RNS/JB

JACOB ZOWIE THOMAS RENSEL,
*et al.*,

      Plaintiffs,

v.

CENTRA TECH, INC.,
*et al.*,

      Defendants.

_____/

**REPORT AND RECOMMENDATION ON**
**PLAINTIFFS' MOTION FOR JUDGMENT UPON DEFAULT**

**THIS CAUSE** came before the Court upon Plaintiffs' Motion for Judgment Upon Default. ECF No. [328]. No response or opposition was filed and the time to do so has passed. Upon due consideration, it is hereby **RECOMMENDED** that Plaintiffs' Motion be **GRANTED**.

    **I.**    **PROCEDURAL BACKGROUND**

On December 13, 2017, Plaintiff Jacob Zowie Thomas Rensel ("Rensel"), individually and on behalf of others, filed suit alleging that he was deceived by Defendants Centra Tech, Inc. ("Centra Tech"), Sohrab Sharma ("Sharma"), Raymond Trapani ("Trapani"), Robert Farkas ("Farkas"), and William Hagner ("Hagner"), in connection with Centra Tech's Initial Coin Offering ("ICO"). ECF No. [1]. Centra Tech claimed to be "the world's first Debit Card that is designed for use with compatibility on 8+ major cryptocurrencies blockchain assets[,]" *id.* ¶ 30, and conducted the ICO to raise capital for further development of the Centra Debit Card and Centra Wallet, *id.* ¶ 2. During its ICO, Centra Tech offered sales of the Centra Token ("CTR"). *Id.* Plaintiffs claim that "Defendants raised over $30 million in digital cryptocurrencies by offering

1

and selling unregistered securities in direct violation of the Securities Act." *Id.* ¶ 1. The individual Defendants in the Complaint were all founders or officers of Centra Tech. *Id.* ¶¶ 12–14.

On October 9, 2018, Plaintiffs filed their First Amended Complaint, asserting: (1) one count for violation of Section 12(a) of the Securities Act against all Defendants (Count I); (2) one count for violation of Section 15(a) of the Securities Act against the individual Defendants (Count II); (3) one count for violation of Section 10(b) and SEC Rule 10b-5(b) against all Defendants (Count III); and (4) one count for violation of Section 20(a) of the Exchange Act against the individual Defendants (Count IV). ECF No. [97].

On October 16, 2018, Defendants' counsel filed a Motion to Withdraw. ECF No. [100]. On December 10, 2018, the District Court granted the Motion to Withdraw, ordering that Defendants' new counsel was to file a notice of appearance by December 28, 2018. ECF No. [127]. Although Defendants requested an extension of time to retain counsel, they ultimately failed to comply with the requirement altogether. *See* ECF No. [148]. Accordingly, on January 31, 2019, a Clerk's Default was entered against Centra Tech given its "failure to appear, answer, or otherwise plead . . . ." ECF No. [172].

On June 13, 2019, Plaintiffs filed a Motion for Class Certification and a Motion for Default Judgment requesting class-wide damages. ECF Nos. [211], [212]. The Court subsequently denied the Motion for Class Certification and Motion for Default Judgment, directing Plaintiffs to file a renewed motion for default judgment setting forth damages calculations for their individual claims. ECF Nos. [235], [236]. On October 1, 2019, Plaintiffs filed a Renewed Motion for Class Certification, ECF No. [239], which was again denied by the District Court, ECF No. [258]. Plaintiffs subsequently filed a Motion for Default Final Judgment on their individual claims, ECF No. [260], which the District Court granted, ECF No. [263].

Plaintiffs appealed the District Court's denial of the Motion for Class Certification and Renewed Motion for Class Certification. ECF No. [286]. After the Eleventh Circuit Court of Appeals revered and remanded, the District Court held a status conference during which Plaintiffs requested that the Court rule on the Renewed Motion for Class Certification. ECF No. [317]. On September 10, 2021, the District Court granted the Renewed Motion for Class Certification, appointing Rensel, Wang Yun He, Chi Hao Poon, King Fung Poon, Jae J. Lee, and Mateusz Ganczarek as Class Representatives and Levi & Korsinsky, LLP and Taylor-Copeland Law as Class Counsel. ECF No. [322].

## II. THE INSTANT MOTION

Plaintiffs filed the instant Motion, requesting that final default judgment be entered against Centra Tech and in favor of the certified Class in the amount of $33,422,373.45. ECF No. [328] at 1. First, as to the claim under the Securities Act (Count I), Plaintiffs argue that liability has been established based on Centra Tech's "unlawful solicitation, offer and sale of unregistered securities" and "unlawful offering of unregistered securities, in the form of CTR Tokens, for which no exemption from registration was available under the federal securities laws." *Id.* at 8 (quoting ECF No. [97] ¶ 6). Second, as to the claims under the Exchange Act (Count III), Plaintiffs argue that liability has been established based on Centra Tech's "fraudulent and manipulative scheme" involving the issuance of "false and materially misleading statements concerning, inter alia: (1) relationships with Visa and Mastercard; (2) relationships with Bancorp; (3) the experience and existence of Centra Tech's executive team; (4) the value of CTR Tokens and the benefits from owning CTR Tokens; (4) Centra Tech's insurance covering investors' funds; (5) the listing of CTR Tokens on virtual exchanges; (6) state licenses Centra Tech had acquired to operate the Centra Products; and/or (7) the nature of Centra Tech's relationships with the Promoter Defendants." *Id.*

3

(quoting ECF No. [97] ¶ 11). Plaintiffs argue that they have established entitlement to damages because from July 23, 2017 through October 5, 2017, Centra Tech Centra Tech collected at least 100,000 Ethereum from the Class in connection with its ICO. *Id.* at 13. As such, Plaintiffs argue that they are entitled to damages in the amount of $33,422,373.45, the dollar amount for the 100,000 Ethereum that was sold by the United States Department of Justice after its seizure. *Id.*

The instant Motion is supported by the Declaration of Donald J. Enright, counsel for the class representatives. ECF No. [328-1]. Mr. Enright states that members of the Class purchased CTR Tokens from July 23, 2017 through October 5, 2017. *Id.* ¶ 3. He states that Plaintiffs now seek "rescission of the investments made by Plaintiffs and the Class . . . relating to their purchase of CTR Tokens and/or rescissory damages." *Id.* Mr. Enright states that because Centra Tech was the sole source of the tokens, damages may be "accurately calculated by measuring the amount of digital currencies Defendant Centra Tech's online public digital wallet addresses received during the Class Period subtracted by the value of the CTR Tokens received." *Id.* ¶ 4. Mr. Enright notes that because the tokens were at all times "objectively valueless and unmarketable," the measure of damages is the total value of Plaintiffs' investment. *Id.* ¶ 5. Mr. Enright states that an FBI investigation revealed that "there is probable cause to believe that Centra Tech raised at least 100,000 units of 'Ether' or 'ETH' from investors who purchased Centra tokens during Centra Tech's ICO." *Id.* ¶ 14 (quotation omitted). Mr. Enright states that based on the average ETH to USD exchange rate during the relevant time period, Centra Tech raised at least $28,680,000 through the sale of the CTR Tokens. *Id.* ¶ 16. Mr. Enright notes that the Government "sold the 100,000 Ether Units for approximately $33,422,373 in late 2020." *Id.*

### III. ANALYSIS

Federal Rule of Civil Procedure 55 sets forth the procedure for obtaining a default judgment. First, subsection (a) provides that the Clerk of Court must enter default when the defendant fails "to plead or otherwise defend." Fed. R. Civ. P. 55(a). Next, upon the entry of a clerk's default, the Court must enter a judgment "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk--on the plaintiff's request, with an affidavit showing the amount due . . . ." *Id.* at 55(b)(1).

A default admits a plaintiff's well-plead allegations of fact. *Lary v. Trinity Physician Fin. & Ins. Services*, 780 F.3d 1101, 1106 (11th Cir. 2015) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir.1975)). Thus, in determining whether default judgment may be entered, courts must review the allegations in the complaint to determine whether there is a "sufficient basis in the pleadings for the particular relief sought." *United States v. Genesis II Church of Health & Healing*, 476 F. Supp. 3d 1283, 1289 (S.D. Fla. 2020) (citing *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007)); *see also Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (noting that the "sufficient basis" standard is akin to the motion to dismiss standard). Once liability has been established, the court must assess the damages sought by examining the affidavits submitted. *See, e.g.*, *Svetlick v. Lucius*, No. 08-61525-CIV-ZLOCH, 2009 WL 1203925, at *1 (S.D. Fla. May 1, 2009) (awarding default final judgement as to "the precise amount of damages, including actual damages as well as liquidated damages" pursuant to the agreement between the parties).

### A. Violation of Section 12(a)(1) of the Securities Act (Count I)

Section 12(a)(1), 15 U.S.C. § 77l(a)(1), of the Securities Act creates a private right of action against any person who "offers or sells a security in violation of" Section 5 of the Securities Act.

5

*See Raiford v. Buslease, Inc.*, 825 F.2d 351, 353 (11th Cir. 1987).  A transaction or an investment contract qualifies as a security if it is: "(1) an investment of money (2) in a common enterprise (3) with an expectation of profits produced by the efforts of others."  *SEC v. R.G. Reynolds Enters.*, 952 F.2d 1125, 1130 (9th Cir. 1991) (citing *Hocking v. Dubois*, 885 F.2d 1449, 1455 (9th Cir. 1989)).  Furthermore, in order to establish liability under Section 12(a)(1), a Plaintiff must prove that: "(1) no registration statement was in effect as to the securities, (2) the defendant sold or offered to sell these securities, and (3) interstate transportation or communication and the mails were used in connection with the sale or offer of sale."  *SEC v. Levin*, 849 F.3d 995, 1001 (11th Cir. 2017) (quoting *SEC v. Cont'l Tobacco Co. of S.C.*, 463 F.2d 137, 155 (5th Cir. 1972)).

As an initial matter, the transaction qualifies as a security because Plaintiffs invested Bitcoin, Ethereum, and other digital currencies to purchase CTR Tokens.  ECF No. [97] ¶¶ 3, 32–41, 316.  Indeed, an investment of cryptocurrency constitutes an "investment of money."  *See SEC v. Friendly*, 49 F. Supp. 2d 1363, 1368–69 (S.D. Fla. 1999).  Moreover, by purchasing CTR Tokens, Plaintiffs invested in a "common enterprise" with Defendants.  *See SEC v. Unique Fin. Concepts, Inc.*, 196 F.3d 1195, 1199 (11th Cir. 1999) ("[A] common enterprise exists where the fortunes of the investor are interwoven with and dependent upon the efforts and success of those seeking the investment or of third parties.") (citation and quotations omitted).  Finally, there was a reasonable expectation of profits because the success of the CTR Tokens purchased by Plaintiffs was entirely dependent on Defendants' actions.  *Bamert v. Pulte Home Corp.*, 445 Fed. App'x 256, 262 (11th Cir. 2011) (noting that the "reasonable expectation of profit" prong is satisfied when "the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise") (quoting *Williamson v. Tucker*, 645 F.2d 404, 418 (11th Cir. 1981)).

Moreover, the elements of the claim are satisfied. First, no registration statement was ever filed with the SEC in connection with the Centra Tech ICO or CTR Tokens. ECF No. [97] ¶ 82. Second, the offering of the Centra Tokens was an investment contract under the Securities Act such that Defendants sold securities by virtue of the ICO. Finally, Centra Tech utilized an instrumentality of interstate commerce because it marketed and sold CTR Tokens on the internet. *Id.* ¶ 315; ECF No. [79] at 11. Accordingly, Plaintiffs have sufficiently satisfied the elements for a claim under Section 12(a)(1).

### B. Violation of Section 10(b) and SEC Rule 10b-5 (Count III)

In order to establish liability for securities fraud under Rule 10b, a plaintiff must show: "(1) that the defendant committed a deceptive or manipulative act, (2) in furtherance of the alleged scheme to defraud, (3) with scienter, and (4) reliance." *In re: Altisource Portfolio Sols., S.A. Sec. Litig.*, No. 14- 81156-CIV- WPD, 2015 WL 11988900, at *5 (S.D. Fla. Dec. 22, 2015) (citing *In re Alstom SA*, 406 F. Supp. 2d 433, 474 (S.D.N.Y. Dec. 22, 2005)).

In this case, the elements of the claim have been satisfied. First, Defendants committed deceptive acts in furtherance of a scheme to defraud investors. Specifically, Defendants claimed that the Centra Tech Debit Card would operate on Visa and Mastercard networks and allow users to make transactions in digital currencies in "real time." ECF No. [97] ¶¶ 216–42. Defendants made these assertions despite the fact that Centra Tech was never authorized to use the Visa or Mastercard networks and the Centra Tech Debit Card never allowed users to make digital currency transactions in real time. *Id.* ¶¶ 216, 253, 296. Defendants also made misrepresentations regarding fictional executives, Centra Tech's nonexistent insurance policy, and state licenses in order to induce investors to purchase CTR Tokens. *Id.* ¶¶ 270–85; 286–91, 292–99. Defendants made

these statements to induce Plaintiffs to invest in CTR Tokens and as part of a scheme to artificially inflate their value. *Id.* ¶¶ 336.

Second, Defendants made these misrepresentations with the requisite scienter because the misrepresentations were either intentional or made with reckless disregard for accuracy for the purposes of: "(a) personal financial gain; (b) inflating market demand for CTR Tokens during the Centra ICO; and (c) securing additional financing to continue as a growing concern." *Id.* ¶ 322–25. Moreover, Centra Tech had actual knowledge that: "(i) Centra Tech had not been authorized to use the Centra Card on the Visa or Mastercard networks; (ii) the Company was not in a partnership with Bancorp; (iii) both Edwards and Robinson were fictional persons and Defendant Trapani had not attended UCLA; (iv) Centra Tech did not have insurance during the official Centra Tech ICO; (v) the Company lacked any state money transmitter licenses during the Centra Tech ICO; and (vi) the certain named Defendants were not Centra Tech's managing partners." *Id.* ¶ 323 (quotation marks omitted). Finally, Plaintiffs relied upon Defendants' false statements in deciding to purchase CTR Tokens during the ICO or on cryptocurrency exchanges at artificially inflated prices. *Id.* ¶ 340. Accordingly, Plaintiffs have sufficiently satisfied the elements for a claim under Section 10(b) and Rule 10b-5.

### C. Damages

A plaintiff's allegations regarding damages are not deemed admitted by virtue of a default. *See Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003). Instead, the Court "has an obligation to assure that there is a legitimate basis for any damage award it enters." *Id.* To that extent, a default judgment awarding monetary damages can only be entered "if the record adequately reflects the basis for award via 'a hearing or a demonstration by detailed affidavits establishing the necessary facts.'" *Adolph Coors Co. v. Movement Against Racism & the Klan*,

777 F.2d 1538, 1544 (11th Cir. 1985) (quoting *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)).  Where damages are not liquidated and cannot be ascertained objectively through an arithmetic calculation, a hearing is necessary.  *See Safari Programs, Inc. v. CollectA Int'l Ltd.*, 686 Fed. Appx. 737, 746 (11th Cir. 2017).

Typically, damages for fraud under Sections 12(a) and 10(b) are "the difference between the value of the securities at the time of the fraudulent transaction and the price received." *Pidcock v. Sunnyland Am., Inc.*, 854 F.2d 443, 446 (11th Cir. 1988) ("The Supreme Court has held that the general measure of damages for defrauded sellers is the difference between what the seller received and what the seller would have received had there been no fraudulent conduct.") (citation omitted); *Pinter v. Dahl*, 486 U.S. 622, 641 n.18 (1988) (noting that the purpose of Section 12 of the Securities Act is to restore the status quo and, as such, damages are "the consideration paid for such security with interest thereon, less the amount of any income received thereon") (quotation omitted).  If "the defrauding purchaser receives more than the seller's actual loss, however, the damages are the purchaser's profits." *Pidcock*, 854 F.2d at 446 (citations omitted).

In this case, Centra Tech obtained at least 100,000 ETH from the Class between July 23, 2017 and October 5, 2017.  The Government has sold the 100,000 ETH for $33,422,373.45.  Because the $33,422,373.45 represents Centra Tech's profit as a result of obtaining at least 100,000 ETH from the Class, the Class is entitled to a judgment against Centra Tech in that amount.  Accordingly, Plaintiffs are entitled to judgment against Centra Tech in the amount of $33,422,373.45.[1]

---

[1] The undersigned notes that the priority or impact that this default final judgment may or may not have in the proceedings in the Southern District of New York, and/or whether Plaintiffs may or may not collect on this judgment are not before this Court.

## IV.  CONCLUSION

Based on the foregoing, it is hereby **RECOMMENDED** that Plaintiffs' Motion, ECF No. [328], be **GRANTED** and that final default judgment be entered for Plaintiffs and against Defendant Centra Tech in the amount of $33,422,373.45.

## V.  OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation with the District Court within **FIVE (5) DAYS** of being served with a copy of this Report and Recommendation. The Court has shortened the objection period because no response or opposition was filed during the time that the Motion has been pending. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida on May 31, 2022.

_____
**JACQUELINE BECERRA**
**UNITED STATES MAGISTRATE JUDGE**